No. 26-6445

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

ROGER ROGOFF,

*Plaintiff-Appellee,*

v.

DONALD J. TRUMP,
President of the United States, in his official capacity, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Western District of Washington

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
REQUEST FOR AN IMMEDIATE ADMINISTRATIVE STAY
AND A RULING ON THE REQUEST FOR A STAY PENDING
APPEAL BY OCTOBER 5, 2026**

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL AGUILAR
DAVID L. PETERS
ANDREW SKARAS
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-5425*

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................ 1

STATEMENT ........................................................................ 6

A. Legal Background ........................................................ 6

B. Factual Background And Prior Proceedings ........................ 8

ARGUMENT ........................................................................ 11

I. The Government Is Likely To Succeed In Showing That Plaintiff Has Been Lawfully Removed ........................................ 12

A. Congress provided by statute that all U.S. Attorneys are removable by the President ........................................ 13

B. The Constitution does not countenance a U.S. Attorney responsible to no one ........................................ 19

II. The Remaining Stay Factors Decisevely Favor The Government ........................................................ 25

CONCLUSION ........................................................................ 27

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bowsher v. Synar*,
478 U.S. 714 (1986) ........ 4, 19, 22, 23

*CVS Health Corp. v. Vividus, LLC*,
878 F.3d 703 (9th Cir. 2017) ........ 18

*Dellinger v. Bessent*,
2025 WL 887518 (D.C. Cir. Mar. 10, 2025) ........ 11

*Denig v. United States*,
37 Ct. Cl. 383 (1902) ........ 21

*Flores-Chaves v. Ashcroft*,
362 F.3d 1150 (9th Cir. 2004) ........ 19

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S.
477 (2010) ........ 2, 5, 20

*Grundmann v. Trump*,
2025 WL 1840641 (D.C. Cir. July 3, 2025) ........ 11

*Harper v. Bessent*,
2025 WL 2426660 (D.C. Cir. Aug. 21, 2025) ........ 11

*Kennedy v. Braidwood Management, Inc.*,
606 U.S. 748 (2025) ........ 16, 18, 24

*Mertens v. Hewitt Associates*,
508 U.S. 248 (1993) ........ 17

*Morrison v. Olson*,
487 U.S. 654 (1988) ........ 21, 22

*Morton v. Mancari*,
417 U.S. 535 (1974) ........ 15

*Myers v. United States*,
272 U.S. 52 (1926) ........ 1, 2, 5, 23

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 11

*Parsons v. United States*,
167 U.S. 324 (1897) .......... 16

*Raines v. Byrd*,
521 U.S. 811 (1997) .......... 26

*Sampson v. Murray*,
415 U.S. 61 (1974) .......... 24, 26

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) .......... 2, 4, 12, 20, 21, 24, 27

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) .......... 23

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) .......... 5, 6, 11, 12, 25, 26

*Trump v. Cook*,
146 S. Ct. 2234 (2026) .......... 26

*Trump v. Slaughter*,
146 S. Ct. 18 (2025) .......... 6, 11, 25
146 S. Ct. 2283 (2026) .......... 2, 4, 5, 11, 12, 20, 23, 24, 25, 26

*Trump v. United States*,
603 U.S. 593 (2024) .......... 2, 7, 12, 19

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) .......... 5, 6, 11, 25

*United States v. Armstrong*,
517 U.S. 456 (1996) .......... 21

*United States v. Gantt*,
194 F.3d 987 (9th Cir. 1999) .......... 3, 7, 14, 20

*United States v. Hansen*,
599 U.S. 762 (2023) .......... 18, 19

*United States v. Hilario*,
218 F.3d 19 (1st Cir. 2000) .......................................................... 14, 24

*United States v. Jackson*,
187 F.4th 1198 (9th Cir. 2026) .......................................................... 27

*United States v. Martinez*,
565 F. Supp. 2d 1270 (D.N.M. 2008) ................................................ 14

*United States v. Naviwala*,
825 F. Supp. 3d 451 (D.N.J. 2026) .................................................... 14

*United States v. Paulson*,
68 F.4th 528 (9th Cir. 2023) .............................................................. 13

*United States v. Perkins*,
116 U.S. 483 (1886) ............................................................................ 21, 22

*Yellen v. Confederated Tribes of the Chehalis Reservation*,
594 U.S. 338 (2021) .............................................................................. 17

**Constitution and Statutes**

U.S. Const. art. II, § 1, cl. 1 ............................................................ 2, 9

5 U.S.C. § 3345 ........................................................................................ 7

28 U.S.C. § 541 ........................................................................................ 14

28 U.S.C. § 541(a), (b) ............................................................................ 7

28 U.S.C. § 541(c) ........................ 1, 3, 7, 9, 11, 12, 13, 14, 15, 17, 18, 25

28 U.S.C. § 546 ........................................................................................ 7

28 U.S.C. § 546(a) .................................................................................. 19

28 U.S.C. § 546(a)-(c) .............................................................................. 7

28 U.S.C. § 546(d) ................................................................... 3, 7, 9, 18

28 U.S.C. § 547 ........................................................................................ 13

28 U.S.C. § 547(1)-(2) .......................................................................... 20

**Other**

Black's Law Dictionary (rev. 4th ed. 1968) .......................................... 13

## INTRODUCTION

The district court has issued an unprecedented and indefensible injunction. It has ordered the immediate reinstatement of a U.S. Attorney fired by the President of the United States; it has enjoined the Attorney General from "obstruct[ing]" that U.S. Attorney in carrying out his duties; and it has held that the U.S. Attorney cannot be removed from office unless the Senate consents to his replacement. Op. 9–10. The injunction directs plaintiff to serve as the chief federal prosecutor for the Western District of Washington, wielding the core executive power of criminal law enforcement without any accountability to the President or, by extension, the People. That order plainly conflicts with Congress' direction that *all* U.S. Attorneys are "subject to removal by the President." 28 U.S.C. § 541(c). And it incredibly construes the statutory framework to grant the Senate an effective veto over the removal of an executive officer—the exact kind of veto the Supreme Court held unconstitutional in *Myers v. United States*, 272 U.S. 52, 176 (1926), when it invalidated the Tenure of Office Act. The Court should grant an immediate administrative stay and stay pending appeal.

