No. 26-6445

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

ROGER ROGOFF,

*Plaintiff-Appellee,*

v.

DONALD J. TRUMP,
President of the United States, in his official capacity, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Washington

**BRIEF FOR APPELLANTS**

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL AGUILAR
DAVID L. PETERS
ANDREW SKARAS
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-5425*

# TABLE OF CONTENTS


**Page**

INTRODUCTION .......... 1

STATEMENT OF JURISDICTION .......... 5

STATEMENT OF THE ISSUE .......... 6

STATEMENT OF THE CASE .......... 6

A. Legal Background .......... 6

B. Factual Background And Prior Proceedings .......... 7

SUMMARY OF ARGUMENT .......... 11

STANDARD OF REVIEW .......... 15

ARGUMENT .......... 16

I. Rogoff Is Unlikely To Prevail On The Merits. .......... 16

A. Congress provided that all U.S. Attorneys are removable by the President. .......... 17

B. The President must have authority to remove U.S. Attorneys. .......... 30

II. The Remaining Equitable Factors Decisively Favor The Government .......... 48

CONCLUSION .......... 52

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

TABLE OF CONTENTS

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Bowsher v. Synar*,
478 U.S. 714 (1986) .................................................... 4, 14, 15, 35, 37, 43

*Clinton v. Jones*,
520 U.S. 681 (1997) ................................................................................ 32

*Collins v. Yellen*,
594 U.S. 220 (2021) ................................................................................ 30

*CVS Health Corp. v. Vividus, LLC*,
878 F.3d 703 (9th Cir. 2017) ................................................................ 28

*Denig v. United States*,
37 Ct. Cl. 383 (1902) ............................................................................. 47

*Edmond v. United States*,
520 U.S. 651 (1997) ................................................................................ 36

*Flores-Chaves v. Ashcroft*,
362 F.3d 1150 (9th Cir. 2004) ............................................................... 29

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010) ........................................................ 31, 32, 38, 43, 44

*Hooks v. Kitsap*,
816 F.3d 550 (9th Cir. 2016) .................................................................... 7

*Kennedy v. Braidwood Management, Inc.*,
606 U.S. 748 (2025) ....................................................... 13, 24, 35, 37, 38

*Mohamad v. Palestinian Auth.*,
566 U.S. 449 (2012) ................................................................................ 25

*Morrison v. Olson*,
487 U.S. 654 (1988) ................................ 13, 26, 36, 38, 39, 41, 46, 47, 48

*Morton v. Mancari*,
417 U.S. 535 (1974) ................................................................................ 23

*Murray v. The Schooner Charming Betsy*,
6 U.S. (2 Cranch) 64 (1804).....................................................................30

*Myers v. United States*,
272 U.S. 52 (1926) .......................................... 4, 14, 15, 25, 35, 38, 42, 43

*Nken v. Holder*,
556 U.S. 418 (2009) .................................................................................. 16

*NLRB v. Catholic Bishop of Chi.*,
440 U.S. 490 (1979) ................................................................................. 29

*Norbert v. City and County of San Francisco*,
10 F.4th 918 (9th Cir. 2021) .................................................................. 15

*Parsons v. United States*,
167 U.S. 324 (1897) ........................................................................... 21, 23

*Public Citizen v. U.S. Dep't of Justice*,
491 U.S. 440 (1989) ............................................................................. 3, 29

*Raines v. Byrd*,
521 U.S. 811 (1997) ................................................................................. 49

*Sampson v. Murray*,
415 U.S. 61 (1974) ................................................................................... 49

*Sealed Case, In re*,
838 F.2d 476 (D.C. Cir. 1988) ................................................................ 41

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) .......... 12, 30, 31, 32, 33, 35, 37, 38, 39, 44, 46, 47, 48

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) ................................................................ 30

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) .................................................................. 5, 15, 48, 49

*Trump v. Cook*,
146 S. Ct. 2234 (2026) ............................................................................. 24

*Trump v. Slaughter*:
146 S. Ct. 18 (2025) ................................................................................. 48
146 S. Ct. 2283 (2026) ........................................ 3, 13, 16, 20, 30, 32, 33,
34, 37, 39, 40, 42, 43, 46

*Trump v. United States*,
603 U.S. 593 (2024) .................................................... 3, 11, 13, 40

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) ..................................... 5, 15, 48, 49, 50, 51

*United States v. Armstrong*,
517 U.S. 456 (1996) ................................................. 6, 17, 38, 47

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) ............................................................. 36

*United States v. Donziger*,
38 F.4th 290 (2d Cir. 2022) ................................................ 42

*United States v. Gantt*,
194 F.3d 987 (9th Cir. 1999) ....................................... 2, 7, 19

*United States v. Germaine*,
99 U.S. 508 (1879) ............................................................. 36

*United States v. Hansen*,
599 U.S. 762 (2023) ........................................................... 29

*United States v. Hilario*,
218 F.3d 19 (1st Cir. 2000) ............................................ 19, 41

*United States v. Jackson*,
187 F.4th 1198 (9th Cir. 2026) ......................................... 5, 27

*United States v. Martinez*,
565 F. Supp. 2d 1270 (D.N.M. 2008) ............................. 19, 42

*United States v. Naviwala*,
825 F. Supp. 3d 451 (D.N.J. 2026) ................................. 19, 41

*United States v. Paulson*,
68 F.4th 528 (9th Cir. 2023) ............................................... 18

*United States v. Perkins*,
116 U.S. 483 (1886) .......................................................... 46, 48

*United States v. Solomon*,
216 F. Supp. 835 (S.D.N.Y. 1963) ................................... 19, 42

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .................................................................. 16

**U.S. Constitution:**

Art. II, § 1, cl. 1 .................................................................. 31

Art. II, § 2, cl. 2 .................................................................. 26, 35, 36

Art. II, § 3 .................................................................. 6, 31

**Statutes:**

Act of Mar. 2, 1867, ch. 154, 14 Stat. 430 .................................................................. 14

Act of Sep. 24, 1789, ch. 20, 1 Stat. 73 .................................................................. 20

Act of May 15, 1820, ch. 102, 3 Stat. 582 .................................................................. 20

Act of Mar. 3, 1863, ch. 93, 12 Stat. 768 .................................................................. 20, 21

Act of Mar. 2, 1867, ch. 154, 14 Stat. 430 .................................................................. 42

Federal Vacancies Reform Act of 1998:
5 U.S.C. § 3345 .................................................................. 7, 27
5 U.S.C. § 3345(a)(3) .................................................................. 9
5 U.S.C. § 3346(a)(2) .................................................................. 9

Pub. L. No. 99-646, 100 Stat. 3592 (1986) .................................................................. 21-22

Pub. L. No. 109-177, 120 Stat. 192 (2006) .................................................................. 22

Pub. L. No. 110-34 121 Stat. 224 (2007) .................................................................. 22

28 U.S.C. § 482 (1940) .................................................................. 21

28 U.S.C. § 511 (1940) .................................................................. 21

28 U.S.C. § 504 (1964) .................................................................. 21

28 U.S.C. § 506 (1964) .................................................................. 21

28 U.S.C. § 541 .................................................................. 19

28 U.S.C. § 541(a) .......... 6, 17

28 U.S.C. § 541(b) .......... 6

28 U.S.C. § 541(c) .......... 2, 7, 8, 9, 11, 12, 16, 18, 19, 23, 25, 28

28 U.S.C. § 541(c) (2000) .......... 22

28 U.S.C. § 546 .......... 7

28 U.S.C. § 546(a) .......... 7, 8, 17

28 U.S.C. § 546(c) .......... 7, 17

28 U.S.C. § 546(d) .......... 2, 7, 9, 12, 18,, 51

28 U.S.C. § 547 .......... 13, 18

28 U.S.C. § 547(1) .......... 3, 6, 17, 47

28 U.S.C. § 547(2) .......... 6, 17

28 U.S.C. § 547(4) .......... 17

28 U.S.C. § 1292(a)(1) .......... 5

28 U.S.C. § 1331 .......... 5

28 U.S.C. § 1361 .......... 5

28 U.S.C. § 2201 .......... 5

28 U.S.C. § 2202 .......... 5

**Rule:**

Fed. R. App. P. 4(a)(1)(B) .......... 5

**Legislative Materials:**

1 Annals of Cong. (J. Madison) .......... 33, 34

H.R. Rep. No. 110-58 (2007) .......... 22

**Other Authorities:**

Administrative Office of the United States Courts, *Table C-3—U.S. District Courts—Civil Statistical Tables For the Federal Judiciary (June 30, 2026)*, https://perma.cc/MR9M-F3AT .......... 44

Administrative Office of the United States Courts, *Table D-3—U.S. District Courts–Criminal Statistical Tables For The Federal Judiciary (June 30, 2026)*, https://perma.cc/DUU8-UHRV .......... 44

*Each*, Black's Law Dictionary (rev. 4th ed. 1968) .......... 18

Letter from Harriet Miers to Mark V. Meierhenry (Jan. 9, 2006), https://perma.cc/DHM6-JXYG .......... 8

