**No. 26-6445**

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

ROGER ROGOFF,

*Plaintiff-Appellee*,

v.

DONALD J. TRUMP,
President of the United States, in his official capacity, *et al.,*

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Western District of Washington

# BRIEF OF AMICI CURIAE AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, INTERNATIONAL ASSOCIATION OF MACHINIST AND AEROSPACE WORKERS, NATIONAL FEDERATION OF FEDERAL EMPLOYEES, NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, AND INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS IN SUPPORT OF NEITHER PARTY

Teague Paterson (SBN 226659)
Matthew Blumin
Georgina Yeomans
AFSCME
1625 L Street, N.W.
Washington, D.C. 20036
(202) 775-5900

*Attorneys for Amicus Curiae American Federation of State, County, and Municipal Employees, AFL-CIO*

Stacey M. Leyton (SBN 203827)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151

*Attorneys for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

The amici curiae, American Federation of Government Employees, AFL-CIO, American Federation of State, County & Municipal Employees, AFL-CIO, American Federation of Labor and Congress of Industrial Organizations, AFL-CIO, International Federation of Professional and Technical Engineers, National Federation of Federal Employees, International Association of Machinists and Aerospace Workers, National Association of Government Employees, and Service Employees International Union are not corporations and have no parent corporations. No publicly held corporation owns any stock in any of the amici curiae.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .......... ii
TABLE OF CONTENTS .......... iii
TABLE OF AUTHORITIES .......... iv
INTEREST OF THE AMICI CURIAE .......... 1
PRELIMINARY STATEMENT .......... 3
ARGUMENT .......... 4
CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Comans v. Exec. Off. of President*,
No. 1:25-CV-01237-MSN-WEF, 2026 WL 1132803 (E.D. Va. Apr. 15, 2026) .......... 8, 9

*Comey v. United States Dep't of Just.*,
No. 25-CV-7625-JMF, 2026 WL 1142679 (S.D.N.Y. Apr. 28, 2026) .......... 8, 9

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) .......... 6

*Gordon v. Executive Office of the President*,
No. 1:25-cv-02409-JMC (D.D.C July 24, 2025) .......... 8

*Jackler v. MSPB*,
No. 26-1575 (Fed. Cir. 2026) .......... 7, 8

*Morrison v. Olson*,
487 U.S. 654 (1988) .......... 6

*Myers v. United States*,
272 U.S. 52 (1926) .......... 6

*Oyer v. Blanch,*
No. 1:26-cv-3092-TNM (D.D.C. Sep. 3, 2026) .......... 8

*United States v. Perkins*,
116 U.S. 483 (1886) .......... 6

## Federal Statutes

5 U.S.C.
§ 2301 .......... 5
§ 7513 .......... 5

28 U.S.C.
§ 541 .......... 4, 5
§ 546 .......... 4

Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (Oct. 13, 1978) ........................................................................................5

**Other Authorities**

U.S. Off. of Pers. Mgmt., General Schedule Overview, https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/ ........................................................................7

## INTEREST OF THE AMICI CURIAE[1]

Amici Curiae are labor organizations that together represent federal employees in every state of the union and virtually every job classification in the federal civil service.

Amicus American Federation of Government Employees, AFL-CIO ("AFGE"), the largest federal employee union, represents approximately 800,000 federal civilian employees.

Amicus American Federation of State, County & Municipal Employees, AFL-CIO ("AFSCME") is the largest trade union of public employees in the United States, with 1.4 million members including federal civilian employees employed in departments and agencies across the federal government.

Amicus the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO) is a federation of 65 national and international labor organizations that represent 15 million working people, including around one million federal employees who work in the federal civil service.

Amicus International Federation of Professional and Technical Engineers (IFPTE) represents employees within the federal government, including administrative judges as well as engineers, scientists, technical specialists, and others.

---

[1] This brief is filed with the consent of all parties. No party's counsel authored the brief in whole or in part or contributed money intended to fund preparing or submitting the brief. No person, other than amici curiae, their members, or their counsel, contributed money intended to fund preparing or submitting the brief.

Amicus National Federation of Federal Employees (NFFE) represents federal employees across a broad range of departments and agencies including the Department of Veterans Affairs, Department of Defense, U.S. Forest Service, National Park Service, and others.

Amicus International Association of Machinists and Aerospace Workers (IAM) represents federal workers in the Department of Defense, the Bureau of Printing and Engraving and the Department of State, as well as other departments and agencies.

