**No. 26-6445**

# In the United States Court of Appeals for the Ninth Circuit

ROGER ROGOFF,

*Plaintiff-Appellee*,

*v.*

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Western District of Washington
Case No. 2:26-cv-02566-SAB

## BRIEF OF FORMER UNITED STATES ATTORNEYS AS AMICI CURIAE IN SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMANCE

Harry H. Schneider, Jr.
David J. Burman
Kevin J. Hamilton
Jonathan P. Hawley
ASHURST PERKINS COIE US LLP
1301 Second Avenue,
Suite 4200
Seattle, Washington 98101
(206) 359-8000
Harry.Schneider@ashurstperkins.com
David.Burman@ashurstperkins.com
Kevin.Hamilton@ashurstperkins.com
Jonathan.Hawley@ashurstperkins.com

*Counsel for Amici Curiae*

[Additional counsel follow]

Norman L. Eisen
Stephen A. Jonas
Diamond J. Brown
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE,
Suite 15180
Washington, D.C. 20003
(202) 594-9958
Norman@democracydefenders.org
Steve@democracydefenders.org
Diamond@democracydefenders.org

John Patrick Bailey
Abigail Frisch Vice
ASHURST PERKINS COIE US LLP
700 Thirteenth Street NW,
Suite 800
Washington, D.C. 20005
(202) 654-6200
John.Bailey@ashurstperkins.com
Abigail.Vice@ashurstperkins.com

*Counsel for Amici Curiae*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

AMICI CURIAE'S IDENTITY AND INTEREST .......... 1

INTRODUCTION .......... 2

ARGUMENT .......... 5

I. Congress exercised its broad Appointments Clause power to prescribe three pathways for appointing United States Attorneys. .......... 5

II. Congress's appointment framework reflects its considered judgment that United States Attorneys' offices require accountability, legitimacy, and stability .......... 10

III. Prolonged provisional leadership untethered from any lawful confirmation or appointment process defeats Congress's structural design and threatens the validity of the office's work. .......... 14

CONCLUSION .......... 19

APPENDIX .......... 20

CERTIFICATE OF SERVICE .......... 22

# TABLE OF AUTHORITIES

**CASES**

*Berger v. United States*,
295 U.S. 78 (1935) .......... 12

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978) .......... 10

*Brady v. Maryland*,
373 U.S. 83 (1963) .......... 12

*Comans v. Exec. Off. of President*,
No. 25-cv-01237-MSN-WEF, 2026 WL 2100037 (E.D. Va. July 21), *appeal docketed*, No. 26-2242 (4th Cir. Sept. 11, 2026) .......... 4

*Edmond v. United States*,
520 U.S. 651 (1997) .......... 5, 13

*Freytag v. Commissioner*,
501 U.S. 868 (1991) .......... 13

*In re Grand Jury Subpoenas*,
814 F. Supp. 3d 284 (N.D.N.Y. 2026) .......... 16

*Jackler v. U.S. Merit Sys. Prot. Bd.*,
No. 26-1575 (Fed. Cir. Aug. 31, 2026) .......... 4

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 5

*Morrison v. Olson*,
487 U.S. 654 (1988) .......... 11

*Offutt v. United States*,
348 U.S. 11 (1954) .......... 16

*Ryder v. United States*,
515 U.S. 177 (1995) .......... 17

*Silver v. U.S. Postal Serv.*,
951 F.2d 1033 (9th Cir. 1991) .......... 5

*Trump v. Cook*,
609 U.S. 528 (2026) .......... 5

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) .......... 9–10

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) .......... 5

*United States v. Chemical Found., Inc.*,
272 U.S. 1 (1926) .......... 11

*United States v. Comey*,
810 F. Supp. 3d 768 (E.D. Va.), *appeal docketed*, No. 25-4674 (4th Cir. Dec. 22, 2025) .......... 16–17

*United States v. Gantt*,
194 F.3d 987 (9th Cir. 1999), *overruled in part on other grounds*, *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc) .......... 15, 17

*United States v. Garcia*,
No. 25-cr-00227, 2025 WL 2784640 (D. Nev. Sept. 30, 2025) .......... 15