"[T]he Framers decided to vest '[t]he executive Power' in one person—'a President of the United States of America.'" *Trump v. Slaughter*, 146 S. Ct. 2283, 2291 (2026) (quoting U.S. Const. art. II, § 1, cl. 1). "Because no one could 'execute the laws' 'alone and unaided,'" *id.* (quoting *Myers*, 272 U.S. at 117), "the Framers expected that the President would rely on subordinate officers for assistance," *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020). And to oversee those subordinates, "the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties,'" because without that power of removal "the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* (quoting *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 513–14 (2010)). That accountability is critical for U.S. Attorneys, who serve as the federal government's chief law enforcement officers for the Nation's judicial districts, and wield the President's "conclusive and preclusive" prosecutorial powers under Article II. *Trump v. United States*, 603 U.S. 593, 620 (2024).

The district court here appointed plaintiff to serve as the U.S. Attorney for the Western District of Washington under 28 U.S.C. § 546(d) when that office was vacant. But the President then exercised his statutory and constitutional prerogative to remove plaintiff—as he has often done for court-appointed U.S. Attorneys, and as courts have consistently recognized he has the authority to do. But remarkably, the district court reinstated plaintiff and ordered that he shall continue to serve as U.S. Attorney indefinitely unless the Senate sees fit to confirm a replacement. Op. 7.

That order is fundamentally flawed and certain to be reversed. To begin, it flatly conflicts with the President's unambiguous statutory authority to remove plaintiff from office. Congress made explicit that "[e]ach United States attorney is subject to removal by the President," without limitation. 28 U.S.C. § 541(c). Nothing in that provision or any other carves out removal restrictions for U.S. Attorneys, court-appointed or otherwise. *See United States v. Gantt*, 194 F.3d 987, 999 n.5 (9th Cir. 1999) (U.S. Attorneys appointed under § 546(d) "are fully-empowered United States Attorneys").

And even if ambiguity existed, it would be resolved by the canon of constitutional avoidance. Indeed, the district court's construction prohibiting *anyone* in the Executive Branch from removing plaintiff from the office of U.S. Attorney for *any* reason is patently unconstitutional. U.S. Attorneys exercise the "quintessentially executive power" of criminal prosecution. *Seila Law*, 591 U.S. at 219. In other words, U.S. Attorneys "exercise the *President's* power, not their own, and thus must be *responsible* to him" and "subject to removal by him." *Slaughter*, 146 S. Ct. at 2310. For once plaintiff is in office, "it is only the authority that can remove him * * * that he must fear and, in the performance of his functions, obey." *Bowsher v. Synar*, 478 U.S. 714, 726 (1986).

Even if Congress could enact removal restrictions for certain "inferior officers with limited duties and no policymaking or administrative authority," *Seila Law*, 591 U.S. at 218, U.S. Attorneys do not fall within this exception to the President's removal power. Their ability to investigate, prosecute, sue, and settle cases obviously vests them with significant policymaking authority on how to administer the enforcement of criminal and civil law. And here, the

district court has not just severely restricted the grounds for removal, *cf. Free Enterprise*, 561 U.S. at 503 (invalidating extremely circumscribed grounds for removal), but "completely stripped" the President of any authority to remove plaintiff, *Morrison v. Olson*, 487 U.S. 654, 692 (1988), even if he were to engage in gross misconduct or adopt prosecutorial policies wholly inconsistent with the Attorney General's. Under the district court's order, the Senate has an effective veto over removing a court-appointed U.S. Attorney—by withholding advice and consent of the President's nominee—which the Supreme Court has repeatedly held is flatly unconstitutional. *See, e.g.*, *Slaughter*, 146 S. Ct. at 2298–99.

The equities equally compel a stay. The Supreme Court has repeatedly explained that "'the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform h[is] statutory duty.'" *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (quoting *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025)). Accordingly, the Supreme Court has stayed orders reinstating executive officers who wield core executive power and have no

constitutional basis for insulation from the President. *See, e.g.*, *Trump v. Slaughter*, 146 S. Ct. 18 (2025) (staying order reinstating executive officer); *Boyle*, 145 S. Ct. at 2654 (similar); *Wilcox*, 145 S. Ct. at 1415 (similar). Those orders "inform how a court should exercise its equitable discretion in like cases," *Boyle*, 145 S. Ct. at 2654, and confirm that "[a] stay is appropriate to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation," *Wilcox*, 145 S. Ct. at 1415.

A stay pending appeal is warranted. Given the established irreparable harm to the Executive Branch, we request a ruling on the stay motion by Monday, October 5, 2026. And because of the chaos that would be caused by the district court's order altering the leadership of a prosecutorial office—which will inevitably be reversed—the Court should grant an immediate administrative stay while it considers this motion.

## STATEMENT

### A. Legal Background

The default for the appointment of U.S. Attorneys is that "[t]he President shall appoint, by and with the advice and consent of the

Senate, a United States attorney for each judicial district" for a four-year term. 28 U.S.C. § 541(a), (b). When there is a vacancy, however, Congress has provided for two other methods of appointment. First, the Attorney General can appoint a U.S. Attorney, who may serve until the earlier of 120 days or when the Senate has confirmed a new U.S. Attorney. *Id.* § 546(a)–(c). And second, if such an appointment expires after 120 days without a confirmed U.S. Attorney, then "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d).[1] U.S. Attorneys appointed under 28 U.S.C. § 546 are "fully-empowered United States Attorneys," and do not serve in an acting capacity. *See Gantt*, 194 F.3d at 999 n.5.

Congress further provided that "[e]ach United States attorney is subject to removal by the President." 28 U.S.C. § 541(c). That is consistent with our constitutional structure, because "[i]nvestigative and prosecutorial decisionmaking is 'the special province of the Executive Branch,' and the Constitution vests the entirety of the executive power in the President." *Trump*, 603 U.S. at 620.