James Madison, *Notes of Debates in the Federal Convention of 1787* (Adrienne Koch ed., Ohio Univ. Press 1966) (1840) .......... 36

Press Release, USAO Northern District of California, *U.S. District Court Appoints Craig H. Missakian as United States Attorney for the Northern District of California* (Sep. 17, 2025), https://perma.cc/X3WF-PBR4 .......... 26

The Federalist No. 70 (A. Hamilton) (Jacob E. Cooke ed., 1961) .......... 31, 32

*Temporary Filling of Vacancies in the Office of United States Attorney*, 27 Op. O.L.C. 149 (2003) .......... 7

30 Writings of George Washington (John C. Fitzpatrick ed. 1939) .......... 32

USAO District of Alaksa, *U.S. Attorney Michael J. Heyman*, https://perma.cc/3FM5-6TFT .......... 26

USAO District of Arizona, *U.S. Attorney Timothy Courchaine*, https://perma.cc/LVY9-VCUT .......... 26

USAO Oregon, *U.S. Attorney Scott E. Bradford*, https://perma.cc/9PZ3-XZ88 .......... 26

## INTRODUCTION

The question in this case is whether the United States Attorney for the Western District of Washington—that is, the Executive official most immediately responsible for prosecuting federal crimes and defending claims against the United States in a district that encompasses millions of people and one of the Nation's most prominent cities—must be subject to supervision and removal by the President of the United States.

In the district court's view, the answer is no. The district court ordered the immediate reinstatement of plaintiff Roger Rogoff, who had been appointed as U.S. Attorney by the district court and fired by the President. More than that, the district court enjoined the Attorney General from "obstruct[ing]" Rogoff in carrying out his duties as U.S. Attorney. ER-12. The court further declared that Rogoff cannot be removed from that office, by the President or anyone else, unless and until the Senate consents to his replacement. ER-11-12. Thus, in the district court's view, the chief federal prosecutor for the Western District of Washington may wield the core executive power of criminal law enforcement however he pleases—without accountability to anyone, without risk of removal for any cause, and without regard to whether he is insubordinate, corrupt, incompetent,

or malfeasant—for the foreseeable future, unless the Senate agrees to confirm a replacement.

The district court's injunction is indefensible and warrants immediate reversal. To begin, the district court's order flatly contradicts the governing statute. Congress provided that "[e]ach United States attorney is subject to removal by the President," without limitation. 28 U.S.C. § 541(c). As this Court has recognized, court-appointed U.S. Attorneys like Rogoff "are fully-empowered United States Attorneys." *United States v. Gantt*, 194 F.3d 987, 999 n.5 (9th Cir. 1999). Under the plain terms of section 541(c), therefore, Rogoff is "subject to removal by the President." Nothing in that provision or the provision authorizing court-appointed U.S. Attorneys, 28 U.S.C. § 546(d), carves out an exception to at-will removal for court-appointed U.S. Attorneys. The district court side-stepped section 541(c)'s clear language and reasoned instead that construing the statute to nullify the President's removal authority for court-appointed U.S. Attorneys better serves the "incentive[s]" "created by the Constitution and the statutory framework." ER-9. But the district court had no license to subordinate the unambiguous statutory text to the court's own notions of the statute's purpose.

Even if there were any ambiguity in section 541(c), it would be resolved by the canon of constitutional avoidance. The President must have authority to remove U.S. Attorneys under Article II. The Supreme Court has made clear that all "[s]ubordinates who exercise the President's power are subject to removal by him." *Trump v. Slaughter*, 146 S. Ct. 2283, 2310 (2026). U.S. Attorneys are plainly executive officers because they exercise the President's "conclusive and preclusive" authority to "investigate and prosecute" crimes, *Trump v. United States*, 603 U.S. 593, 620 (2024), and they do so for their entire district, 28 U.S.C. § 547(1). Because all U.S. Attorneys "exercise the *President's* power," they are the President's subordinates and "must be *responsible* to him." *Slaughter*, 146 S. Ct. at 2310. The district court's interpretation of the governing statutes cannot be reconciled with these principles. It was the court's obligation to "construe the statute to avoid" "serious constitutional problems," not to conjure constructions that run headlong into separation-of-powers concerns. *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 466 (1989).

For the foregoing reasons, the Court can reverse on statutory grounds alone. But if more were needed, the district court's injunction contravenes at least a century of Supreme Court precedent. Enforcing the criminal laws of the United States is a quintessential executive function, *Trump*, 603 U.S.

at 620, and it is the President who is accountable in our constitutional order for all exercises of executive power, *Slaughter*, 146 S. Ct. at 2310. No one thinks Congress could validly enact a statute establishing the U.S. Attorney's Office in Seattle as a constitutional island uniquely independent of oversight by the President (or anyone else). Yet that is not merely the effect, but the avowed *purpose* of the district court's injunction. Even if Rogoff were to engage in gross prosecutorial misconduct or flout the Attorney General's policy directives, the President's only recourse under the district court's view would be to lobby the Senate to confirm a permanent replacement. Moreover, in thereby granting the Senate an effective veto over Rogoff's removal, the district court's order effectively resurrects the scheme of the Tenure in Office Act, which the Supreme Court famously condemned in *Myers v. United States*, 272 U.S. 52, 176 (1926). Since then, the Supreme Court has made clear that a "direct congressional role in the removal of" executive officers "is inconsistent with separation of powers." *Bowsher v. Synar*, 478 U.S. 714, 723 (1986). But that is precisely what the district court's injunction contemplates here.

In all events, the equities independently warrant reversal of the injunction. The Supreme Court has repeatedly explained that "the Government faces greater risk of harm from an order allowing a removed

officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform h[is] statutory duty." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (quoting *Trump v. Wilcox*, 145 S. Ct. 1415, 1416-17 (2025)). Those harms "great[ly]" outweigh any of the "statutory" injuries Rogoff claims here. *Id.* The disruption and uncertainty created by the district court's injunction is only underscored by the fact that, in compliance with *United States v. Jackson*, 187 F.4th 1198 (9th Cir. 2026), the President has lawfully designated an Acting U.S. Attorney who should be serving the district, ER-13-14.

For the foregoing reasons and those discussed below, the Court should reverse the district court's order and vacate the preliminary injunction. If the Court were inclined to affirm, however, the government respectfully requests that the Court leave the administrative stay in place for at least 14 days to provide the Solicitor General sufficient time to seek relief from the Supreme Court.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1361, 2201, and 2202. ER-32. On October 1, 2026, the district court entered a preliminary injunction reinstating plaintiff to the office of the U.S. Attorney. ER-11-12. The government filed a timely notice of

appeal the same day. ER-55; *see* Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUE

Whether plaintiff is entitled to a preliminary injunction reinstating him to serve as U.S. Attorney, notwithstanding his removal by the President.

## STATEMENT OF THE CASE

### A. Legal Background

U.S. Attorneys are the chief federal law enforcement officers of their respective districts. Among other duties, "each United States attorney, within his district, shall * * * prosecute for all offenses against the United States" and "prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned." 28 U.S.C. § 547(1)-(2). U.S. Attorneys thus serve "as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting U.S. Const. art. II, § 3).

The default method for appointment of U.S. Attorneys is that "[t]he President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district" for a four-year term. 28 U.S.C. § 541(a)-(b). Congress has also provided for two other methods of

filling vacancies in the office of U.S. Attorney. First, the Attorney General can appoint a U.S. Attorney, who may serve until the earlier of 120 days after that person's appointment or when the Senate has confirmed a new U.S. Attorney. *Id.* § 546(a)-(c). And second, if such an appointment expires after 120 days without a confirmed U.S. Attorney, then "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d). U.S. Attorneys appointed under 28 U.S.C. § 546 are "fully-empowered United States Attorneys" and do not serve in an acting capacity. *United States v. Gantt*, 194 F.3d 987, 999 n.5 (9th Cir. 1999).[1]

Congress further provided a single mechanism for removing U.S. Attorneys: "Each United States attorney is subject to removal by the President." 28 U.S.C. § 541(c).

### B. Factual Background And Prior Proceedings

**1.** In May 2024, the U.S. District Court for the Western District of Washington appointed Tessa Gorman to be the U.S. Attorney for the

[1] Separately, an Acting U.S. Attorney may serve under the Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345. *See Temporary Filling of Vacancies in the Office of United States Attorney*, 27 Op. O.L.C. 149, 149-50 (2003) (explaining that 28 U.S.C. § 546 does not supplant the ordinary default authority to designate acting officers under the FVRA); *Hooks v. Kitsap*, 816 F.3d 550, 556 (9th Cir. 2016) (holding that the FVRA co-exists with office-specific vacancy statutes).

Western District of Washington. *See* ER-22. President Trump removed Gorman from her position in February 2025, after which the first assistant U.S. Attorney became the Acting U.S. Attorney under the FVRA. ER-34. Gorman did not challenge that action. In October 2025, the Attorney General appointed Charles Neil Floyd to serve as the U.S. Attorney for the district under 28 U.S.C. § 546(a). ER-34. That 120-day period expired in February 2026.