Amicus National Association of Government Employees (NAGE) represents federal employees in a wide range of roles in departments and agencies, including, but not limited to, the Departments of Defense, Veterans Affairs, Commerce, and Transportation.

Amicus Service Employees International Union (SEIU) represents approximately two million members in healthcare, property services, and the public sector, including federal employees who ensure the effective operation of agencies and the provision of crucial public services.

## PRELIMINARY STATEMENT

Amici federal employee labor unions, together representing over a million federal employees, submit this brief in support of neither party to provide the Court with broader context regarding ongoing litigation regarding the civil service and to urge the Court to limit any holding in this case to the unique executive officer position to which the Plaintiff-Appellant was appointed, that of interim United States Attorney ("U.S. Attorney") for the Western District of Washington, and the specific question presented. Amici unions make this argument because in this case the President has advanced a sweeping assertion of unilateral removal power grounded in Article II of the U.S. Constitution that, if adopted outside the narrow context of this case, could disrupt the civil service protections of the 2.5 million federal employees Congress sought to protect through the Civil Service Reform Act. These employees include Amici's members and other federal employees who are not akin to U.S. Attorneys, are not appointed under the unique statutory scheme applicable to U.S. Attorneys, have far more limited and constrained duties than that of U.S. Attorneys, and are expressly, by statute, subject to removal only for cause.

*If* the Court reaches the constitutional questions raised by the Defendants-Appellants and *if* it rules in their favor, this Court should carefully limit its holding to the unique position of interim U.S. Attorney.

## ARGUMENT

This case presents the narrow question whether the President has the authority to fire at will a U.S. Attorney who was appointed by the district court under 28 U.S.C. § 546(d). Despite the circumscribed statutory question presented, Defendants-Appellants have also advanced a constitutional argument regarding the scope of the President's Article II removal authority that is unnecessary to resolve this case and sweeps far too broadly. Defendants-Appellants' argument that Article II grants the President the power to remove *any* federal official or employee, could, if credited without careful qualification, inadvertently be misconstrued to risk undermining federal civil service protections across the board, including in many pending or future cases that present very different factual circumstances. *If* this Court reaches the constitutional argument advanced by the President and *if* it rules in favor of the President, the Court should clearly limit its holding to the context of a judicially appointed U.S. Attorney, which is indeed the only question before the Court.

1. U.S. Attorneys are generally appointed by the President, confirmed by the Senate, and removable at will by the President. *See* 28 U.S.C. § 541. The narrow question presented in this case is whether, in the unusual circumstance in which a district court has appointed an interim U.S. Attorney under 28 U.S.C. § 546(d), that interim U.S. Attorney may be fired at will by the President, or whether that interim U.S. Attorney's

removal is contingent on the confirmation of a Presidentially nominated successor under 28 U.S.C. § 541.

No one contests that Senate-confirmed U.S. Attorneys are removable by the President at will. Moreover, there can be no real dispute that, whether nominated by the President and confirmed by the Senate or appointed to interim positions by a district court, U.S. Attorneys wield "significant policymaking and administrative authority," encompassing a broad jurisdiction to enforce the criminal laws in their districts. Appellants' Br. at 47.

2. Unlike a U.S. Attorney, the overwhelming majority of federal employees—and of Amici's federal sector members—work within the federal government's merit system, meaning they are career, nonpartisan federal employees who are hired through a competitive process and protected in their jobs by the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (Oct. 13, 1978).

The CSRA was a landmark achievement in Congress's efforts to strengthen the federal civil service as a merit-based system and to eradicate political patronage from the career federal service. It provides that "selection and advancement should be determined solely on the basis of relative ability, knowledge, and skill, after fair and open competition." 5 U.S.C. § 2301(b)(1). After selection, and often after fulfilling a probationary period, merit system employees enjoy protection against adverse actions, including termination, except for cause. *See* 5 U.S.C. § 7513(a).