*United States v. Giraud*,
No. 24-cr-00768, 2025 WL 2196794 (D.N.J. Aug. 1), *aff'd in relevant part*, 160 F.4th 390 (3d Cir. 2025) .......... 16

*United States v. Jackson*,
187 F.4th 1198 (9th Cir.), *petition for cert. filed*, No. 26-304 (U.S. Sept. 8, 2026) .......... 6–8, 18

*United States v. James*,
810 F. Supp. 3d 752 (E.D. Va.), *appeal docketed*, No. 25-4673 (4th Cir. Dec. 22, 2025) .......... 16

*United States v. Naviwala*,
825 F. Supp. 3d 451 (D.N.J.), *appeal dismissed*, No. 26-1896 (3d Cir. Oct. 7, 2026) ........ 17

*United States v. Rhodes*,
No. 22-cr-00015 (APM), 2026 WL 2329077 (D.D.C. Aug. 4, 2026) ........ 10

*United States v. Williams*,
504 U.S. 36 (1992) ........ 12

*Wayte v. United States*,
470 U.S. 598 (1985) ........ 10

*Young v. United States ex rel. Vuitton et Fils S.A.*,
481 U.S. 787 (1987) ........ 11–12, 16

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. II, § 2, cl. 2 ........ 5, 14

**STATUTES AND REGULATIONS**

28 C.F.R. § 0.20 ........ 9

28 U.S.C. § 509 ........ 17

28 U.S.C. § 510 ........ 17

28 U.S.C. § 515 ........ 9

28 U.S.C. § 516 ........ 9

28 U.S.C. § 518 ........ 9

28 U.S.C. § 519 ........ 9

28 U.S.C. § 541 ........ 6–7, 12–13

28 U.S.C. § 546 ........ passim

Act of Mar. 3, 1863, 12 Stat. 768 ........ 8

Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, 121 Stat. 224 .......... 18–19

USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, 120 Stat. 192 .......... 18

**RULES**

Federal Rule of Appellate Procedure 29 .......... 2

**OTHER AUTHORITIES**

153 Cong. Rec. S1993 (daily ed. Feb. 15, 2007) .......... 18

*Court Officers and Staff: U.S. Attorneys*, Fed. Jud. Ctr., https://www.fjc.gov/history/administration/court-officers-and-staff-us-attorneys (last visited Oct. 15, 2026) .......... 8

Jonathan S. Ross, *Tenuous Appointments: The President's Claimed Power to Remove Court-Appointed Interim United States Attorneys*, 91 Brook. L. Rev. 855 (2026) .......... 8–9

*Notice Seeking Applications For Appointment of Interim United States Attorney Pursuant to 28 U.S.C. § 546(d)* (D.R.I. Apr. 2, 2026), https://tinyurl.com/dripost .......... 13

Robert H. Jackson, *The Federal Prosecutor, Address at the Second Annual Conference of United States Attorneys* (Apr. 1, 1940) .......... 11

Stephanie A.J. Dangel, Note, *Is Prosecution a Core Executive Function? Morrison v. Olson and the Framers' Intent*, 99 Yale L.J. 1069 (1990) .......... 8

*U.S. Attorneys Listing*, U.S. Dep't of Just. (Aug. 17, 2026), https://www.justice.gov/usao/us-attorneys-listing .......... 3

U.S. Dep't of Justice, *Justice Manual* .......... 9

*Vacancy Announcement: Interim Court-Appointed United States Attorney Pursuant to 28 U.S.C. § 546(d)* (E.D. Va. Jan. 20, 2026), https://tinyurl.com/edvapost .......... 13

## AMICI CURIAE'S IDENTITY AND INTEREST

Amici are thirty former United States Attorneys who served across several decades in judicial districts throughout the Nation.[1] They were nominated by Presidents of both parties and confirmed by Senates of differing compositions. Several Amici served in interim or court-appointed capacities. What unites them is not a political view but a shared institutional interest: The office of United States Attorney belongs to and serves the public, and its authority depends on the lawfulness of the appointment that confers it. To that end, Amici take no position on the merits of any investigation or prosecution in the Western District of Washington and express no view on the qualifications of any individual to serve as United States Attorney. Their concern is with the integrity of the processes that the Constitution and Congress prescribed.