---

[1] Separately, an Acting U.S. Attorney may be designated under the Federal Vacancies Reform Act ("FVRA"). 5 U.S.C. § 3345.

### B. Factual Background And Prior Proceedings

In May 2024, the U.S. District Court for the Western District of Washington appointed Tessa Gorman to be the U.S. Attorney for the Western District of Washington. *See* General Order 06-24 (W.D. Wash. May 9, 2024), https://perma.cc/56NS-KQGN. President Trump removed Gorman from her position in February 2025, after which the first assistant U.S. Attorney became the acting U.S. Attorney under the FVRA. Compl. ¶ 34. Gorman did not challenge that action. *Id.*

On October 6, 2025, the Attorney General appointed Charles Neil Floyd to serve as the U.S. Attorney pursuant to § 546(a). Compl. ¶ 35.[2] After the 120-day limit expired, the district court appointed Rogoff to serve as the U.S. Attorney under 28 U.S.C. § 546(d). General Order 09-26 (W.D. Wash. July 15, 2026), https://perma.cc/R9QC-QJGX.

The President then removed Rogoff from office. *See* Compl. ¶ 44. The Office of Presidential Personnel emailed Rogoff at the President's direction and explained that under the President's authority in "28

---

[2] After Floyd's 120-day term ended, he was designated to serve as the First Assistant U.S. Attorney. Compl. ¶ 36. The President recently nominated Simon Peter Serrano to be U.S. Attorney for the Western District of Washington and designated Floyd as Acting U.S. Attorney pursuant to FVRA § 3345(a)(3). Dkt. 42-2 at 4; Dkt. 42-3.

U.S.C. 541(c) and Article II of the Constitution," Rogoff was removed from office. Dkt. No. 12-5 at 2. President Trump, like other Presidents, has used that statutory and constitutional authority to remove court-appointed U.S. Attorneys. *See* Letter from Harriet Miers to Mark V. Meierhenry (Jan. 9, 2006), https://perma.cc/DHM6-JXYG (removing court-appointed U.S. Attorney "pursuant to Article II of the Constitution and 28 U.S.C. § 541(c)") (PDF Page 24).

Rogoff sued to challenge his removal, and the district court granted Rogoff's motion for a preliminary injunction and reinstated him as U.S. Attorney. Op. 9–10. The court held that 28 U.S.C. § 541(c)'s grant of removal authority to the President did not apply to court-appointed U.S. Attorneys and that § 546(d)'s provision that judicially appointed U.S. Attorneys were to "serve[] until the vacancy is filled" precluded removal by the President. Op. 6–7. The court asserted that "[a]llowing the President to fire a court-appointed U.S. Attorneys would upend the framework created by the Constitution and the statutory framework." Op. 7.

The district court further concluded that the remaining equitable factors justified a preliminary injunction. The court said that plaintiff

would be irreparably harmed because he "has a statutory right to function as the U.S. Attorney for the Western District of Washington" and his "removal would leave the U.S. Attorney's office with no lawfully appointed head, jeopardizing the functioning of the office." Op. 8. And the court asserted that the balance of equities and public interest weighed in plaintiff's favor because "[d]efendants ha[d] not shown they would suffer harm where an injunction would end an unlawful practice[,] * * * the Executive attempts to evade Senate advice and consent[]" tipped this factor in favor of Rogoff, and "[t]he unlawful wielding of federal prosecutorial power by someone without authority to do so injures the public interest." Op. 8.

In addition to reinstating Rogoff as U.S. Attorney, the district court also enjoined the Attorney General from firing Rogoff, "[p]urport[ing] to remove" him, "in any way treat[ing] him as having been removed[,] * * * [d]eny[ing] or obstruct[ing]" him "from accessing any of the benefits or resources of his position[,] * * * [o]therwise obstruct[ing]" him "from his ability to carry out the duties of the U.S. Attorney[,]" or "[t]reat[ing] any individual other than" him "as U.S. Attorney for the Western District of Washington." Op. 9–10.

The court denied the government's request to stay the injunction pending appeal. Op. 9.

## ARGUMENT

The government is entitled to a stay pending appeal of the preliminary injunction because the government is likely to succeed on the merits, it will suffer irreparable harm absent a stay, and the balance of the equities and public interest favor a stay. *See Nken v. Holder*, 556 U.S. 418, 425–26 (2009). Accordingly, both the Supreme Court and the Courts of Appeals have stayed district court orders reinstating removed executive officers. *See Slaughter*, 146 S. Ct. at 18; *Boyle*, 145 S. Ct. at 2653; *Wilcox*, 145 S. Ct. at 1415; *Harper v. Bessent*, 2025 WL 2426660, at *1 (D.C. Cir. Aug. 21, 2025); *Grundmann v. Trump*, 2025 WL 1840641, at *1 (D.C. Cir. July 3, 2025); *Dellinger v. Bessent*, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025).

A stay is even more warranted here. The President has clear statutory and constitutional authority to remove plaintiff from his office as U.S. Attorney. *See* 28 U.S.C. § 541(c); *Slaughter*, 146 S. Ct. at 2310 ("Subordinates who exercise the President's power are subject to removal by him."). And the government's irreparable harm "from an

order allowing a removed officer to continue exercising the executive power," *Boyle*, 145 S. Ct. at 2645, is especially serious with respect to a court-appointed prosecutor wielding the President's "conclusive and preclusive" power, *Trump*, 603 U.S. at 620–21, to prosecute individuals for criminal offenses. A stay should be immediately entered, which would allow the validly designated Acting U.S. Attorney to continue lawfully running the office, and avoid the chaos of a temporary change in leadership that will inevitably be reversed in the weeks to come.

## I. The Government Is Likely To Succeed In Showing That Plaintiff Has Been Lawfully Removed

Congress categorically provided that "[e]ach United States attorney is subject to removal by the President." 28 U.S.C. § 541(c). And the Supreme Court has repeatedly affirmed "the general rule that the President possesses 'the authority to remove those who assist him in carrying out his duties.'" *Seila Law*, 591 U.S. at 215; *accord Slaughter*, 146 S. Ct. at 2310 ("Subordinates who exercise the President's power are subject to removal by him.").