Around the same time, the district court issued an order stating its "inten[t] to appoint a United States Attorney under Section 546(d) to serve until the vacancy is filled" by presidential appointment and Senate confirmation. Order at 2 (W.D. Wash. Jan. 14, 2026), https://perma.cc/42TU-GPFW. The district court later appointed plaintiff Roger Rogoff as U.S. Attorney to serve as the "chief federal law enforcement officer in the District." ER-23.

The President then removed Rogoff from office. The Office of Presidential Personnel emailed Rogoff at the President's direction and explained that under the President's authority in "28 U.S.C. 541(c) and Article II of the Constitution," Rogoff was removed from office. ER-40. President Trump, like other Presidents, has used that statutory and constitutional authority to remove court-appointed U.S. Attorneys. *See,*

*e.g.*, Letter from Harriet Miers to Mark V. Meierhenry (Jan. 9, 2006), https://perma.cc/DHM6-JXYG (removing court-appointed U.S. Attorney "pursuant to Article II of the Constitution and 28 U.S.C. § 541(c)") (PDF Page 24).

On September 14, 2026, the President nominated Simon Peter Serrano to be U.S. Attorney for the district. ER-19. That action restarted the period under the FVRA in which an Acting U.S. Attorney could perform the duties of the office. *See* 5 U.S.C. § 3346(a)(2). The President then designated Floyd to perform the functions and duties of the U.S. Attorney in an acting capacity during the pendency of Serrano's nomination. ER-21; *see* 5 U.S.C. § 3345(a)(3).

**2.** Rogoff sued to challenge his removal, ER-49-53, and moved for a preliminary injunction. The district court heard oral argument on the motion on October 1 and, from the bench, ordered Rogoff's immediate reinstatement as U.S. Attorney. The court declared that Rogoff "has been the rightful holder of that office since" the court appointed him. ER-9.

In granting the preliminary injunction, the district court concluded that U.S. Attorneys appointed by a court are not subject to the President's statutory removal authority in 28 U.S.C. § 541(c). ER-8-9. Instead, the court reasoned that 28 U.S.C. § 546(d), which provides that court-

appointed U.S. Attorneys may "serve until the vacancy is filled," displaces the President's removal power. ER-8-9. According to the district court, "[a]llowing the President to fire a court-appointed U.S. Attorney would upend the framework created by the Constitution and the statutory framework," because it would offend the "balance[]" between "the President's right to appoint and the Senate's right to confirm." ER-9. The court further reasoned that limiting the President's removal power was necessary to provide him "incentive" to "nominate a candidate that can be [confirmed] by the Senate." ER-9.

The district court further held that Rogoff would be irreparably harmed absent an injunction because he "has a statutory right to function as the U.S. Attorney for the Western District of Washington" and his "removal would leave the U.S. Attorney's office with no lawfully appointed head, jeopardizing the functioning of the office." ER-10. The court also concluded that the equities "tip in favor" of Rogoff because the case implicates "Congress's exercise of its constitutional authority to vest the appointment [power] in the court," "Executive attempts to evade Senate advice and consent," and the "unlawful wielding of federal prosecutorial power by someone without authority to do so." ER-10.

In addition to directing Rogoff's immediate reinstatement, the district court enjoined the Attorney General and the Department of Justice from firing Rogoff, "[p]urport[ing] to remove" him, "in any way treat[ing] him as having been removed[,] * * * [d]eny[ing] or obstruct[ing]" him "from accessing any of the benefits or resources of his position[,] * * * [o]therwise obstruct[ing]" him "from his ability to carry out the duties of the U.S. Attorney," or "[t]reat[ing] any individual other than" him "as U.S. Attorney for the Western District of Washington." ER-11-12. The court also denied the government's request to stay the injunction pending appeal. ER-11.

**3.** The government filed an immediate notice of appeal, ER-51, and moved this Court for an administrative stay and a stay pending appeal, *see* Mot. for Stay (Oct. 2, 2026). This Court granted an administrative stay, Order (Oct. 4, 2026), and after Rogoff did not oppose a stay pending appeal, this Court extended the administrative stay through its resolution of the case, Order (Oct. 5, 2026).

## SUMMARY OF ARGUMENT

A court-appointed U.S. Attorney is an Executive Branch official responsible for exercising the President's "conclusive and preclusive" authority to "investigate and prosecute" crimes. *Trump v. United States*, 603 U.S. 593, 620 (2024). Consistent with that understanding, Congress

provided explicitly and without qualification that "[e]ach United States attorney is subject to removal by the President." 28 U.S.C. § 541(c). And in all events, the Constitution demands that U.S. Attorneys who wield the core executive power of enforcing the Nation's criminal laws must be accountable to the Chief Executive and so, by extension, to the People. The district court's contrary holding—that Rogoff is entitled to wield the power of criminal prosecution without accountability to anyone—cannot be squared with the statute or our constitutional order.

**I.A.** Each U.S. Attorney is subject to removal by the President. 28 U.S.C. § 541(c). Rogoff was a U.S. Attorney, so the President could remove him without limitation. The district court's contrary view has no basis in the statute. Merely by providing the option for courts to appoint U.S. Attorneys to an indefinite term when vacancies persist, 28 U.S.C. § 546(d), Congress did not displace its explicit declaration that "[e]ach United States attorney" is subject to removal and supervision by the Chief Executive, *id.* § 541(c). Even if the district court perceived some ambiguity, principles of constitutional avoidance compel the district court to construe the statute to permit presidential removal.

**B.** In all events, the Constitution empowers the President to remove U.S. Attorneys at will. Article II vests the President with the "power

to remove—and thus supervise—those who wield executive power on his behalf." *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020). All U.S. Attorneys—including court-appointed U.S. Attorneys—are executive officers wielding executive power. Among other duties, they are empowered to "prosecute for all offenses against the United States," 28 U.S.C. § 547, which "is a quintessentially executive function[,]" *Trump*, 603 U.S. at 620 (citation omitted). Because U.S. Attorneys "exercise the *President's* power," they are the President's subordinates and "must be *responsible* to him." *Trump v. Slaughter*, 146 S. Ct. 2283, 2310 (2026). "Then, and only then, can they remain accountable to the President, and the President to the people." *Id.*

The district court identified no precedent to support the notion that the Constitution permits an officer to wield the core executive power of criminal prosecution without being removable by anyone in the Executive Branch. Even in *Morrison v. Olson*, 487 U.S. 654 (1988), the high-water mark for prosecutorial independence, it was essential to the Supreme Court's decision that the Attorney General retained the power to supervise the independent counsel and remove her for cause. *Id.* at 692. The district court's radical reshaping of executive power shatters the "chain of political

accountability" that Article II demands. *Kennedy v. Braidwood Management, Inc.*, 606 U.S. 748, 794 (2025).

Moreover, the upshot of the district court's reasoning is that no one in the Executive Branch, or anywhere else, can remove a court-appointed U.S. Attorney for any reason. If the Senate does not consent to a new appointment, Rogoff could continue serving indefinitely. Indeed, under the district court's understanding, no one could remove Rogoff even if he engaged in gross misconduct, such as wielding public authority for personal gain, or flouted the Attorney General's prosecutorial policies with respect to matters such as priority offenses, plea bargains, and the like. That result is anathema to our constitutional order. Our Constitution does not countenance unaccountable U.S. Attorneys who are not removable by, and thus need not "obey," anyone. *Bowsher v. Synar*, 478 U.S. 714, 726 (1986).

The district court's injunction effectively resurrects the Tenure of Office Act, which required Senate-approval before the President was permitted to remove executive officers. Act of Mar. 2, 1867, ch. 154, §§ 1-2, 14 Stat. 430, 430. As the Supreme Court definitively explained in *Myers v. United States*, 272 U.S. 52 (1926), those "extreme provisions" served to "destroy the principle of executive responsibility[] and separation of the powers sought for by the framers of our government," *id.* at 167. The

Tenure of Office Act "was invalid" because it prevented the President from removing officers unless he obtained "the advice and consent of the Senate," and "subsequent legislation of the same effect was equally" unconstitutional. *Id.* at 176; *accord Bowsher*, 478 U.S. at 725 ("[C]ongressional participation in the removal of executive officers is unconstitutional."). That conclusion applies with full force here.

**II.** The preliminary injunction independently warrants reversal because the equitable factors decisively favor the government. The Supreme Court has made clear that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415, 1416-17 (2025). That holding—while not conclusive on the ultimate merits at final judgment—properly "inform[s] how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (staying reinstatement order of executive officer).

## STANDARD OF REVIEW

This Court "review[s] an order regarding preliminary injunctive relief for abuse of discretion, but review[s] any underlying issues of law de novo." *Norbert v. City & County of San Francisco*, 10 F.4th 918, 927 (9th Cir.