The Supreme Court has repeatedly, for well over a century, blessed the constitutionality of the merit system principle of for-cause removal that the CSRA embodies. *See*, *e.g.*, *United States v. Perkins*, 116 U.S. 483, 485 (1886) ("The constitutional authority in congress to thus vest the appointment implies authority to limit, restrict, and regulate the removal by such laws as congress may enact in relation to the officers so appointed."); *Myers v. United States*, 272 U.S. 52, 127 (1926) ("[I]t has been held by this court [that] Congress [has] the power to limit and regulate removal of such inferior officers by heads of departments when it exercises its constitutional power to lodge the power of appointment with them."); *id*. at 174 (endorsing the then "Civil Service Law," and explaining that career civil servants could be protected from arbitrary firing and patronage); *cf. Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 507 (2010) ("Nothing in our opinion, therefore, should be read to cast doubt on the use of what is colloquially known as the civil service system within independent agencies."); *Morrison v. Olson*, 487 U.S. 654, 724 n.4 (1988) (Scalia, J., dissenting) (explaining that plenary removal of "inferior officers" "at the pleasure of the President" has "never been the law," including because they are supervised by "principal officers" accountable to the President and therefore can be removed "for cause"). In doing so, the Court has distinguished merit system employees from "those officers who are appointed by the president by and with the advice and consent of the senate"—such as U.S. Attorneys. *See Perkins*, 116 U.S. at 484-85.

Despite the CSRA and this Supreme Court precedent, since early 2025, the federal government has begun to argue that the President has Article II authority to fire CSRA-protected employees without cause or process (a question *not* presented by this case). Amici represent or are aware of employees who worked throughout General Schedule (GS) levels,[2] as Supervisory Public Affairs Specialists, Program Analysts, Grants Management Analysts, Information Technology Specialists, Management and Program Analysts, and in many other classifications, all of whom were protected by the CSRA, but nevertheless were fired abruptly without cause by the current Administration based on its extreme view that Article II authorizes the President to remove *anyone* who works for the federal government, for any reason and without any process, regardless of statute.

Many of the individual federal employees who have been terminated under this unprecedented assertion of executive authority have challenged those actions in federal court or before the Merit Systems Protection Board ("MSPB"). For instance, a case challenging the termination of two Immigration Judges is currently pending before the Federal Circuit, which by statute hears most appeals from the MSPB. *Jackler v. MSPB*, No. 26-1575.[3] In that case, the two Immigration Judges were military veterans turned career civil servants, whom the government fired by

[2] *See* U.S. Off. of Pers. Mgmt., General Schedule Overview, https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/.

[3] Amici submitted an amicus brief in that case as well. *Jackler v. MSPB*, No. 26-1575, ECF No. 145-1 (Fed. Cir.).

mistake after failing to afford them the basic notice required under the CSRA. The Federal Circuit granted initial review en banc in *Jackler*, and the case will be argued before that full Court in December. *Id.*

Cases involving a Supervisory Affairs Specialist, the Director of the Department of Justice's Departmental Ethics Office, Assistant U.S. Attorneys, and others are pending in various district courts. *See, e.g., Comey v. United States Dep't of Just.*, No. 25-CV-7625-JMF, 2026 WL 1142679, at *1 (S.D.N.Y. Apr. 28, 2026) (Comey "was given one and only one reason for her removal: Article II of the U.S. Constitution"); *Comans v. Exec. Off. of President*, No. 1:25-CV-01237-MSN-WEF, 2026 WL 1132803, at *1 (E.D. Va. Apr. 15, 2026) (similar); *see also Gordon v. Executive Office of the President*, No. 1:25-cv-02409-JMC, ECF No. 1 ¶¶ 4-9, 23-26, 33-36, 38-41 (D.D.C. July 24, 2025) (similar). And dozens of challenges to such terminations are pending before the MSPB, all currently effectively stayed through dismissals without prejudice pending the outcome of the *Jackler* case. *See, e.g.*, *Oyer v. Blanch*, No. 1:26-cv-3092-TNM, ECF No. 1, Complaint, ¶¶ 46-47 (D.D.C. Sep. 3, 2026).

In each challenge to these removals, the Administration has defended its actions based on its purported Article II prerogative to fire any and all executive branch employees at will. The Administration does not attempt to reconcile these at-will firings with the CSRA's requirements, but instead contends that the President can fire any

employee, regardless of position, without complying with the CSRA, as long as the President or an agency head invokes the President's Article II authority. *See, e.g.*, *Comey*, 2026 WL 1142679, at *1; *Comans*, 2026 WL 1132803, at *1. In other words, in those cases, the Administration asserts that Article II permits the President and department heads to fire *any* employee of the federal government, no matter how high or low in rank, no matter how broad or narrow their duties, by simply citing Article II.