Amici's experiences bear directly on this case. They have convened grand juries, approved indictments, and signed applications that only a United States Attorney may submit. They have also recruited and supervised career prosecutors, allocated scarce resources across multiyear investigations, and answered to the district courts they served. Amici are uniquely positioned to explain why their lawful appointments mattered. Among other things, proper appointments bolster the public's confidence in the charges

[1] A list of Amici is included in the Appendix. *See infra* pp. 20–21.

brought in its name and assure line prosecutors of the authority under which they act.[2]

## INTRODUCTION

Exercising its Appointments Clause authority, Congress has prescribed three paths to the inferior office of United States Attorney. Ordinarily, the President nominates a candidate subject to the Senate's advice and consent. The Attorney General also may make an interim appointment for up to 120 days. If that temporary appointment expires, the district court may appoint a United States Attorney to serve until the vacancy is filled. The Appointments Clause expressly permits that judicial role: Under Article II, Congress may vest the appointment of inferior officers in the Courts of Law.

The Executive now seeks to evade that framework. By the government's telling, the President may refuse to nominate anyone, fire any court-appointed United States Attorney (like Plaintiff-Appellee Roger Rogoff), and leave the office vacant indefinitely without a statutorily appointed leader. The Department of Justice reports that about a dozen "first assistants"—none "Presidentially [A]ppointed," "Attorney General Appointed," or "Court

[2] Pursuant to Federal Rule of Appellate Procedure 29(a)(2) and (a)(4)(E), Amici state that all parties have consented to the filing of this brief; that no party's counsel authored the brief in whole or in part; that no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and that no person other than Amici or their counsel contributed money that was intended to fund preparing or submitting the brief.

Appointed"—presently function as United States Attorneys.[3] That scheme has allowed the President to sidestep the Senate's advice-and-consent role and sideline the Judiciary, contrary to Congress's explicit design.

Congress *has tried and rejected* the government's proposed regime. In 2006, Congress eliminated the courts' role and the 120-day limit on the Attorney General's interim appointments. But Congress restored both provisions just one year later after concluding that the experiment had invited an abuse of power that threatened the professionalism of United States Attorneys' offices nationwide. Although judicial appointment of United States Attorneys only rarely came into play before the current administration, it operated, Congress came to realize, as an effective restriction on Executive power—but also a modest one, since the President remained free to replace a court's appointee through the default Senate-confirmation process. Despite this recent history, the government now seeks to achieve by Executive fiat what Congress withdrew by statute.

Amici—a bipartisan group of former United States Attorneys—know the real-world costs of adopting the government's approach. A United States Attorney's office depends on the settled authority of its leader to convene grand juries, seek wiretaps, approve charges, and authorize investigations

[3] *See U.S. Attorneys Listing*, U.S. Dep't of Just. (Aug. 17, 2026), https://www.justice.gov/usao/us-attorneys-listing.

that might last for years. When an official installed outside Congress's prescribed process assumes that role, these core functions become vulnerable to collateral attack. Even worse, career prosecutors bear the professional risks of decisions made under contested authority, while the public faces prosecutions brought in the name of the United States by an official whose appointment circumvents the Constitution. Congress legislated to prevent those very outcomes, and therefore the District Court properly granted injunctive relief.

This case also raises the discrete question of whether the President may lawfully remove an interim United States Attorney by means other than nomination and Senate confirmation. Affirming the relief granted here does not require consideration of the President's removal power over inferior officers as a category.[4] Indeed, the office of United States Attorney is sui generis in the constitutional scheme, bearing a unique historical pedigree as an interbranch appointment with a foot each in the Executive and Judiciary.

[4] In particular, this case does not implicate the separate question of whether Article II authorizes the President to remove any civil servant within the Executive notwithstanding civil-service laws' protections against arbitrary removal, discrimination, and retaliation. *Cf.* Notice of Oral Argument at 1, *Jackler v. U.S. Merit Sys. Prot. Bd.*, No. 26-1575 (Fed. Cir. Aug. 31, 2026) (setting en banc argument for December 10, 2026, in case raising these distinct issues); *see also Comans v. Exec. Off. of President*, No. 25-cv-01237-MSN-WEF, 2026 WL 2100037, at *4–8 (E.D. Va. July 21) (considering President's Article II removal power), *appeal docketed*, No. 26-2242 (4th Cir. Sept. 11, 2026). The Court should affirm the District Court's injunction in this case based on the statutes specifically raised here and reserve consideration of any further issues.