### A. Congress provided by statute that all U.S. Attorneys are removable by the President

**1.** This Court can resolve this motion and the entire case through straightforward statutory interpretation. Congress clearly authorized the President to remove U.S. Attorneys by providing that "[e]ach United States attorney is subject to removal by the President." 28 U.S.C. § 541(c). This provision applies to each and every U.S. Attorney, whether appointed by the President, the Attorney General, or a district court. The statutory term "each" "denotes or refers to every one of the persons or things mentioned." *Each*, Black's Law Dictionary 597 (rev. 4th ed. 1968). There is no dispute that the district court appointed Rogoff "to be the United States Attorney for the Western District of Washington." General Order 09-26 at 2-3. Because Rogoff was a "United States attorney," he was plainly "subject to removal by the President." 28 U.S.C. § 541(c).

Statutory context confirms that conclusion. "[A] word or phrase is presumed to bear the same meaning throughout a text." *United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023). Elsewhere, Congress provided that "each United States attorney" shall "prosecute for all offenses against the United States," 28 U.S.C. § 547, and that obviously

grants authority to all U.S. Attorneys, however appointed. The "each" in § 547 applies to empower all U.S. Attorneys, just as the "each" in § 541 applies to all U.S. Attorneys to provide for their removal.

Thus, this Court explained that "Section 546(d) appointments are fully-empowered United States Attorneys," and nothing "distinguish[es] between United States Attorneys appointed pursuant to 28 U.S.C. § 541 and those appointed under § 546(d)." *Gantt*, 194 F.3d at 999 n.5. Other courts have concluded the same, explaining that under 28 U.S.C. § 541(c) "the President may override the judges' decision and remove an interim United States Attorney." *United States v. Hilario*, 218 F.3d 19, 27 (1st Cir. 2000); *see also United States v. Naviwala*, 825 F. Supp. 3d 451, 474 (D.N.J. 2026) ( "[N]o sound textual basis for reading an exception into section 541(c)" for court-appointed U.S. Attorneys); *United States v. Martinez*, 565 F. Supp. 2d 1270, 1275 (D.N.M. 2008) ("[T]he President may override an interim judicial appointment of a U.S. Attorney.").

**2.** The district court refused to apply § 541(c) to court-appointed U.S. Attorneys, reasoning that this provision refers only to Senate-confirmed U.S. Attorneys. Op. 6–7. Instead, the court held that

Rogoff's tenure is controlled by § 546(d), and concluded that court-appointed U.S. Attorneys *must* serve "until the vacancy is filled" and cannot be removed by the President. *Id.* That reasonings suffers from several errors.

First, the district court cited nothing in the statutory text to support its conclusion that 28 U.S.C. § 541(c) applies to only Senate-confirmed U.S. Attorneys. Op. 6–7. That is because the statutory text contradicts the district court. Congress provided that "[e]ach U.S. Attorney" shall be removable by the President, 28 U.S.C. § 541(c), not "each U.S. Attorney appointed under subsection (a)." It is the only provision governing removal of U.S. Attorneys, and no more specific provision supplants it. *See, e.g.*, *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) (specific provisions control general ones). And nothing in § 546(d), authorizing district court *appointment*, displaces the President's *removal* power. Likewise, while § 541(a) provides for U.S. Attorneys to generally be appointed by the President with Senate confirmation, nothing in that subsection limits the President's removal power to only these—but not other—U.S. Attorneys.

Second, the district court was wrong that the words "until the vacancy is filled" in § 546(d) implicitly restricts the President's authority to remove court-appointed U.S. Attorneys. Op. 6. That provision imposes a limit on the U.S. Attorney's tenure, not a guaranteed entitlement to the office. The Supreme Court has long explained that Congress can provide that officers may serve for a term of years or for other specified periods of time—but such provisions, without more, do not restrict the President's removal power. For example, *Parsons v. United States*, 167 U.S. 324 (1897), held that the President could remove a district attorney who by statute served "for a term of four years," *id.* at 327–28, because he cannot "remain in office longer than that period without being reappointed" and "in the meantime" is subject "to the power of the president to remove," *id.* at 342. That accords with the general rule that Congress must use "'very clear and explicit language'" to "'take away' the power of at-will removal," *Kennedy v. Braidwood Management, Inc.*, 606 U.S. 748, 770–71 (2025). And here, of course, Congress instead *codified* the President's removal power in 28 U.S.C. § 541(c).

Third, under the district court's theory, a court-appointed U.S. Attorney would not be removable *even for cause*. The court concluded that "[o]nce the [c]ourt" appoints a U.S. Attorney, "that decision can be changed *only* by the nomination/confirmation process." Op. 7. In other words, a U.S. Attorney who engaged in gross prosecutorial misconduct or defied the Attorney General's prosecutorial policies would continue to hold office unless and until an uncertain confirmation process between coordinate branches of government played out. That is a "highly counterintuitive result" that any reasonable statutory interpretation should avoid. *Yellen v. Confederated Tribes of the Chehalis Reservation*, 594 U.S. 338, 359–60 (2021).

Fourth, the court erroneously suggested that grafting an atextual removal restriction onto the statute was necessary to "incentive[ize]" the President to "nominate a candidate that can be conferred by the Senate." Op. 7. But clear statutory text cannot be subordinated to a court's "vague notions of a statute's 'basic purpose.'" *Mertens v. Hewitt Associates*, 508 U.S. 248, 261 (1993). And the district court's concerns are misguided in any event. Because U.S. Attorneys are inferior officers, the Constitution does not require they be Senate confirmed in

the first place. *See Braidwood*, 606 U.S. at 760. And there is no question that the President can designate Acting U.S. Attorneys pursuant to the FVRA; indeed, as explained, the President has exercised that authority here to designate Floyd to serve in that role. *See supra* p.8 n.2. It makes no sense to strip the President of his statutory power to remove a U.S. Attorney to deter him from exercising his statutory authority to designate an Acting U.S. Attorney—particularly when the district court's insistence on Senate confirmation is not constitutionally required at all.