2021). To obtain the "extraordinary remedy" of a preliminary injunction, plaintiff must show (1) a likelihood of success on the merits, (2) that she will suffer irreparable harm absent an injunction (3) that the balance of equities favors an injunction, and (4) that an injunction is in the public interest, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), with the last two factors merging because the federal government is the opposing party, *see Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

### I. Rogoff Is Unlikely To Prevail On The Merits.

Rogoff is unlikely to prevail on the merits because he was lawfully removed from his position as U.S. Attorney. Congress categorically provided that "[e]ach United States attorney is subject to removal by the President." 28 U.S.C. § 541(c). A straightforward application of that statutory text confirms the President's authority to remove Rogoff and, accordingly, decides this case. If any ambiguity existed, Article II principles confirm that the statute means what it says. As the Supreme Court recently stressed, "[s]ubordinates who exercise the President's power are subject to removal by him." *Trump v. Slaughter*, 146 S. Ct. 2283, 2310 (2026). Because Rogoff, as U.S. Attorney, would have "unquestionably exercise[d]

executive power," the Constitution requires that the President have the power to remove him. *Id.* at 2305.

### A. Congress provided that all U.S. Attorneys are removable by the President.

**1.** This Court can resolve this appeal on straightforward statutory grounds. Congress charged "each United States attorney" with the authority to "prosecute * * * all offenses against the United States"; to "prosecute or defend * * * all civil actions * * * in which the United States is concerned"; and to "prosecute proceedings for the collection of fines, penalties, and forfeitures incurred for violation of any revenue law." 28 U.S.C. § 547(1)-(2), (4). In exercising those powers, the U.S. Attorneys possess "'broad discretion' to enforce the Nation's criminal law," and so act "as the President's delegates to help him discharge his constitutional responsibilit[ies]." *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

Congress specified three methods for appointing U.S. Attorneys. By default, U.S. Attorneys are appointed by the President with Senate confirmation. 28 U.S.C. § 541(a). But if a U.S. Attorney's office "is vacant," then the Attorney General "may appoint" a U.S. Attorney to "serve until the earlier of" a Senate-confirmed successor under section 541(a) or "the expiration of 120 days" after appointment. *Id.* § 546(a), (c). If the Attorney General's appointment expires and the office is still vacant, the district

court "may appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d).[2]

For removal, however, Congress provided a single, unambiguous rule. Without distinguishing among the different methods of appointment, Congress provided that "[e]ach United States attorney is subject to removal by the President." 28 U.S.C. § 541(c). Consistent with its everyday connotation, the term "each" "denotes or refers to every one of the persons or things mentioned." *Each*, Black's Law Dictionary 597 (rev. 4th ed. 1968). Here, Rogoff was appointed to be "the United States Attorney for the Western District of Washington." ER-23-24. Because Rogoff was a "United States attorney," he was "subject to removal by the President." 28 U.S.C. § 541(c).

Statutory context confirms that conclusion. "[A] word or phrase is presumed to bear the same meaning throughout a text." *United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023). In 28 U.S.C. § 547, Congress endowed "each United States attorney" with prosecutorial authority, and that power applies to *all* U.S. Attorneys, not just those confirmed by the Senate. As this Court has explained, "Section 546(d) appointments are

[2] Separately, an Acting U.S. Attorney may serve under the FVRA. *See supra* p.7 n.1.

fully-empowered United States Attorneys," and nothing "distinguish[es] between United States Attorneys appointed pursuant to 28 U.S.C. § 541 and those appointed under § 546(d)." *United States v. Gantt*, 194 F.3d 987, 999 n.5 (9th Cir. 1999). Thus, just as the "each" in section 547 empowers all U.S. Attorneys, so too does the "each" in section 541 provide for their supervision and removal.

For these reasons, every other court to consider the question has agreed that court-appointed U.S. Attorneys are removable by the President. The First Circuit, for example, explained that under 28 U.S.C. § 541(c), "the President may override the judges' decision and remove an interim United States Attorney." *United States v. Hilario*, 218 F.3d 19, 27 (1st Cir. 2000); *see also United States v. Naviwala*, 825 F. Supp. 3d 451, 474 (D.N.J. 2026) ("[N]o sound textual basis for reading an exception into section 541(c)" for court-appointed U.S. Attorneys); *United States v. Martinez*, 565 F. Supp. 2d 1270, 1275 (D.N.M. 2008) ("[T]he President may override an interim judicial appointment of a U[.]S. Attorney."); *United States v. Solomon*, 216 F. Supp. 835, 843 (S.D.N.Y. 1963) ("[T]he President may, at any time, remove the judicially appointed United States Attorney.").

**2.** Statutory history confirms that conclusion. One of the First Congress's first Acts was to create the office of U.S. Attorney (then called

district attorney) and to direct these officers "to prosecute * * * all delinquents for crimes and offences, cognizable under the authority of the United States, and all civil actions in which the United States shall be concerned." Act of Sep. 24, 1789, ch. 20, § 35, 1 Stat. 73, 92. Consistent with the so-called "Decision of 1789" that executive officers should be removable by the President at will, *see Slaughter*, 146 S. Ct. at 2296, Congress imposed no limitation on their removal. When Congress later limited district attorneys' term of office to four years, it made them "removable from office at pleasure." Act of May 15, 1820, ch. 102, § 1, 3 Stat. 582, 582.

District attorneys were originally appointed only by the President with Senate advice and consent. Congress later added the option for courts to fill vacant district-attorney offices as part of "An Act to give greater Efficiency to the Judicial System of the United States." Act of Mar. 3, 1863, ch. 93, 12 Stat. 768, 768. That Act introduced a number of commonsense reforms, such as allowing a Supreme Court Justice riding circuit to be temporarily replaced by another justice in cases of disability or a conflict of interest. *Id.* § 1, 12 Stat. at 768. As another of these simple measures of administrative convenience, the Act also provided that if there was a vacancy for a U.S. marshal or district attorney, "the judge of such circuit

may fill such vacancy, and the person so appointed shall serve until an appointment shall be made by the President." *Id.* § 2, 12 Stat. at 768. Nowhere did this Act purport to displace the established principle that district attorneys were removable at will.

The Supreme Court construed the President's statutory removal authority in *Parsons v. United States*, 167 U.S. 324 (1897). *Parsons* confirmed that although by statute district attorneys may be "appointed for a term of four years," that default period of service did not insulate district attorneys from the President's removal power. *Id.* at 327-28, 342. The four-year period was a "limitation and not [a] grant" of authority—*i.e.,* the district attorney could not "remain in office longer than that period without being reappointed." *Id.* at 342. "[I]n the meantime," the officer remained subject "to the power of the president to remove." *Id.*

Congress has never sought to displace *Parsons* by enacting any restrictions on the President's removal authority. Instead, the longstanding methods of appointment and at-will removal have continued to apply. *See* 28 U.S.C. §§ 482, 511 (1940) (citing to the Acts of 1789, 1820, and 1863); *id.* §§ 504, 506 (1964) (same, using the modern term of U.S. Attorney). In 1986, Congress authorized the current method of appointment by the Attorney General when there is a U.S. Attorney vacancy, Pub. L. No. 99-

646, § 69, 100 Stat. 3592, 3616 (1986), but did not alter the President's plenary removal authority.

In 2006, the statute was briefly amended to omit the district court's authority to appoint and to instead provide for Attorney General appointments without any time limitations on service. Pub. L. No. 109-177, § 502, 120 Stat. 192, 246 (2006). Congress soon reverted to the earlier framework, re-imposing time limits on the Attorney General's appointments and re-authorizing district court appointments. Pub. L. No. 110-34 § 2, 121 Stat. 224, 224 (2007). The House Report accompanying that change repeatedly noted that U.S. Attorneys are "subject to removal by the President without cause." H.R. Rep. No. 110-58, at 3 (2007) (citing 28 U.S.C. § 541(c) (2000)); *see also id.* at 5 ("[A] United States Attorney serves at the pleasure of the President * * * ."). While some members of Congress expressed concern about the reasons why a President might remove a U.S. Attorney, Congress made no suggestion that it was even considering any attempt to limit the President's removal authority. *See generally id.* at 4-12.

**3.** The district court's contrary conclusion—that the President is devoid of *any* authority to remove a court-appointed U.S. Attorney—lacks any foundation in law or logic. ER-9-10.

First, the district court cited nothing in the statute to support its conclusion that section 541(c) applies to only Senate-confirmed U.S. Attorneys. ER-8-9. That is because the statutory text says the opposite. Congress provided that "[e]ach United States attorney" shall be removable by the President, 28 U.S.C. § 541(c), not "each U.S. Attorney appointed under subsection (a)." It is the only provision governing removal of U.S. Attorneys, and no more specific provision supplants it. *See, e.g.*, *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) (specific provisions control general ones). In particular, nothing in section 546(d), authorizing district court *appointment*, displaces the President's *removal* power. Likewise, while section 541(a) provides for U.S. Attorneys to generally be appointed by the President with Senate confirmation, nothing in that subsection limits the President's removal power to only Senate-confirmed—but not other—U.S. Attorneys.