3. Despite the narrow question presented here—whether an interim U.S. Attorney appointed by a district court is removable at will by the President—and despite the government's own position that U.S. Attorneys wield authority distinct in nature and scope from the vast majority of the federal civil service, Defendants defend the President's authority to remove Rogoff by taking a broad swipe at removal protections within the executive branch writ large. *See, e.g.*, Appellants' Br. at 33-42; *id.* at 35 ("[F]or lesser officers to remain accountable to the President, whose authority they wield, they must be removable at will." (citation omitted)); *id*. at 37 ("All [s]ubordinates who exercise the President's power – not merely his appointees – are subject to removal by him." (citation omitted)); *id*. at 41 ("[T]he lowest officers, the middle grade, and the highest – are subject to the President's power of removal from office." (citation omitted)).

This broad swipe is not only wrong, but is entirely unnecessary to the resolution of this case. This Court should reject Defendants' urging to disregard the appropriate

limits on judicial resolution of only those questions necessary to decide a particular case in order to reach out and adopt a broad rule that could have dramatic effects on countless cases not before it. The Administration's dangerous request that this Court issue a broad constitutional ruling risks far-reaching collateral effects on civil service protections throughout the federal government, including the cases discussed above, in which the Administration has wielded similarly broad Article II arguments against federal employees who are vastly differently situated from Rogoff.

*Amici* note that this case, because of its expedited schedule, has leapfrogged other cases involving fired civil servants. There is thus reason to be concerned that any treatment of the constitutional issue the government raises, if not carefully circumscribed, will impact the civil servants still awaiting their day in court.

## CONCLUSION

*If* the Court reaches the constitutional question raised by the President in this case, Amici urge this Court to carefully limit any discussion of the issue to the *one* party whose termination is at issue here so as not to inadvertently add fuel to the fire of arguments asserting the right to remove the millions of former and current CSRA-protected career federal employees who are not before the Court. The Appellant was appointed to the position of U.S. Attorney, a position with unique duties, a unique structure of supervision, and a unique appointment scheme. Any discussion in this case should be expressly limited to that position.

Dated: October 16, 2026

Respectfully submitted,

/s/ *Danielle Leonard*
Danielle E. Leonard

Stacey M. Leyton
Danielle Leonard
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151

*Attorneys for Amici Curiae*

Teague Paterson
Matthew Blumin
Georgina Yeomans
AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL
EMPLOYEES, AFL-CIO (AFSCME)
1625 L Street, N.W.
Washington, D.C. 20036
(202) 775-5900
gyeomans@afscme.org

/s/ *Georgina Yeomans*

*Attorneys for Amicus Curiae American Federation of State, County, and Municipal Employees, AFL-CIO*

Rushab B. Sanghvi, CA SBN 302809
Andres M. Grajales
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street NW
Washington, D.C. 20001
Tel: (202) 639-6426
SanghR@afge.org
Grajaa@afge.org

*/s/ Rushab Sanghvi*

*Attorneys for Amicus Curiae American Federation of Government Employees, AFL-CIO*

Yvette M. Piacsek
General Counsel
NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, IAM, AFL-CIO
1225 New York Ave. N.W., Suite 450
Washington, D.C. 20005
202-216-4428
ypiacsek@nffe.org

*/s/ Yvette M. Piacsek*

*Attorneys for Amicus Curiae National Federation of Federal Employees, IAM, AFL-CIO*

Steven K. Ury
SERVICE EMPLOYEES
INTERNATIONAL UNION, AFL-CIO
1800 Massachusetts Avenue, NW
Washington, DC 20036
(213) 440-4547

*/s/ Steven Ury*

*Attorneys for Amicus Curiae Service Employees International Union, AFL-CIO*

Maria Teresa Ellis
General Counsel
INTERNATIONAL FEDERATION OF
PROFESSIONAL & TECHNICAL
ENGINEERS, AFL-CIO
513 C Street NE
Washington, DC 20002
(202) 239-4880
tellis@ifpte.org

*/s/ Maria Teresa Ellis*

*Attorneys for Amicus Curiae International Federation of Professional & Technical Engineers, AFL-CIO*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-6445

I am the attorney or self-represented party.

**This brief contains** 2,282 **words,** including 2,931 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated ________.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Danielle Leonard **Date** 10/16/2026

*(use "s/[typed name]" to sign electronically-filed documents)*