Given this distinctiveness, no broad pronouncements are needed here; this Court can safeguard the office and vindicate Congress's and the Judiciary's prerogatives by issuing a narrow decision that "interpret[s] the statute and effectuate[s] the will of Congress subject to constitutional limits." *Trump v. Cook*, 609 U.S. 528, 530 (2026) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024)).

## ARGUMENT

### I. Congress exercised its broad Appointments Clause power to prescribe three pathways for appointing United States Attorneys.

The Appointments Clause commits to Congress "substantial discretion" to choose how inferior officers are appointed. *Silver v. U.S. Postal Serv.*, 951 F.2d 1033, 1037 (9th Cir. 1991). The default rule requires presidential nomination and Senate confirmation. U.S. Const. art. II, § 2, cl. 2; *Edmond v. United States*, 520 U.S. 651, 660 (1997). "[B]ut the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Courts therefore respect "Congress' choice of which constitutional appointment process works best." *United States v. Arthrex, Inc.*, 594 U.S. 1, 47–48 (2021) (Thomas, J., dissenting) (collecting authorities).

Because United States Attorneys are "inferior officers," *United States v. Jackson*, 187 F.4th 1198, 1204 (9th Cir.), *petition for cert. filed*, No. 26-304 (U.S. Sept. 8, 2026), holding unique duties and responsibilities, Congress created three pathways for appointments to that office.

*First*, Congress made presidential nomination and Senate confirmation the default path: "The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a).

*Second*, Congress gave the Attorney General interim appointment power when "the office of United States attorney is vacant." 28 U.S.C. § 546(a). But Congress expressly limited that power: The Attorney General's appointee "may serve until the earlier of" the "qualification of a United States attorney for such district appointed by the President under section 541" or "the expiration of *120 days* after appointment by the Attorney General." *Id.* § 546(c) (emphasis added). "The statute does not contemplate a role for the President or the Attorney General after the expiration of the 120-day appointment" because that time limit "reflects a balance" that "ensures that the Senate retains its role in the appointment process despite the occasional designation of temporary officers." *Jackson*, 187 F.4th at 1205. For similar reasons, Congress barred the Attorney General from appointing "a person to

whose appointment by the President to that office the Senate refused to give advice and consent." 28 U.S.C. § 546(b).

*Third*, if the Attorney General's appointment under Section 546(a) "expires," then "the district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d). A vacancy is "filled" only by presidential appointment with the Senate's advice and consent. *Id.* § 541(a); *see Jackson*, 187 F.4th at 1205.

Those pathways produce appointments that differ not just by selection method but also in duration. Only Senate-confirmed presidential appointments and district-court appointments permit service without a fixed expiration date: A Senate-confirmed appointee serves a four-year term and "shall continue to perform the duties of his office until his successor is appointed and qualifies," 28 U.S.C. § 541(b), while a judicial appointee "serve[s] until the vacancy is filled," *id.* § 546(d). The Attorney General's appointee, in contrast, "may serve" no longer than 120 days. *Id.* § 546(c).

While interbranch appointments are rare, Congress's having done so in this context accords with unique historical practice and judicial precedent specific to the office of the local federal prosecutor. The Senate draft of the Judiciary Act of 1789 would have granted district judges the *exclusive*

authority to appoint what were then known as "district attorneys."[5] Though the approved act ultimately allocated that authority to the President, the Senate draft shows that, from the earliest days of the Republic, the prospect of judicial appointment of local prosecutors was standard fare. *See* Stephanie A.J. Dangel, Note, *Is Prosecution a Core Executive Function? Morrison v. Olson and the Framers' Intent*, 99 Yale L.J. 1069, 1084–85 (1990) ("Although the final version of the Judiciary Act of 1789 vested the appointment of the Attorney General in the President, an earlier draft vesting this power in the Supreme Court indicates that its authors did not feel that presidential appointment was constitutionally compelled."). Along the same lines, the Judiciary's authority to appoint United States Attorneys for service until a successor's confirmation dates to the Civil War era. *See* Act of Mar. 3, 1863, ch. 93, § 2, 12 Stat. 768, 768. Indeed, "[b]etween 1863 and 1985, *only* the federal courts could appoint an interim U.S. Attorney." *Jackson*, 187 F.4th at 1205 (emphasis added). And historical practice in the Executive accords with that norm: Until 2020, Presidents removed court-appointed United States Attorneys by means of nomination and Senate confirmation of a successor. *See* Jonathan S. Ross, *Tenuous Appointments: The President's*