**3.** Because the "plain meaning" of 28 U.S.C. § 541(c) is "unambiguous," it resolves the matter. *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017). But even if there were somehow an ambiguity, it would be resolved by the fact that reading 28 U.S.C. § 546(d) to impose an implicit removal restriction would bring it into direct conflict with Article II. The Court's "task is to seek harmony, not to manufacture conflict," when "legislation and the Constitution brush up against each other." *United States v. Hansen*, 599 U.S. 762, 781 (2023). The canon of constitutional avoidance confirms that § 541(c) means what it says when it subjects each U.S. Attorney to

removal by the President—regardless of whether they are appointed under § 541(a), § 546(a), or § 546(d)—and there is no "canon of 'constitutional collision'" that compels the district court's reading. *Hansen*, 599 U.S. at 781. Reading the statute to deprive the Executive Branch of *any* power to remove a U.S. Attorney would, to say the least, raise "serious constitutional problems," and this Court is "obligated to construe [a] statute to avoid such problems." *Flores-Chaves v. Ashcroft*, 362 F.3d 1150, 1162 (9th Cir. 2004).

### B. The Constitution does not countenance a U.S. Attorney responsible to no one

**1.** Article II requires that the Executive have "exclusive authority and absolute discretion" over criminal prosecutions, which correspondingly requires that the President must have unrestricted authority to remove those responsible for such prosecutorial decisions. *Trump*, 603 U.S. at 620–21 (citing the President's "conclusive and preclusive" removal authority). For once a U.S. Attorney assumes the office of chief federal prosecutor for an entire district, "it is only the authority that can remove him * * * that he must fear and, in the performance of his functions, obey." *Bowsher*, 478 U.S. at 726.

The Constitution vests all of the executive power in the President, and "[t]hat power includes, as a general matter, the authority to remove those who assist him in carrying out his duties." *Free Enterprise*, 561 U.S. at 513–14. That is because "[s]ubordinates who exercise the President's power" can "only" remain "accountable to the President" when they "are subject to removal by him." *Slaughter*, 146 S. Ct. at 2310. For that reason, *Slaughter* expressly overruled a previously recognized exception to the President's removal power for certain multi-member executive agencies. *Id.* at 2302. That leaves a sole remaining exception for "inferior officers with limited duties and no policymaking or administrative authority" as "the outermost constitutional limits of permissible congressional restrictions on the President's removal power." *Seila Law*, 591 U.S. at 218.

Court-appointed U.S. Attorneys do not qualify for this exception because they are "fully-empowered United States attorneys." *Gantt*, 194 F.3d at 999 n.5. They are charged with "prosecut[ing] for all offenses against the United States" and "prosecut[ing] or defend[ing], for the Government, all civil actions, suits or proceedings in which the United States is concerned." 28 U.S.C. § 547(1)–(2). A court-appointed

U.S. Attorney does not have the type of "limited jurisdiction" possessed by the independent counsel in *Morrison v. Olson*, 487 U.S. 654 (1988), who was limited to "prosecut[ing] certain high-ranking Government officials for" certain crimes and only during a "limited tenure." *Id.* at 660, 691. The U.S. Attorney has no comparable limitations and can "bring the coercive power of the state to bear on millions of private citizens." *Seila Law*, 591 U.S. at 219. Nor do U.S. Attorneys resemble the naval cadet engineer from *United States v. Perkins*, 116 U.S. 483, 484 (1886), who was fresh off graduation from the academy, and chiefly focused on maintaining "boilers, and other machinery," *Denig v. United States*, 37 Ct. Cl. 383, 386 (1902). Unlike those officers, U.S. Attorneys possess significant policymaking and administrative authority, as they "retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Indeed, the district court recognized that "U.S. Attorney exercises considerable prosecutorial discretion with little day-to-day" supervision. Op. 9. There is no basis to "extend" any removal restrictions recognized in *Morrison* and *Perkins* "to the 'new situation'" of a federal prosecutor "vested with significant executive power." *Seila Law*, 591 U.S. at 220.

**2.** More fundamentally, the district court's injunction far exceeds the removal restrictions from *Morrison* and *Perkins* because those executive officers could still be removed by the Executive for cause. *Morrison*, 487 U.S. at 663; *Perkins*, 116 U.S. at 485. But under the district court's injunction, plaintiff cannot be removed by *anyone* for *any* reason. The Constitution does not countenance prosecutors removable by no one who thus need not "obey" anyone. *Bowsher*, 478 U.S. at 726.

Under the district court's ruling, neither the President nor any other executive officer could remove a court-appointed U.S. Attorney for even gross misconduct or serious policy disagreements. On this theory, the President could not remove Rogoff even for prosecuting a neighbor with whom he is angry, pursuing prosecutions regardless of any demonstrated legal or factual basis, or refusing to prosecute any immigration-related crimes.

The district court attempted to preempt this concern by "balanc[ing]" the President's removal power with "the Senate's right to confirm" a replacement for a court-appointed U.S. Attorney who goes rogue  Op. 7. But that merely re-enacts the Tenure of Office Act, which likewise gave the Senate a veto over the President's removal power.

The Supreme Court a century ago held that scheme unconstitutional in *Myers*, 272 U.S. at 161–64, 176, because "[t]he Constitution does not contemplate an active role for Congress in the supervision of officers charged with the execution of the laws it enacts[,]" *Bowsher*, 478 U.S. at 722. Under the district court's theory, the Senate could give Rogoff "potentially unlimited tenure" by withholding consent from any Presidential nominee. *Swan v. Clinton*, 100 F.3d 973, 987 (D.C. Cir. 1996).