Second, the district court reasoned that the words "until the vacancy is filled" in section 546(d) implicitly restricts the President's authority to remove court-appointed U.S. Attorneys. ER-8. But that provision imposes a "limitation" on the U.S. Attorney's tenure, not a "grant" of entitlement to the office. *Parsons*, 167 U.S. at 342. The Supreme Court has consistently explained that by providing that an officer may serve for a term of years—or

here, until a vacancy is filled—Congress establishes "a ceiling on his time in office, not a floor." *Trump v. Cook*, 146 S. Ct. 2234, 2253 n.5 (2026) (collecting cases). That accords with the general rule that Congress must use "very clear and explicit language" to "'take away' the power of at-will removal." *Kennedy v. Braidwood Management, Inc.*, 606 U.S. 748, 770-71 (2025). Language that the Supreme Court has already held does *not* restrict removal is, to say the least, not a "clear and explicit" removal restriction.

Third, under the district court's theory, a court-appointed U.S. Attorney could not be removable *even for cause*. *See* ER-9 ("Once the [c]ourt" appoints a U.S. Attorney, "that decision can be changed *only* by the nomination/confirmation process."). In other words, the President could not remove Rogoff even for gross misconduct or serious policy disagreements, such as vindictively prosecuting a neighbor, pursuing prosecutions regardless of any demonstrated legal or factual basis, or refusing to prosecute child-pornography or immigration-related crimes. Instead, Rogoff would continue to hold office unless and until an uncertain confirmation process played out. The Senate, furthermore, would have no obligation to confirm a new U.S. Attorney, even if the President believed he was being impeded in his ability to supervise the execution of the laws in

the Western District of Washington. As construed by the district court, the statute would "exhibit[] in a clear degree the paralysis to which a partisan Senate and Congress could subject the executive arm * * * if the President had no power of removal save by consent of the Senate." *Myers v. United States*, 272 U.S. 52, 167 (1926).

Fourth, the district court erroneously believed that it was appropriate to graft an atextual removal restriction onto the statute to "incentiv[ize]" the President to "nominate a candidate that can be conferred by the Senate" and prevent the President from negating the court's appointment authority. ER-9. But such "purposive argument[s] simply cannot overcome the force of the plain text." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 460 (2012). When it comes to the President's removal authority, Congress's direction—that "[e]ach United States attorney is subject to removal by the President," 28 U.S.C. § 541(c)—is clear. There was no occasion for the court to pontificate on the right "balance[]" between "the President's right to appoint" and "the Senate's right to confirm." ER-9.

The district court's concerns are misguided in any event because recognizing the President's removal authority in no way negates the court's appointment authority pursuant to section 546(d). As detailed below, *see infra* Part I.B, Congress may validly vest the authority to appoint certain

inferior "executive officials in the 'courts of Law,'" while vesting the Executive Branch with authority to supervise and remove those officials. *Morrison v. Olson,* 487 U.S. 654, 674 (1988) (quoting U.S. Const. art. II, § 2, cl. 2). There is no "inherent incongruity" with such a scheme. *Id.* at 676. Instead, it requires courts to work with the Executive Branch to fill vacancies, in the same way that the default method for appointing U.S. Attorneys in section 541 requires the President to work with the Senate to do so. The statutory scheme thus provides a commonsense mechanism for district courts and the Executive Branch to arrive at a mutually agreeable appointee who may be empowered to serve pending Senate confirmation and presidential appointment of a new U.S. Attorney, while ensuring the President's ultimate responsibility over this quintessentially executive official. Such interbranch coordination is commonplace—many court-appointed U.S. Attorneys are currently serving,[3] and many more have served with distinction the past.

---

[3] *See, e.g.*, USAO District of Alaksa, *U.S. Attorney Michael J. Heyman*, https://perma.cc/3FM5-6TFT (appointed by district court on June 28, 2025); USAO District of Arizona, *U.S. Attorney Timothy Courchaine*, https://perma.cc/LVY9-VCUT (appointed by district court on June 17, 2025); Press Release, USAO Northern District of California, *U.S. District Court Appoints Craig H. Missakian as United States Attorney for the Northern District of California* (Sep. 17, 2025), https://perma.cc/X3WF-PBR4; USAO Oregon, *U.S. Attorney Scott E.*

*Continued on next page.*

Relatedly, that fact refutes the implicit premise of the district court's incentive theory—namely, that court-appointed U.S. Attorneys will usually be intolerable to the President, such that the President will be motivated to submit a nominee to the Senate. And regardless, removing a court-appointed U.S. Attorney does not somehow entitle the President to obtain Senate confirmation of his preferred nominee or gain the President some other structural advantage.

Rather, as in this case, removing a court-appointed U.S. Attorney simply leaves the President with the *other* statutory mechanisms that Congress has provided for the purpose of ensuring that a U.S. Attorney's Office can function absent a Senate-confirmed successor. Namely, he must invoke his authority under the Federal Vacancies Reform Act (FVRA) to designate an Acting United States Attorney. *See* 5 U.S.C. § 3345(a). In fact, as previously explained, the President has exercised that authority here, submitting a nominee to the Senate and then invoking the FVRA to designate Floyd to serve in the acting role. *See supra* p.9. That was entirely lawful. *See United States v. Jackson*, 187 F.4th 1198, 1211-12 (9th Cir. 2026) (explaining that section 3345(a)(3) "allows the President to appoint

---

*Bradford*, https://perma.cc/9PZ3-XZ88 (appointed by district court on November 25, 2025).

senior career staff as acting officers”). If Congress shared the district court’s policy views, it could enact legislation depriving the President of alternative means of filling a vacancy in the office of U.S. Attorney, but the court had no business rewriting the statutory scheme on Congress’s purported behalf.

In sum, the district court’s “incentive” views are not a proper basis for disregarding the plain language of the statute. And in all events, it makes no sense to strip the President of his express statutory power to remove a court-appointed U.S. Attorney to deter him from exercising his similarly express statutory authority to designate an Acting U.S. Attorney—particularly when the district court’s insistence on Senate confirmation is not constitutionally required at all.

**4.** Because the “plain meaning” of 28 U.S.C. § 541(c) is “unambiguous,” the statutory text resolves the matter. *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017). Any ambiguity, however, would be resolved by the principle of constitutional avoidance. For reasons detailed in the next section, construing section 541(c) to prohibit removal of court-appointed U.S. Attorneys would bring the statute into direct conflict with Article II.

The district court erred in disregarding principles of constitutional avoidance. As the Supreme Court has stressed, a court's "task is to seek harmony, not to manufacture conflict" when "legislation and the Constitution brush up against each other." *United States v. Hansen*, 599 U.S. 762, 781 (2023). That principle applies with full force to the separation of powers. *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 466 (1989). Indeed, the avoidance canon deserves "especially great" weight where, as here, the constitutional issues "concern the relative powers of coordinate branches of government." *Id.*

Applying that familiar principle confirms that section 541(c) means what it says: Each U.S. Attorney is subject to removal by the President, regardless of the method of appointment. Reading the statute to deprive the Executive Branch of *any* power to remove a U.S. Attorney would, to say the least, raise the sort of "serious constitutional problems" that this Court regularly seeks to "avoid." *Flores-Chaves v. Ashcroft*, 362 F.3d 1150, 1162 (9th Cir. 2004). And there is no "canon of 'constitutional collision'" that compels the district court's reading. *Hansen*, 599 U.S. at 781. There is no plausible argument that section 546(d) so unambiguously displaces section 541(c) as to overcome the canon of constitutional avoidance. *See NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 500 (1979) ("[A]n Act of Congress

ought not be construed to violate the Constitution if *any* other possible construction remains available." (citing *Murray v. The Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804) (Marshall, C.J.)) (emphasis added)). Thus, especially in light of the avoidance canon, this Court should hold that Congress in section 541(c) authorized the President to remove U.S. Attorneys appointed by courts under section 546(d).[4]

### B. The President must have authority to remove U.S. Attorneys.

For the foregoing reasons, the Court can resolve this case on straightforward statutory grounds. But if more were needed, Article II empowers the President to remove U.S. Attorneys at will, court-appointed or otherwise.

In case after case in the modern era, the Supreme Court has held that the President possesses virtually unfettered authority under Article II to remove his subordinate executive officers at will. *See, e.g.*, *Slaughter*, 146 S. Ct. at 2310 ("Subordinates who exercise the President's power are subject

[4] Based on the same fundamental concerns presented here, the D.C. Circuit recognized that a scheme in which the Senate "could keep [an executive officer] in office" for a "potentially unlimited tenure" by simply "not acting on the President's nominations for successors" would "raise constitutional problems," and it thus construed the statute at issue there to permit at-will removal by the President. *Swan v. Clinton*, 100 F.3d 973, 986-88 (D.C. Cir. 1996).

to removal by him."); *Collins v. Yellen*, 594 U.S. 220, 250 (2021) (statute's "for-cause restriction on the President's removal authority violates the separation of powers"); *Seila Law LLC v. CFPB*, 591 U.S. 197, 224 (2020) (removal restriction for agency head "contravenes" the Constitution's "carefully calibrated system."); *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 498 (2010) ("By granting the Board executive power without the Executive's oversight, this Act subverts the President's ability to ensure that the laws are faithfully executed * * * ."). Those decisions reflect the "general rule" that the President may "remove those who assist him in carrying out his duties," which guarantees that the President remains politically accountable to the People for every significant exercise of executive power by his subordinates. *Seila Law*, 591 U.S. at 215. That rule controls here.