[5] *Court Officers and Staff: U.S. Attorneys*, Fed. Jud. Ctr., https://www.fjc.gov/history/administration/court-officers-and-staff-us-attorneys (last visited Oct. 15, 2026).

*Claimed Power to Remove Court-Appointed Interim United States Attorneys*, 91 Brook. L. Rev. 855, 862 (2026).

It bears emphasis that, even under this unique interbranch scheme, the Executive retains ample control over United States Attorneys appointed by the Judiciary. The Attorney General—who is removable at will—directs the litigation of the United States and may reassign or personally assume control of any United States Attorney's cases. 28 U.S.C. §§ 515(a), 516, 518(b), 519. Although United States Attorneys have "plenary authority with regard to federal criminal matters" "within" their districts, "[t]his authority is exercised under the supervision of the Attorney General and his/her delegates," who set the government's overarching litigation priorities. U.S. Dep't of Justice, *Justice Manual* § 9-2.001. And the Solicitor General, who is likewise "[s]ubject to the general supervision and direction of the Attorney General," *id.* § 2-1.000, must personally authorize any appeals "taken by the Government," 28 C.F.R. § 0.20(b).

Contrary to the government's suggestion, *Trump v. Slaughter*, 146 S. Ct. 2283 (2026), does not alter the analysis as to the unique role of the United States Attorney. Nor does it permit the President to sidestep the Judiciary's proper role by firing a court-appointed United States Attorney in a manner that does not adhere to the statute. *Slaughter* addressed a for-cause removal restriction shielding a principal officer of a multimember

agency. The Supreme Court "ha[d] no occasion" to "determine the fate of" other officials, *id*. at 2305–06, including United States Attorneys appointed under Section 546(d). Unlike the restrictions at issue in *Slaughter*, Section 546(d) leaves the President free to replace a court appointee at any time: He need only nominate a successor whom the Senate confirms. The problem here arises from the President's decision not to nominate anyone.

## II. Congress's appointment framework reflects its considered judgment that United States Attorneys' offices require accountability, legitimacy, and stability.

Lawful appointment matters because a United States Attorney exercises considerable prosecutorial discretion with little day-to-day judicial review. Under the supervision of the Attorney General and Solicitor General, United States Attorneys have "broad discretion" to enforce the Nation's criminal laws. *Wayte v. United States*, 470 U.S. 598, 607 (1985). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Judges generally do not review those judgments in the ordinary course. *See United States v. Rhodes*, No. 22-cr-00015 (APM), 2026 WL 2329077, at *7 (D.D.C. Aug. 4, 2026) (granting government's request to dismiss Oath Keepers' indictments, explaining that it "is an assessment to which this court must yield").

Federal prosecutors make investigative, charging, and plea-bargaining decisions largely "outside the supervision of the court." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987). Courts instead apply a "presumption of regularity": "[I]n the absence of clear evidence to the contrary," prosecutors "have properly discharged their official duties." *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926). That presumption attaches to the *office*, not the individual, because it presupposes that the occupant holds the role lawfully.

A federal prosecutor's exercise of discretion carries life-changing consequences before a court even reviews the case. "Only someone who has worked in the field of law enforcement can fully appreciate the vast power and the immense discretion that are placed in the hands of a prosecutor with respect to the objects of his investigation." *Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting) (citing Robert H. Jackson, *The Federal Prosecutor, Address at the Second Annual Conference of United States Attorneys* (Apr. 1, 1940)). "With the law books filled with a great assortment of crimes, a prosecutor stands a fair chance of finding at least a technical violation of some act on the part of almost anyone," and the greatest danger of abuse lies in picking the person first and the offense second. *Id.* at 728 (quoting Jackson). Nor can those errors be repaired after the fact: A decision

to seek an indictment carries consequences that "a later dismissal or acquittal can never undo." *United States v. Williams*, 504 U.S. 36, 63 (1992) (Stevens, J., dissenting) (citation omitted). And decisions about which cases *not* to investigate or indict can be as influential as those determining which matters move forward.