**3.** Plaintiff's theory—that the appointing court could remove a judicially appointed U.S. Attorney (Dkt. 30 at 5)—fares no better. The removal of executive officers is a core executive power, *Slaughter*, 146 S. Ct. at 2295, and it would be wholly incompatible with the judicial role for Article III judges to exercise that executive power by second guessing how a U.S. Attorney exercises prosecutorial discretion, *see Myers*, 272 U.S. at 122 ("To turn a man out of office is an exercise neither of legislative nor judicial power."). Thus, the First Circuit explained that § 546(d) does not "impermissibly entangle[] judges in the functioning of the Executive Branch" precisely because "the Executive

Branch holds all the trump cards," including the removal power. *Hilario*, 218 F.3d at 27.

**4.** The district court gestured at Appointments Clause concerns, Op. 5, but Rogoff's appointment is undisputed and his removal does not negate Congress's decision to vest his appointment with that court. While removal is often incident to appointment, that is merely a default rule. *See Sampson v. Murray*, 415 U.S. 61, 70 n.17 (1974). It often means an officer is removable by the head of an executive department, who is in turn removable at will by the President. *See Braidwood*, 606 U.S. at 763–64. But the Supreme Court has made clear that the President's constitutional power to remove or direct the removal of executive officers extends to *all* executive officers.

Through the President's removal power, "the lowest officers, the middle grade, and the highest" will "depend, as they ought, on the President, and the President on the community." *Slaughter*, 146 S. Ct. at 2296. Without the power to remove executive officers like plaintiff, "the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Seila Law*, 591 U.S. at 204. The district court's order does not seriously engage

with any of these concerns, which the Supreme Court has recently and repeatedly emphasized in striking down removal restrictions that at least granted the President *some* ability to remove executive officers. The injunction here preventing the Executive Branch from removing plaintiff from the role of U.S. Attorney *at all* goes far beyond these decidedly unconstitutional removal restrictions, and is directly contrary to the President's explicit statutory removal authority. 28 U.S.C. § 541(c).

## II. The Remaining Stay Factors Decisively Favor The Government

The government and public interest will be irreparably injured absent a stay. The Supreme Court has made clear that the government faces irreparable harm when a federal court reinstates a removed executive officer, *see Wilcox*, 145 S. Ct. at 1415, because "neither Congress nor the courts may saddle" the President "with those with whom he *cannot* work," *Slaughter*, 146 S. Ct. at 2310. In case after case, stays have been warranted to prevent the reinstatement of removed officers. *See Slaughter*, 146 S. Ct. at 18; *Boyle*, 145 S. Ct. at 2653; *Wilcox*, 145 S. Ct. at 1415. These decisions "inform how a court should exercise its equitable discretion in like cases," and confirm that

the district court abused its discretion in reinstating plaintiff to the office of U.S. Attorney. *Boyle*, 145 S. Ct. at 2653.[3]

Plaintiff misunderstood *Trump v. Cook*, 146 S. Ct. 2234 (2026), in arguing the decision supports the issuance of a preliminary injunction here. *See* Dkt. 30 at 11–12. *Cook* upheld an order preliminarily enjoining the removal of a Governor of the Federal Reserve based on its "unique historical status and role," stemming from the Founding Era's political insulation of the First and Second Banks of the United States. 146 S. Ct. at 2249, 2254. *Cook* nowhere suggested that a preliminary injunction was the normal or automatic remedy when the President removes a purely executive officer charged with quintessential prosecutorial powers, and *Cook* did not cast doubt on the Court's repeated recognition that reinstating a removed officer irreparably harms the Executive Branch.

Nor can the injunction be justified on the ground that it is necessary to ensure the "U.S. Attorney's office can properly

[3] Plaintiff faces no irreparable harm from his removal, which deprives him of employment and salary. *See Sampson*, 415 U.S. at 92 n.68. Plaintiff's removal also prevents him from exercising the powers of the U.S. Attorney, but a public official's "loss of political power" is not a judicially cognizable harm. *Raines* v. *Byrd*, 521 U.S. 811, 821 (1997).

function." Op. 9. Consistent with the FVRA, the President has designated an Acting U.S. Attorney to oversee the office. *See supra* p.8 n.2. Although the district court's order purports to invalidate that designation, Op. 10, the court provided no reason why the Acting U.S. Attorney could not properly oversee the office. Indeed, this Court recently explained that § 3345(a)(3) "allows the President to appoint senior career staff as acting officers" in these circumstances. *United States v. Jackson*, 187 F.4th 1198, 1212 (9th Cir. 2026). What would undermine the office's functionality and the public interest is an injunction installing a U.S. Attorney "accountable to no one." *Seila Law*, 591 U.S. 224.

**CONCLUSION**

The Court should grant an immediate administrative stay and a stay pending appeal by Monday, October 5, 2026.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL AGUILAR
DAVID L. PETERS
/s/ *Andrew Skaras*
ANDREW SKARAS
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-5425*
*Andrew.p.skaras@usdoj.gov*

OCTOBER 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Local Rules 27-1(d) and 32-3 because it contains 5,192 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Andrew Skaras*
Andrew Skaras

# ADDENDUM

## Relevant Statutes

## District Court Opinion (October 1, 2026)

## Relevant Statutes

### 28 U.S.C. § 541 – United States attorneys

**(a)** The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district.

**(b)** Each United States attorney shall be appointed for a term of four years. On the expiration of his term, a United States attorney shall continue to perform the duties of his office until his successor is appointed and qualifies.

**(c)** Each United States attorney is subject to removal by the President.

### 28 U.S.C. § 541 – Vacancies

**(a)** Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.

**(b)** The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.

**(c)** A person appointed as United States attorney under this section may serve until the earlier of—

> **(1)** the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or
>
> **(2)** the expiration of 120 days after appointment by the Attorney General under this section.

**(d)** If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ROGER ROGOFF,

Plaintiff,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT; TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; and U.S. DEPARTMENT OF JUSTICE,

Defendants.

No. 2:26-CV-02566-SAB

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

Before the Court is Plaintiff's Motion for Preliminary Injunction, ECF No. 8. A hearing on the motion was held on October 1, 2026. Plaintiff was represented by Connor Hoge, Cynthia Long, Daniel Kalish, Donald B. Verrilli, Jr., Hailyn J. Chen, Jason A. Rittereiser, Shannon G. Aminirad, and Victoria A. Degtyareva. Defendants were represented by Brian C. Kipnis.