**1.** The Constitution vests "[t]he executive Power" in a single President, and instructs that he "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* § 3. The Framers considered but rejected a multi-executive model, concluding that the vital interests of the Nation would be best served by a single Chief Executive capable of decisive action. They "deemed an energetic executive essential to 'the protection of the community against foreign attacks,' 'the steady administration of the

laws,' 'the protection of property,' and 'the security of liberty.'" *Seila Law*, 591 U.S. at 223-24 (quoting The Federalist No. 70, at 471 (A. Hamilton) (Jacob E. Cooke ed., 1961)). At the same time, the Framers—having just won the Revolution—were not blind to the dangers "of a King who reigned as 'a Tyrant.'" *Slaughter*, 146 S. Ct. at 2291 (quoting the Declaration of Independence ¶ 30).

Their solution was to make the President singularly accountable to the electorate. The Constitution ensured "safety in the republican sense" by tying the President to "a due dependence on the people" and charging him with "due responsibility" for all the Executive's actions. The Federalist No. 70, at 472. In the Framer's design, "[o]nly the President (along with the Vice President) is elected by the entire Nation," making him "the most democratic and politically accountable official in Government." *Seila Law*, 591 U.S. at 224.

The Framers made the President accountable to the public not just for his personal actions, but for all "the actions of the Executive Branch," and he "never adjourns" in those duties. *Clinton v. Jones*, 520 U.S. 681, 712-13 (1997) (Breyer, J., concurring in the judgment). "The buck stops with" him. *Free Enterprise*, 561 U.S. at 493. In light of "'[t]he impossibility that one man should be able to perform all the great business of the State,' the

Constitution provides for executive officers to 'assist the supreme Magistrate in discharging the duties of his trust.'" *Id.* at 483 (quoting 30 Writings of George Washington 334 (John C. Fitzpatrick ed. 1939)). But "[t]hese officers were to serve as envoys of the President, not his equals. Their very purpose, after all, was to assist him 'to discharge *his* arduous employment,' not *theirs*." *Slaughter*, 146 S. Ct. at 2294. "As such, the Government's 'ministers' were required to 'exercise their functions in subordination to the Executive,' whether their tasks were big or small." *Id.*

This structure ensures that the President remains politically accountable for all exercises of executive power under his watch. Individual executive officers "still wield significant authority, but that authority remains subject to the ongoing supervision and control of the elected President. Through the President's oversight, 'the chain of dependence [is] preserved,' so that 'the lowest officers, the middle grade, and the highest' all 'depend, as they ought, on the President, and the President on the community.'" *Seila Law*, 591 U.S. at 224 (quoting 1 Annals of Cong. 499 (J. Madison)).

**2.** The Article II removal power is what enforces that chain of dependence—and thus what guarantees the President's political accountability for all significant exercises of executive power.

The centrality of the President's removal power to the constitutional design has been evident since the beginning. The First Congress debated at length whether the newly adopted Constitution assigned to the President the exclusive duty of determining when and whether executive officers should be removed, or if Congress could freely regulate such removals. "Madison led the charge," arguing that "removal was part of 'the Executive power' vested in the President, which 'the Legislature has no right to diminish or modify.'" *Slaughter*, 146 S. Ct. at 2296 (quoting 1 Annals of Cong. 463 (J. Madison)). Madison persuaded his colleagues that "'if any power whatsoever is in its nature Executive * * * it is the power of appointing, overseeing, and controlling those who execute the laws,'" from which "the 'power of removal from office' must follow." *Id.* (quoting 1 Annals of Cong. 463, 499 (J. Madison)).

Madison's construction of the Constitution "emerged victorious" and "gained fame as 'the Decision of 1789.'" *Slaughter*, 146 S. Ct. at 2296. And all the Presidents of the Founding era and beyond, through Andrew Jackson, ascribed to the understanding that "the power to 'remov[e] executive officers [is] inherent in [the] Executive,'" and that "'the tenure of all subordinate executive Offices' is 'necessarily the pleasure of the chief by whom they were commissioned.'" *Id.* at 2297 (collecting examples). In

fact, "all branches of the government" "acquiesce[d]" in the "decision of 1789 as to executive officers, whether superior or inferior," and for "74 years, there was no act of Congress, no executive act, and no decision of this court at variance with the declaration of the First Congress." *Myers*, 272 U.S. at 163. All understood that for "lesser officers" to "remain accountable to the President, whose authority they wield," they must be removable at will, "for it is 'only the authority that can remove' such officials that they 'must fear and, in the performance of [their] functions, obey.'" *Seila Law*, 591 U.S. at 213-14 (quoting *Bowsher v. Synar*, 478 U.S. 714, 726 (1986)).

**3.** These principles apply with full force to U.S. Attorneys appointed by the Courts of Law. The Appointments Clause, U.S. Const. art. II, § 2, cl. 2, "specifies how 'Officers of the United States,' as distinct from employees, must be appointed." *Braidwood*, 606 U.S. at 759. Constitutional officers are those who exercise "significant authority pursuant to the laws of the United States." *Id.* Principal officers "who report directly to the President" must be appointed by the President with the advice and consent of the Senate. *Id.* at 759-61. Inferior officers—those "whose work is directed and supervised at some level by" those appointed as principal officers, *id.* at 760-61—can be appointed in the same way but can also be appointed by

"the President alone," by the "Courts of Law," or by "the Heads of Departments," if Congress so provides, U.S. Const. art. II, § 2, cl. 2.

As the Supreme Court has explained, the "obvious purpose" of the so-called Excepting Clause "is administrative convenience." *Edmond v. United States*, 520 U.S. 651, 660 (1997). Inferior officers can be, and by default are, appointed by the President with confirmation by the Senate. U.S. Const. art. II, § 2, cl. 2. "But the Framers foresaw that 'when offices became numerous, and sudden removals necessary, this mode'" of appointment "might be inconvenient." *United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021) (quoting *United States v. Germaine*, 99 U.S. 508, 510 (1879)). Rather than having "[b]lank commissions" be sent and approved for such inferior offices, *see* James Madison, *Notes of Debates in the Federal Convention of 1787*, at 647 (Adrienne Koch ed., Ohio Univ. Press 1966) (1840), the Constitution permits inferior officers in the Executive Branch to be appointed by the Heads of the Departments—or, in the uncommon circumstances when Congress so provides, by the Judiciary. Thus, as noted, Congress has "discretion to determine whether it is 'proper' to vest the appointment of * * * executive officials in the 'courts of Law.'" *Morrison,* 487 U.S. at 673.

Even where Congress elects to vest the Judiciary with authority to appoint inferior executive officers, however, those officers are subject to the President's removal authority, and thus to his control, not that of the courts. *See Bowsher*, 478 U.S. at 726 ("Once an officer is appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear and, in the performance of his functions, obey."). It is the elected President, not the Courts of Law, that the Constitution makes responsible for supervising the execution of the laws. Court-appointed inferior executive officers thus must be subject to presidential oversight and removal to preserve the "chain of political accountability" that the Constitution demands. *Braidwood*, 606 U.S. at 794. The "President's removal power stems from Article II's vesting of the 'executive Power' in the President." *Seila Law*, 591 U.S. at 227. All "[s]ubordinates who exercise the President's power"—not merely his appointees—"are subject to removal by him" because the "President must have the assistance of officers he can trust." *Slaughter*, 146 S. Ct. at 2310. U.S. Attorneys obviously qualify as such purely executive officers. They are empowered to oversee and execute the "special province of the Executive," "to enforce the Nation's criminal laws" and to serve "as the President's

delegates to help him discharge his constitutional responsibility to take Care that the Laws be faithfully executed." *Armstrong*, 517 U.S. at 464.

Of course, removal is often incident to appointment, so when Congress vests the appointment of an inferior officer in the Head of an Executive Department, the President "ordinarily" exercises the power to remove that inferior officer through the Department Head rather than on his own. *Free Enterprise*, 561 U.S. at 493. That approach does not impair the President's oversight of the Executive Branch because the President retains the ability to remove inferior officers through the Department Head, who "is and must be the President's *alter ego* in the matters of that department." *Myers*, 272 U.S. at 133. But that is merely a "default" rule. *Braidwood*, 606 U.S. at 763. Where, as here, Congress has vested authority in the Judiciary to appoint inferior executive officers, Article II requires that those officers remain subject to the President's removal authority.