Because the office bears directly on individual liberty, a United States Attorney owes heightened ethical obligations. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). The United States Attorney "may strike hard blows," but "he is not at liberty to strike foul ones." *Id.* That obligation animates the constitutional duty of disclosure, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and explains why the Supreme Court requires federal prosecutions to proceed in a "rigorously disinterested fashion, for liberty itself may be at stake in such matters," *Young*, 481 U.S. at 810–11. In short, United States Attorneys must cut square corners.

Sections 541 and 546 advance those profound institutional interests, and Congress enacted these provisions to preserve accountability, legitimacy, and stability within each United States Attorney's office.

Section 541 supplies accountability and legitimacy by assigning primary responsibility for the appointment to the President and Senate. Senate confirmation "curb[s] Executive abuses of the appointment power," "promote[s] a judicious choice," and "ensure[s] public accountability for both the making of a bad appointment and the rejection of a good one." *Edmond*, 520 U.S. at 659–60; *see Freytag v. Commissioner*, 501 U.S. 868, 884 (1991) (recognizing the Senate's role in "ensur[ing] that those who wield[]" appointment authority "[a]re accountable to political force and the will of the people").

Section 546(d) establishes comparable accountability and legitimacy through a public, cross-branch review involving the Judiciary. The appointing court's order must be publicly "filed with the clerk of the court," 28 U.S.C. § 546(d); numerous courts have publicly announced vacancies and solicited applications;[6] and, in this case, the court convened a merit-selection panel to evaluate candidates before appointing one, *see* Dkt. 12-2. As the branch of government independently charged with adjudicating federal prosecutions, the Judiciary is well positioned to identify a United States Attorney capable of discharging the office's responsibilities. Congress's judgment that a

[6] *See, e.g.*, *Vacancy Announcement: Interim Court-Appointed United States Attorney Pursuant to 28 U.S.C. § 546(d)* (E.D. Va. Jan. 20, 2026), https://tinyurl.com/edvapost; *Notice Seeking Applications For Appointment of Interim United States Attorney Pursuant to 28 U.S.C. § 546(d)* (D.R.I. Apr. 2, 2026), https://tinyurl.com/dripost.

"Court[] of Law" is a "proper" repository of this appointment power is thus entirely reasonable and expressly authorized by Article II. U.S. Const. art. II, § 2, cl. 2.

Section 546(d) also preserves stability during a vacancy. It permits a court-appointed United States Attorney to serve "until the vacancy is filled" rather than for a fixed term that expires on a set date. That structure ensures continuity pending actual nomination and confirmation of a candidate to fill the position on a more permanent basis. Indeed, a court-appointed United States Attorney serves only until the Executive acts to properly fill the position.

## III. Prolonged provisional leadership untethered from any lawful confirmation or appointment process defeats Congress's structural design and threatens the validity of the office's work.

In Amici's collective experience, unsettled leadership degrades the quality and integrity of investigations and charging decisions in a United States Attorney's office. It erodes public trust in the office, which is essential for many reasons, including the presentation of cases to grand juries and petit juries. Longterm investigations require leaders who can make and defend decisions whose results may be years away. Properly appointed leaders provide the sustained institutional guidance and backing required to pursue critical, complex cases targeting public corruption, organized fraud, and

transnational trafficking. That durability also helps the offices negotiate pressure from Congress, federal agencies, and local governments. By contrast, a leader appointed contrary to the statute might hesitate to decide whether to commit scarce resources to multiyear matters or to approve sensitive investigative techniques. Shifting or unsettled leadership also undermines charging consistency: It leaves prosecutors unsure whether today's decisions will survive the week and invites challenges to charging instruments. *See, e.g.*, *United States v. Garcia*, No. 25-cr-00227, 2025 WL 2784640, at *18 & n.13 (D. Nev. Sept. 30, 2025) (suggesting that courts may dismiss indictments under their "supervisory authority" if invalid appointments "affected the fairness of [d]efendants' prosecutions").