Plaintiff asks the Court to enter a preliminary injunction against Defendants invalidating his removal as U.S. Attorney for the Western District of Washington,

restoring him to that position, and ensuring that he can continue to serve as U.S. Attorney unimpeded by Defendants until a Senate-confirmed U.S. Attorney is appointed.

**Background**

On July 15, 2026, the judges in the Western District of Washington appointed Plaintiff Roger Rogoff as U.S. Attorney pursuant to 28 U.S.C. § 546(d). The Court's appointment order stated: "Mr. Rogoff is authorized to serve as the United States Attorney for the Western District of Washington until the vacancy is filled by an officer appointed by the President with the advice and consent of the Senate in accordance with the United States Constitution, Article II, Section 2 and 28 U.S.C. § 541(a)." He was sworn in that same day.

Less than an hour after he was sworn in, an email to Rogoff from the Deputy Director of Presidential Personnel stated: "the President of the United States has directed that I inform you that, pursuant to his authority under 28 U.S.C. § 541(c) and Article II of the Constitution, you are hereby removed from the office of the United States Attorney for the Western District of Washington."

Recently, President Trump nominated Simon Peter Serrano to be the U.S. Attorney for the Western District of Washington and directed Charles Neil Floyd to perform the functions and duties of the office of the U.S. Attorney for the Western District of Washington. ECF No. 42. These actions were taken after Plaintiff was appointed by the Court.

**Motion Standard**

A plaintiff seeking a preliminary injunction must demonstrate that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public's interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction may issue where there are "serious questions going to the merits" and "a hardship balance that tips sharply toward the plaintiff,"

if the other two elements are met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

**Legal Framework**

28 U.S.C. § 546 provides a sequential framework for filling temporary vacancies in the position of U.S. Attorney. First, the Attorney General may appoint a U.S. Attorney for the district where the office of U.S. Attorney is vacant. § 546(a). An AG-appointed interim U.S. Attorney serves until the earlier of being appointed by the President and confirmed by the Senate or 120 days after the appointment. § 546(c). If the 120-day period expires without a presidential appointee, the district courts may appoint a U.S. Attorney, who serves until the vacancy is filled. § 546(d).

**Analysis**

Plaintiff has met the requirements for obtaining a preliminary injunction. Initially, the Court notes that Defendants have not disputed that the judges in the Western District of Washington acted in accordance with the express terms of 28 U.S.C. § 546.[1] In October 2025, then Attorney General Pam Bondi appointed

---

[1] (a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.

(b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.

(c) A person appointed as United States attorney under this section may serve until the earlier of—

(1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or

Charles Neil Floyd as interim U.S. Attorney pursuant to § 546(a). He was sworn in on October 6, 2025. Since then, the time period for interim appointments passed and the interim appointment power properly shifted to the district court. Indeed, Defendants rely on this appointment to argue Plaintiff was subject to removal by the President.

**(1) Likelihood of Success on the Merits**

Plaintiff is likely to succeed on the merits because section 546(d) precludes his firing by the President. This case starts and ends with the U. S. Constitution and the central principle of the separation of powers. The Court is ruling with these fundamental principals in mind.

U.S. Constitution, Article 2, Section 2, Clause 2 provides the foundation:

> [The President] shall have power, by and with the advice and consent of the Senate, to make treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the advice and consent of the Senate, shall appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law. . .

Const. Art. 2, Sec. 2 cl. 2.

Generally, the President has the power to nominate many officers—who then need to be confirmed by the Senate. However, "inferior officers" are treated differently.[2]

---

(2) the expiration of 120 days after appointment by the Attorney General under this section.

(d) If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

[2] The parties agree, and the law is clear, that the office of U.S. Attorney is an "inferior office" as that term is used in Article 2.

> . . . *but* the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments.

*Id.* (emphasis added).

This provision in the Constitution provides a check on Executive power and authority both by the way it is positioned within Article 2, beginning with the contours of the Executive powers, and the way it is worded, including the phrase "but the Congress." This phrase clarifies that the powers granted and defined in the first part of the clause are limited by the second part of the sentence.

This begs the question, then—to whom did Congress vest the appointment of inferior officers? That is answered by 28 U.S.C. §§ 541 and 546.

Section 541(a) states the vacancy can be filled first by the President subject to Senate confirmation. Section 546 provides that absent the nomination/confirmation process, the Department Head (Attorney General) can fill the vacant position for a limited period of time. § 546(a),(c). Once that time expires, the District Court may appoint a U.S. Attorney *until that vacancy is filled*. It does not say until that person is fired by the President. § 546(d).

In other words, Congress did *not* give the power to fill this "inferior office" to the President alone. In fact, Congress had the power to make the choice, and it made that choice in three ways:

- Under some circumstances a vacancy can be filled by the President—but unless there is a Senate confirmation, such appointment has a time limitation. 5 U.S.C. §§ 3345-3346.
- Under some circumstances a vacancy can be filled by the Attorney General as Department Head, but again, such an appointment has a time limitation. 28 U.S.C. § 546(a-c).
- Under some circumstances a vacancy can be filled by the Court. And under these circumstances, there is no time limitation. 28 U.S.C. §

546(d).

Thus, only Senate-confirmed presidential appointments and court-appointed U.S Attorneys are not limited by a fixed expiration date.

The U.S. Constitution and statutes set out a clear framework for the process of appointing a U.S. Attorney. What needs to be decided in this case, and which appears to be one of first impression, is under the framework described above, can the President fire a U.S. Attorney appointed by the District Court? The answer to that question involves careful reading of the Article 2—the Appointments Clause—and the three statutes discussed above. In doing so, the Court must give effect to all these provisions, not an interpretation that nullifies parts of the whole.