The Supreme Court recognized this principle even in *Morrison*, a case that otherwise marks the historic "outermost constitutional limits" on the President's removal powers, *Seila Law*, 591 U.S. at 218; *see also infra* p.45-48. *Morrison* upheld a statute that vested the power to appoint an independent counsel exercising prosecutorial authority in a judicial panel. 487 U.S. at 683-84. The statute forbade members of the appointing panel

from participating in any matters involving the independent counsel, and it vested the power to remove the independent counsel in the Attorney General. *Id.* at 661-62, 683-84. The Court explained that the statute presented no "'incongruity' between the functions normally performed by the courts and the performance of their duty to appoint" because, once the judicial panel "ha[d] appointed" an independent counsel, it "ha[d] no power to supervise or control the activities of the counsel." *Id.* at 676, 695. Rather, that authority was exercised by the Executive Branch. Moreover, in upholding there the *explicit* statutory limitation on the Executive's removal power (entirely absent here), the *Morrison* Court expressly emphasized that the President had *not* been "completely stripped" of removal power because the Attorney General retained statutory authority to remove the independent counsel for good cause. 487 U.S. at 692; *see also Seila Law*, 591 U.S. at 228 (explaining that the removal restrictions at issue in *Free Enterprise Fund* were unlawful because they "effectively" "eliminate[d] the President's removal power altogether").

**4.** Applying the foregoing principles, this is "not a close case." *Slaughter*, 146 S. Ct. at 2304. Leaving *Morrison*'s "good cause" limitation on removal far behind, the district court has held that no one within the Executive Branch may remove a court-appointed U.S. Attorney, period.

ER-8-11. But as U.S. Attorney, Rogoff would "exercise the President's power," *Slaughter*, 146 S. Ct. at 2310, in performing the "quintessentially executive function[s]" of "[i]nvestigat[ing] and prosecut[ing] crimes," *Trump v. United States*, 603 U.S. 593, 620 (2024). That is "the very essence of 'execution' of the law." *Slaughter*, 146 S. Ct. at 2304. Because Rogoff seeks to "exercise the *President's* power," he "must be *responsible* to him" and thus "subject to removal by him." *Id.* at 2310. "Then, and only then, can [he] remain accountable to the President, and the President to the people." *Id.*

Although the government raised these constitutional concerns at length, Dkt. 20, at 18-24, the district court did not meaningfully engage with them. Instead, the court reasoned that "while the President has the power to remove executive officer[s] whom he has appointed," he does not have "authority to remove executive officers that he has *not* appointed." ER-9. According to the court, once the Judiciary appoints a U.S. Attorney, "that decision can be changed *only* by the nomination/confirmation process." ER-9. Thus, under the court's ruling, neither the President nor any other executive officer can remove Rogoff from the office of U.S. Attorney. And if the Senate does not consent to a new appointment, Rogoff may continue to serve indefinitely.

Such an arrangement violates the most basic tenets of Article II. As explained, all executive officers—"the lowest officers, the middle grade, and the highest"—are subject to the President's "power of removal from office." *Slaughter*, 146 S. Ct. at 2296. Again, even *Morrison* recognized that a "complete[] stripp[ing]" of "the power to remove an executive official" would be incompatible with the President's constitutional duty. 487 U.S. at 692. Until now, lower courts too have uniformly recognized that the power to remove court-appointed inferior officers exercising executive power resides with the President. That includes U.S. Attorneys, who, as then-Judge Ginsburg explained, the "executive branch is free to replace * * * at any time." *In re Sealed Case*, 838 F.2d 476, 521 (D.C. Cir. 1988) (R.B. Ginsburg, J., dissenting).

Indeed, the interbranch appointment of U.S. Attorneys is constitutionally valid only because the President may supervise and remove those whom the Courts of Law may choose to appoint. As the First Circuit explained, it is precisely because "the Executive Branch holds all the trump cards," including the removal power, that court-appointment of U.S. Attorneys does not compromise "the functioning of the Executive Branch." *Hilario*, 218 F.3d at 27; *see also Naviwala*, 825 F. Supp. 3d at 474 (recognizing the Executive's removal authority over court-appointed U.S.

Attorneys);. *Martinez*, 565 F. Supp. 2d at 1275 (same); *Solomon*, 216 F. Supp. at 843 (same); *United States v. Donziger*, 38 F.4th 290, 300 (2d Cir. 2022) (holding that the Executive exercised "authority to supervise[, ]and if necessary, to remove," special prosecutors who were "inferior officers appointed by 'the Courts of Law'").

The district court's contrary holding effectively resurrects the Tenure of Office Act, which required Senate approval before the President was permitted to remove various executive officers. Act of Mar. 2, 1867, ch. 154, §§ 1-2, 14 Stat. 430, 430. The Act was designed to "'curtail the then acknowledged powers of the President,'" and its constitutional invalidity "'was 'immediately recognized by the Executive and objected to.'" *Slaughter*, 146 S. Ct. at 2299 (quoting *Myers*, 272 U.S. at 165, 167). President Grant implored Congress to repeal the Act, asking "What faith can an Executive put in officials forced upon him?" *Id.* The Supreme Court in *Myers* held unconstitutional the Act's "extreme provisions," which the Court explained served to "destroy the principle of executive responsibility[] and separation of the powers sought for by the framers of our government." 272 U.S. at 167. The district court's injunction ignores the Supreme Court's "best word on the subject" of the President's removal power, *Slaughter*, 146 S. Ct. at 2299, and flouts the rule that "congressional

participation in the removal of executive officers is unconstitutional," *Bowsher*, 478 U.S. at 725.

**5.** Rogoff offered additional arguments in district court in support of his injunction request, all of which are unavailing.

**a.** Recognizing the obvious problem presented by the threat of a rogue U.S. Attorney answerable to no one, Rogoff suggested in the alternative that "the appointing court possesses the authority to remove a U.S. Attorney." Dkt. 30, at 5. But no court has ever sanctioned such an "intrusion[] on Article II," *Slaughter*, 146 S. Ct. at 2310, not least because it would *also* violate Article III. The removal of executive officers is a core executive power; it is "an exercise neither of legislative nor of judicial power," *Myers*, 272 U.S. at 122. If vested with the power to remove the U.S. Attorney, the district court would be "directly responsible" for and in "full control over" federal prosecution in the district. *Free Enterprise*, 561 U.S. at 496. It would put the district court in the untenable position of deciding whether the U.S. Attorney is satisfactorily exercising his prosecutorial discretion, whether he is seeking too few plea deals or too lenient ones, or whether he is charging too many crimes or too few. In other words, it would make the court itself the chief federal prosecutor for the very district

in which the court presides over criminal prosecutions. That is entirely incompatible with the judicial role.

**b.** Rogoff also argued below that that the Attorney General's authority over U.S. Attorneys "enables the President to ensure the faithful execution of the laws," even absent the power to remove such officers. Dkt. 8, at 17. But the Supreme Court has consistently rejected arguments that lesser supervisory measures render the President's removal power unnecessary. The Attorney General's supervisory authority over U.S. Attorneys "is not equivalent to the power to remove" them, *Free Enterprise*, 561 U.S. at 504, and "the various bureaucratic minutiae a President might use to corral agency personnel is no substitute for at will removal," *Seila Law*, 591 U.S. at 231 (quotation marks omitted).

A glance at the workload of the U.S. Attorney's Office for the Western District of Washington makes that point concrete. In the last year, that office alone initiated more than 590 criminal prosecutions and initiated or defended more than 2,100 civil cases. Administrative Office of the United States Courts, *Table D-3—U.S. District Courts–Criminal Statistical Tables For The Federal Judiciary (June 30, 2026)*, https://perma.cc/DUU8-UHRV; Administrative Office of the United States Courts, *Table C-3—U.S. District Courts—Civil Statistical Tables For the Federal Judiciary (June*

*30, 2026)*, https://perma.cc/MR9M-F3AT. There is no feasible method by which the Attorney General, let alone the President, could meaningfully review the prosecutorial and litigation decisions made in each of those cases—and the countless others in which the U.S. Attorney decided *not* to wield his enforcement authority as a matter of prosecutorial discretion. Indeed, the district court itself recognized that the U.S. Attorneys "exercise[] considerable prosecutorial discretion with little day-to-day" oversight. ER-11.

Even if the Attorney General and his subordinates were willing and able to supervise each and every one of Rogoff's actions, moreover, Rogoff could simply ignore their instructions, secure in the knowledge that he could not be removed for his insubordination unless the Senate confirms his replacement. And while the Attorney General or other subordinates could try to undo at least some of Rogoff's actions after the fact, there are many actions in criminal cases that would be irreversible, such as terminating a trial after jeopardy has attached.

**c.** Finally, Rogoff asserted that recognizing a removal restriction for court-appointed U.S. Attorneys would raise no Article II concerns because it would be "far less robust than other removal protections." Dkt. 8, at 16-17. That is wrong several times over. First, as we have explained, there is

no textual basis to "recognize" a removal restriction. U.S. Attorneys, regardless how appointed, serve at the pleasure of the President. Courts do not invent removal restrictions for executive officers out of whole cloth.

Furthermore, after the Supreme Court's landmark decision in *Slaughter*, 146 S. Ct. at 2302, the only possible remaining exception to the President's at-will removal authority over executive officers rests on *Morrison* and *United States v. Perkins*, 116 U.S. 483 (1886)—the only two cases in which the Court "held that Congress could provide tenure protections to certain inferior officers with narrowly defined duties," *Seila Law*, 591 U.S. at 204 (emphasis omitted). *Perkins* held that a Navy cadet engineer could not be removed simply because there was no vacancy for promotion to assistant engineer. 116 U.S. at 483-85. And *Morrison* upheld a "good cause" restriction on the Attorney General's authority to remove an independent counsel temporarily assigned to a specified matter in the Department of Justice, given the counsel's "limited jurisdiction and tenure" and lack of "policymaking or significant administrative authority." 487 U.S. at 691. The Supreme Court has construed *Perkins* and *Morrison* to hold, at most, that Congress may impose removal restrictions for "inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218.