That disruption reaches the personnel who carry out the office's mission. Career prosecutors and professional staff need assurance that their leader lawfully holds office. Without that assurance, the office loses morale, struggles to recruit and retain talent, and exposes line prosecutors to professional risks arising from defects they neither created nor can cure. For example, this Court has explained that, when "the United States Attorney's appointment is invalid," a "delegation" of her purported authority to subordinates "is similarly invalid." *United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999), *overruled in part on other grounds*, *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc). A district court recently invoked that

principle, observing that a line prosecutor could be "bar[red]" from participating in a case "[i]f the facts should show" that they had been "operating at the express direction of an official who [wa]s improperly appointed." *United States v. Giraud*, No. 24-cr-00768, 2025 WL 2196794, at *9 (D.N.J. Aug. 1), *aff'd in relevant part*, 160 F.4th 390 (3d Cir. 2025). The resulting uncertainty impairs the office's ability to perform as Congress intended and as public-safety interests require.

Unlawful provisional leadership also erodes public confidence and leaves indictments, subpoenas, and warrants vulnerable to collateral attack and protracted delays. "[J]ustice must satisfy the appearance of justice," *Young*, 481 U.S. at 811 (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)), and an appearance of impropriety in prosecutorial authority "diminishes faith in the fairness of the criminal justice system in general," *id.* Courts confronting invalid interim or acting appointments have disqualified those officials from serving or participating in specified matters and cast doubt on their actions—including grand-jury practice and applications that only a United States Attorney may make. *See, e.g.*, *Giraud*, 160 F.4th at 406–07; *In re Grand Jury Subpoenas*, 814 F. Supp. 3d 284, 299–300 (N.D.N.Y. 2026); *United States v. James*, 810 F. Supp. 3d 752, 763–68 (E.D. Va.), *appeal docketed*, No. 25-4673 (4th Cir. Dec. 22, 2025); *United States v. Comey*, 810 F. Supp. 3d 768, 781–87 (E.D. Va.), *appeal docketed*, No. 25-4674 (4th Cir.

Dec. 22, 2025); *United States v. Naviwala*, 825 F. Supp. 3d 451, 531 (D.N.J.), *appeal dismissed*, No. 26-1896 (3d Cir. Oct. 7, 2026). The de facto officer doctrine does not resolve that vulnerability. It ordinarily "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient," but the Supreme Court has refused to apply the doctrine when the official's purported appointment offends the Appointments Clause. *Ryder v. United States*, 515 U.S. 177, 180, 182–83 (1995); *accord Gantt*, 194 F.3d at 998 ("Following the modern trend we choose not to ratify the actions of an improperly appointed officer of the United States under the ancient 'de facto officer' doctrine.").

Adopting the government's position in this case would produce each of these harms. Under the government's framing, Section 546(c)'s 120-day cap poses no obstacle whatsoever because the President could terminate any court-appointed officeholder and instruct the Attorney General to redesignate personnel who had already completed their provisional terms or install shadow United States Attorneys by demanding that the Attorney General delegate authority to an assistant under 28 U.S.C. §§ 509 and 510. *See supra* note 3 (identifying thirteen United States Attorney's offices led by first assistants).

The government's reading is not merely bad policy—it is wrong. This Court recently rejected similar maneuvers, *see Jackson*, 187 F.4th at 1215–16, and for good reason: The government's argument would rewrite an Act of Congress by excising the 120-day limit on the Attorney General's appointees and eliminating the Judiciary's statutory role altogether. The result would not only undercut the check and balance Congress has assigned to the Article III branch of government here but also damage the ability of a United States Attorney's office to enforce the law and keep the community safe in the long run.