Can the President fire a court-appointed U.S. Attorney? No. The President cannot unilaterally fire a U.S. Attorney appointed by the Court. A court-appointed U.S. Attorney is not an acting U.S. Attorney nor are they an interim U.S. Attorney. Section 546(d) provides that a court-appointed U.S. Attorney serves until "the vacancy is filled," which can only be done by the nomination/confirmation process

Section § 546(d) provides "a sensible framework that tends to prevent the passage of lengthy periods of time without a United States Attorney in place." *United States v. Hilario*, 218 F.3d 19, 23 (1st Cir. 2000) ("Congress may well have determined that it would be worse for a district to be without a United States Attorney than for the district to have one who had not been nominated and confirmed in the ordinary course.")

According to Defendants, 28 U.S.C. § 541(c) applies to court-appointed U.S. attorneys, and therefore, the President possesses statutory authority to remove court-appointed U.S. attorneys. Defendants argue that § 541(c) is the only provision addressing the removal of U.S. Attorneys. This is true, in part. But it is limited to the removal of U.S. Attorneys in office by the nomination/confirmation process contemplated by § 541(a), not court-appointed U.S. Attorneys appointed pursuant to a separate statute, § 546(d). Defendants' interpretation would render

meaningless the limits 28 U.S.C. § 546 imposes on the Executive's ability to circumvent the Senate's advice-and-consent framework. Thus, while the President has the power to remove executive officer whom he has appointed, *see Trump v. United States*, 603 U.S. 593 (2024), it does not follow he has authority to remove executive officers that he has *not* appointed. Notably, while Defendants argue the President has constitutional removal powers, they have not provided any legal support or citation to prove their premise.

Allowing the President to fire a court-appointed U.S. Attorney would upend the framework created by the Constitution and the statutory framework, which together balances the President's right to appoint and the Senate's right to confirm. Allowing the President to fire a court-appointed U.S. Attorney also eliminates the incentive to nominate a candidate that can be conferred by the Senate—in other words, bypassing the requirement that the Executive and Legislative branches work together to nominate and confirm the U.S. Attorney.

Reading and applying §§ 541 and 546 to cover different scenarios is the only interpretation that maintains a coherent regulatory scheme. Neither Congress nor the President can unilaterally and permanently fill the office. The two branches must work together to fill the office for longer than the short periods of time authorized by the statutes. When the two branches refuse or fail to cooperate in the nomination/confirmation process, then and only then can the Court act to file the role. Once the Court acts and fills the rule, however, that decision can be changed *only* by the nomination/confirmation process.

Under this framework, the Court concludes the following:

1. Roger Rogoff is the U.S. Attorney for the Western District of Washington and has been the rightful holder of that office since July 15, 2026.
2. Simon Peter Serrano is not the U.S. Attorney for the Western District of Washington because he has only been nominated but not confirmed by

the Senate.

3. Charles Neil Floyd is not the U.S. Attorney in the Western District of Washington because the Court had already acted prior to the President's Order, and Mr. Floyd has not been either nominated or confirmed.

**(2) Irreparable harm**

Plaintiff has shown that his purported removal as U.S. Attorney will cause him irreparable harm absent injunctive relief. Plaintiff has a statutory right to function as the U.S. Attorney for the Western District of Washington. Additionally, Plaintiff's removal would leave the U.S. Attorney's office with no lawfully appointed head, jeopardizing the functioning of the office.

**(3) Balance of equities**

The balance of equities favors the granting of a preliminary injunction. Defendants have not shown they would suffer harm where an injunction would end an unlawful practice. Moreover, this case concerns Congress's exercise of its constitutional authority to vest the appointment poser in the court, plus the Executive attempts to evade Senate advice and consent, which tip in favor of Plaintiff. The unlawful wielding of federal prosecutorial power by someone without authority to do so injures the public interest.

**(4) Public Interest**

The public interest is strongly in favor of granting a preliminary injunction. Failure to grant the injunction would result in the executive branch flaunting the Court's Orders. Failure to grant the injunction would upend the balance between the executive, judicial, and congressional branches of the government that is set out in the U.S. Constitution, as well as § 546. Allowing the President to fire Plaintiff at will (and any other U.S. Attorney duly and lawfully appointed by the Court) would undo the careful balancing put in place by Congress when it passed § 546.

The public has an interest in the proper administration of justice. It is unclear

whether the U.S. Attorney's office can properly function without a lawfully appointed U.S. Attorney, or whether continuing to do so would result in dismissal of criminal actions. Lawful appointments matter because a U.S. Attorney exercises considerable prosecutorial discretion with little day-to-day judicial review.

**Bond or Stay**

The Court does not find a stay of this Order is necessary. Plaintiff has made a strong showing of success. He has shown he will be irreparably harmed if the case is stayed. Defendants have not shown a strong likelihood of success, irreparable injury, or that the balance of hardship tips in their favor. It is in the public's interest to have the Executive branch follow the law and Plaintiff has been duly sworn in. No bond is needed because the Government would not be harmed and would receive the benefit of Plaintiff's service.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Preliminary Injunction, ECF No. 8, is **GRANTED**.

2. Defendants' Unopposed Motion for Order Taking Judicial Notice, ECF No. 42, is **GRANTED**.

3. Because Plaintiff has met his burden of showing that the granting of a preliminary injunction is appropriate, the Court orders the following:

   (a) Until the vacancy of the Office of the U.S. Attorney for the Western District of Washington is filled via Senate confirmation, Defendants Executive Office of the President, Acting Attorney General Todd Blanche, and the Department of Justice shall not:

      (i) Effectuate any purported firing of Plaintiff Roger Rogoff from his position as U.S. Attorney for the Western District of Washington;

(ii) Purport to remove Plaintiff Roger Rogoff from his position as U.S. Attorney for the Western District of Washington or in any way treat him as having been removed;

(iii) Deny or obstruct Plaintiff Roger Rogoff from accessing any of the benefits or resources of his position as U.S. Attorney for the Western District of Washington;

(iv) Otherwise obstruct Plaintiff Roger Rogoff from his ability to carry out the duties of the U.S. Attorney for the Western District of Washington; or

(v) Treat any individual other than Plaintiff Roger Rogoff as U.S. Attorney for the Western District of Washington or the chief federal law enforcement officer of the district.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 1st day of October 2026.

Stanly A. Bastian
U.S. District Judge