Even assuming, as this Court must, that the *Perkins/Morrison* exception remains good law after *Slaughter*, that exception defines "the outermost constitutional limits of permissible congressional restrictions on the President's removal power." *Seila Law*, 591 U.S. at 218. But that exception plainly does not encompass U.S. Attorneys, who exercise significant policymaking and administrative authority while generally "enforc[ing] the Nation's criminal laws." *Armstrong*, 517 U.S. at 464.

Unlike *Morrison*'s independent counsel, U.S. Attorneys (court-appointed or otherwise) are statutorily authorized to "prosecute for *all* offenses against the United States" in his district, 28 U.S.C. § 547(1) (emphasis added), and can "bring the coercive power of the state to bear on millions of private citizens," *Seila Law*, 591 U.S. at 219. A U.S. Attorney also does not have the type of "limited jurisdiction" and "tenure" possessed by the independent counsel in *Morrison*, 487 U.S. at 660, 691; to the contrary, on the district court's reasoning, a court-appointed U.S. Attorney could hold the office indefinitely. Nor does a U.S. Attorney in anyway resemble the navy cadet engineer from *Perkins*, who was fresh off graduation from the academy and chiefly focused on maintaining "boilers, and other machinery," *Denig v. United States*, 37 Ct. Cl. 383, 386 (1902). Accordingly, there is no basis to "extend" any removal restrictions

recognized in *Morrison* and *Perkins* "to the 'new situation'" of a federal prosecutor "vested with significant executive power." *Seila Law*, 591 U.S. at 220.

And, in any event, the district court's injunction far exceeds the removal restrictions in *Morrison* and *Perkins*. In those cases, at least, the officers could still be removed by the Executive for cause. *Morrison*, 487 U.S. at 663; *Perkins*, 116 U.S. at 485. But as discussed above, under the district court's injunction, Rogoff cannot be removed by *anyone* for *any* reason. Our Constitution does not contemplate criminal prosecutors removable by, and accountable to, no one.

## II. The Remaining Equitable Factors Decisively Favor The Government

The district court independently erred in granting the preliminary injunction because Rogoff suffered no irreparable harm from his removal, and the balance of equities and public interest decisively favor the government, not Rogoff.

The Supreme Court has explained in case after case that quintessentially executive officers—those with no Founding-era tradition of insulation from presidential removal—should not be reinstated by a court on an interim basis. *Trump v. Slaughter*, 146 S. Ct. 18, 18 (2025); *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *Trump v. Wilcox*, 145 S. Ct. 1415, 1416-

17 (2025). The Supreme Court has already balanced the equities and public interest in executive-officer removal cases and concluded that the equities decisively favor the government. *Wilcox*, 145 S. Ct. at 1416-17. And the Supreme Court instructed the courts of appeals that, while such orders do not conclusively determine the ultimate merits at final judgment, they do conclusively "inform how a court should exercise its equitable discretion in like cases." *Boyle*, 145 S. Ct. at 2654. There is no reason to depart from that balancing of the equities here. U.S. Attorneys plainly exercise "executive power." *Id.* That means that the equities favor the government, whose "executive power" is set to be "exercis[ed]" by a "removed officer." *Id.*

Rogoff, by contrast, faces no irreparable harm. His only alleged injuries relate to his removal from his role as U.S. Attorney. ER-48-49. But Rogoff's personal loss of federal employment and salary is not an irreparable injury. *See Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). Neither is the fact that his removal prevents him from exercising the powers of the U.S. Attorney. A public official's "loss of political power" is not a judicially cognizable harm, much less the type of irreparable harm that can justify issuing an injunction. *Raines v. Byrd*, 521 U.S. 811, 821 (1997).

The district court erroneously suggested that plaintiff faced irreparable injury because his "removal would leave the U.S. Attorney's office with no lawfully appointed head, jeopardizing the functioning of the office." ER-10. That is mistaken twice over. First, asserted injuries to the functioning of the U.S. Attorney's Office are not irreparable injuries to Rogoff. And second, in any event, the President has designated an Acting U.S. Attorney under the FVRA to oversee the office. *See supra* p.9

The equities further favor the government because the district court's intervention guarantees a whipsaw in the management of the U.S. Attorney's office. The "repeated removal and reinstatement of officers during the pendency of [the] litigation" harms the government *and* the public's interest in the smooth operation of the district's prosecutorial office. *Wilcox*, 145 S. Ct. at 1417. This case illustrates the point. As explained, the President lawfully designated Floyd as the Acting U.S. Attorney for the district on September 25. ER-21. Six days later, the district court declared that respondent "has been the rightful holder of [the] office since July 15" and that Floyd is "not the U.S. Attorney in the Western District of Washington." ER-9-10. That judicially created carousel gives rise to the very harms the district court professed concern over, and "jeopardiz[es] the functioning of the office." ER-10.

The various equitable considerations the district court invoked to justify the injunction are entirely without merit. The court asserted that "[d]efendants ha[d] not shown they would suffer harm where an injunction would end an unlawful practice." ER-10. The Supreme Court, however, has had no trouble concluding that the government faces a "greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a *wrongfully removed* officer faces from being unable to perform her statutory duty." *Wilcox*, 145 S. Ct. at 1415 (emphasis added). Even assuming *arguendo* the removal was unlawful, the *Wilcox* Court nonetheless held the equities favored the government. *Id.*

The district court likewise erred in suggesting the injunction protects "Congress's exercise of its constitutional authority to vest the appointment [power] in the court." ER-10. As explained, that appointment authority is not at issue here: No one disputes that the U.S. District Court for the Western District of Washington effectively and constitutionally appointed Rogoff as the district's U.S. Attorney under 28 U.S.C. § 546(d), and the President's power to remove Rogoff in no way negated the court's power to appoint him, *see supra* pp.25-28. The district court's assertion that "the Executive attempt[ed] to evade Senate advice and consent" (ER-10) cannot be squared with the fact that Congress provided multiple statutory

mechanisms for performing the functions and duties of this office and that, for an inferior office, the Constitution does not require Senate confirmation anyway. *See supra* p.28.

Finally, the district court observed that "[t]he unlawful wielding of federal prosecutorial power by someone without authority to do so injures the public interest." ER-10. That consideration favors the government. The public interest is jeopardized not by Rogoff's removal, but by allowing him to displace Acting U.S. Attorney Floyd and wield the "conclusive and preclusive" Article II authority to "investigate and prosecute" federal crimes in the Western District of Washington without any accountability to anyone.

## CONCLUSION

The Court should reverse the district court's order granting a preliminary injunction. If the Court nevertheless were to affirm, the government respectfully requests that the Court leave the administrative stay in place for 14 days to provide the Solicitor General an orderly opportunity to seek relief from the Supreme Court.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL AGUILAR
/s/ *David L. Peters*
DAVID L. PETERS
ANDREW SKARAS
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-5425*
*Andrew.p.skaras@usdoj.gov*

OCTOBER 2026

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellants state that they know of no related case pending in this Court.

*/s/ David L. Peters*
David L. Peters

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rules 27-1(d) and 32-3 because it contains 11,073 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*/s/ David L. Peters*
David L. Peters

# ADDENDUM

# TABLE OF CONTENTS

28 U.S.C. § 541 ........................................................................................ A1

28 U.S.C. § 546 ........................................................................................ A1

28 U.S.C. § 547 ........................................................................................ A1

## 28 U.S.C. § 541 – United States attorneys

**(a)** The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district.

**(b)** Each United States attorney shall be appointed for a term of four years. On the expiration of his term, a United States attorney shall continue to perform the duties of his office until his successor is appointed and qualifies.

**(c)** Each United States attorney is subject to removal by the President.

## 28 U.S.C. § 546 – Vacancies

**(a)** Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.

**(b)** The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.

**(c)** A person appointed as United States attorney under this section may serve until the earlier of—

> **(1)** the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or
>
> **(2)** the expiration of 120 days after appointment by the Attorney General under this section.

**(d)** If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

## 28 U.S.C. § 547 – Duties

Except as otherwise provided by law, each United States attorney, within his district, shall—

**(1)** prosecute for all offenses against the United States;

**(2)** prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned;

**(3)** appear in behalf of the defendants in all civil actions, suits or proceedings pending in his district against collectors, or other officers of the revenue or customs for any act done by them or for the recovery of any money exacted by or paid to these officers, and by them paid into the Treasury;

**(4)** institute and prosecute proceedings for the collection of fines, penalties, and forfeitures incurred for violation of any revenue law, unless satisfied on investigation that justice does not require the proceedings; and

**(5)** make such reports as the Attorney General may direct.