In fact, it would restore the exact regime that Congress tried in 2006 and repealed in 2007. In the USA PATRIOT Improvement and Reauthorization Act of 2005, Congress briefly departed from the longstanding design by eliminating the district court's role and removing the 120-day limit on the Attorney General's interim appointments. Pub. L. No. 109-177, § 502, 120 Stat. 192, 246. Within a year, Congress reversed that experiment because it had "invited and abetted an apparent abuse of power" by the Executive that "threaten[ed] to undermine the effectiveness and professionalism of U.S. attorneys offices around the country." 153 Cong. Rec. S1993 (daily ed. Feb. 15, 2007). Congress thus restored both the 120-day limit and the district court's appointment power in their present forms. *See* Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34, §§ 2, 3(b), 121

Stat. 224. That restoration was understood to "provide[] a practical incentive for the President to nominate a new U.S. attorney," thereby avoiding "prolonged circumvention of the Senate's advice and consent function for U.S. attorneys." *Restoring Checks and Balances in the Confirmation Process of United States Attorneys: Hearing on H.R. 580 Before the Subcomm. on Com. & Admin. Law of the H. Comm. on the Judiciary*, 110th Cong., 1st Sess. 132, 145 (2007) (statement of T.J. Halstead). The Executive may not revive by fiat the very scheme that Congress repealed.

## CONCLUSION

This Court should affirm.

Respectfully submitted this 16th day of October, 2026.

DEMOCRACY DEFENDERS FUND

Norman L. Eisen
Stephen A. Jonas
Diamond J. Brown
600 Pennsylvania Avenue SE,
Suite 15180
Washington, D.C. 20003

ASHURST PERKINS COIE US LLP

*s/ Harry H. Schneider, Jr.*
Harry H. Schneider, Jr.
David J. Burman
Kevin J. Hamilton
Jonathan P. Hawley
1301 Second Avenue,
Suite 4200
Seattle, Washington 98101

John Patrick Bailey
Abigail Frisch Vice
700 Thirteenth Street NW,
Suite 800
Washington, D.C. 20005

*Counsel for Amici Curiae*

## APPENDIX

Amici are listed alphabetically with their former jurisdictions and dates of service.

Kent B. Alexander
*Northern District of Georgia (1994–1997)*

Donald Ayer
*Eastern District of California (1981–1986)*

Joe B. Brown
*Middle District of Tennessee (1981–1991)*

Robert Cleary
*District of New Jersey (1999–2002)*

Paul Coggins
*Northern District of Texas (1993–2001)*

Clare Connors
*District of Hawaii (2022–2025)*

Deirdre M. Daly
*District of Connecticut (2013–2017)*

Harry D. "Donnie" Dixon, Jr.
*Southern District of Georgia (1994–2001)*

Edward L. Dowd, Jr.
*Eastern District of Missouri (1993–1999)*

Jenny Durkan
*Western District of Washington (2009–2014)*

Timothy J. Heaphy
*Western District of Virginia (2009–2015)*

B. Todd Jones
*District of Minnesota (1998–2001, 2009–2013)*

David N. Kelley
*Southern District of New York (2003–2005)*

Jesse Laslovich
*District of Montana (2022–2025)*

Scott Lassar
*Northern District of Illinois (1997–2001)*

Tara K. McGrath
*Southern District of California (2023–2025)*

John McKay
*Western District of Washington (2001–2007)*

Michael D. McKay
*Western District of Washington (1989–1993)*

Barbara McQuade
*Eastern District of Michigan (2010–2017)*

Peter Neronha
*District of Rhode Island (2009–2017)*

Denise E. O'Donnell
*Western District of New York (1997–2001)*

Wendy Olson
*District of Idaho (2010–2017)*

Ira H. Raphaelson
*Northern District of Illinois (1989–1990)*

Sarah R. Saldaña
*Northern District of Texas (2011–2014)*

Mac Schneider
*District of North Dakota (2022–2025)*

Stanley A. Twardy, Jr.
*District of Connecticut (1985–1991)*

Joyce Vance
*Northern District of Alabama (2009–2017)*

Daniel G. Webber, Jr.
*Western District of Oklahoma (1999–2001)*

William F. Weld
*District of Massachusetts (1981–1986)*

William D. Wilmoth
*Northern District of West Virginia (1993–1999)*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the attached document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 16, 2026.

*s/ Harry H. Schneider, Jr.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-6445

I am the attorney or self-represented party.

**This brief contains** 4,172 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ◯ complies with the word limit of Cir. R. 32-1.
- ◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ◯ complies with the length limit designated by court order dated ____________.
- ◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Harry H. Schneider, Jr. **Date** 10/16/2026

*(use "s/[typed name]" to sign electronically-filed documents)*