No. 26-6445

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

ROGER ROGOFF,

*Plaintiff-Appellee,*

v.

DONALD J. TRUMP,
President of the United States, in his official capacity, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Washington

# REPLY BRIEF FOR APPELLANTS

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL AGUILAR
DAVID L. PETERS
ANDREW SKARAS
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-5425*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT .................................... 1

ARGUMENT .................................... 7

I. Rogoff Is Unlikely To Prevail .................................... 7

A. Congress provided that all U.S. Attorneys are removable by the President .................................... 7

B. The President has constitutional authority to remove U.S. Attorneys .................................... 15

II. The Equitable Factors Decisively Favor The Government .................................... 31

CONCLUSION .................................... 33

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Bowsher v. Synar*,
478 U.S. 714 (1986) ........ 5, 20, 25

*Collins v. Yellen*,
594 U.S. 220 (2021) ........ 29

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) ........ 15

*Edmond v. United States*,
520 U.S. 651 (1997) ........ 14

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
561 U.S. 477 (2010) ........ 18, 27, 28, 29

*In re Ellis*,
356 F.3d 1198 (9th Cir. 2004) (en banc) ........ 22, 23

*Kennedy v. Braidwood Management, Inc.*,
606 U.S. 748 (2025) ........ 19

*Morrison v. Olson*,
487 U.S. 654 (1988) ........ 13, 17, 19, 29

*Myers v. United States*,
272 U.S. 52 (1926) ........ 4, 19, 20, 25, 26, 28

*Parsons v. United States*,
167 U.S. 324 (1897) ........ 4, 8, 9, 10

*Sampson v. Murray*,
415 U.S. 61 (1974) ........ 31

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) ........ 4, 5, 17, 18, 27

*Shurtleff v. United States*,
189 U.S. 311 (1903) ........ 7

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) .......... 25

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) .......... 32

*Trump v. Cook*,
146 S. Ct. 2234 (2026) .......... 8, 32

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) .......... 1, 4, 14, 15, 16, 18, 19, 26, 28

*Trump v. United States*,
603 U.S. 593 (2024) .......... 1, 3

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) .......... 6, 31, 32

*United States v. $11,500.00 in United States Currency*,
869 F.3d 1062 (9th Cir. 2017) .......... 15

*United States v. Armstrong*,
48 F.3d 1508 (9th Cir. 1995) (en banc) .......... 23
517 U.S. 456 (1996) .......... 1, 2, 3, 16

*United States v. Banuelos-Rodriguez*,
215 F.3d 969 (9th Cir. 2000) (en banc) .......... 23

*United States v. Cox*,
342 F.2d 167 (5th Cir. 1965) (en banc) .......... 21, 24

*United States v. Donziger*,
38 F.4th 290 (2d Cir. 2022) .......... 13

*United States v. Eaton*,
169 U.S. 331 (1898) .......... 30

*United States v. Gantt*,
194 F.3d 987 (9th Cir. 1999) .......... 1, 8, 9

*United States v. Hansen*,
599 U.S. 762 (2023) .......... 15

*United States v. Jackson*,
187 F.4th 1198 (9th Cir. 2026) ........................................................ 27, 30

*United States v. Miller*,
722 F.2d 562 (9th Cir. 1983) ........................................................... 21, 22

*United States v. Perkins*,
116 U.S. 483 (1886) ........................................................................ 17

*United States v. Redondo-Lemos*,
955 F.2d 1296 (9th Cir. 1992) ........................................................ 5-6, 23

**Constitution and Statutes:**

U.S. Const., art. II, § 3 ....................................................................... 1

Act of May 15, 1820, ch. 102, 3 Stat. 582 ................................................. 9

Act of Mar. 3, 1863, ch. 93, 12 Stat. 768 .................................................. 9

Act of June 24, 1898, ch. 495, 30 Stat. 487 .............................................. 10

Tenure of Office Act of Mar. 2, 1867, ch. 154, 14 Stat. 430 ........................ 24

5 U.S.C. § 3345(a)(3) ............................................................................ 30

5 U.S.C. § 3346(a)(2) ............................................................................ 30

28 U.S.C. § 541(c) ........................................................ 1, 2, 5, 7, 15, 19

28 U.S.C. § 546 ..................................................................................... 7, 9

28 U.S.C. § 546(b) .................................................................................. 12

28 U.S.C. § 546(c)(2) .............................................................................. 7

28 U.S.C. § 546(d) ................................................... 1, 2, 5, 8, 11, 13, 29

28 U.S.C. §§ 482, 511 (1926) .................................................................. 10

28 U.S.C. §§ 515-16, 518-19 ................................................................... 26

**Other:**

The Federalist (Jacob E. Cooke ed., 1961) .............................................. 21

H.R. Rep. No. 110-58 (2007) ........................................................................ 11

USAO District of Alaska,
*S. Lane Tucker Appointed U.S. Attorney*,
https://perma.cc/D4ZW-CBT4 (April 25, 2022) ...................................... 12

USAO Southern District of California,
*U.S. Attorney Randy S. Grossman Announces Departure*,
https://perma.cc/VW78-8B9S ..................................................................... 12

U.S. Department of Justice,
Justice Manual *§ 9-27.300 - Selecting Charges*,
https://perma.cc/PFX7-THR9 ..................................................................... 22

U.S. Department of Justice,
*U.S. Attorneys Listing*,
https://perma.cc/44EY-S3FP ............................................................... 12-13

## INTRODUCTION AND SUMMARY OF ARGUMENT

Rogoff altogether fails to grapple with the separation-of-powers principles at stake in this case. The power to conduct criminal prosecutions is a core exercise of the President's "conclusive and preclusive" executive power under Article II and thus within "the special province of the Executive Branch." *Trump v. United States*, 603 U.S. 593, 607 (2024). The United States Attorneys who wield that authority do so only "as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting U.S. Const., art. II, § 3). But U.S. Attorneys are not themselves elected; they are not accountable directly to the people. Rather, our Constitution ensures political accountability for the enforcement of the Nation's criminal laws by ensuring that all executive officers are accountable to the President, who may remove them at will. *Trump v. Slaughter*, 146 S. Ct. 2283, 2310 (2026). Consistent with that understanding, Congress provided that "[e]ach United States Attorney is subject to removal by the President," 28 U.S.C. § 541(c), which includes the "fully-empowered United States Attorneys" appointed by courts under 28 U.S.C. § 546(d), *United States v. Gantt*, 194 F.3d 987, 999 n.5 (9th Cir. 1999).

Rogoff would turn this whole system of power and accountability on its head. According to Rogoff, he may prosecute federal crimes "as the President's delegat[e]," *Armstrong*, 517 U.S. at 464, but without any risk of removal by the President. Indeed, Rogoff contends (at 32-33) that if anyone can remove him, it is the *district court*—that is, Article III judges with life tenure, who are not politically accountable either. Neither elected himself nor accountable to anyone who is, Rogoff envisions that he alone would decide, for the millions of U.S. citizens in the Western District of Washington, how and against whom the criminal laws should be enforced, unless the Senate chooses to act on the President's nominee.

Nothing in our constitutional order remotely contemplates such unaccountable power in an executive officer. Unsurprisingly, Rogoff fails to cite any decision from any court suggesting that the chief federal law enforcement officer in a judicial district can wield executive power independent of the President. Nor does Rogoff cite any judicial decision in the 150-plus year history of 28 U.S.C. § 546(d) interpreting the statute as the district court did.

To the contrary, every court to consider the question has agreed that Congress meant what it said: "*Each* United States Attorney is subject to removal by the President." 28 U.S.C. § 541(c) (emphasis added); *accord*

Opening Br. 19. Rogoff identifies no ambiguity in that statutory text, nor does he acknowledge the canon of constitutional avoidance which would construe the statute against him.

Instead, Rogoff argues that allowing the President to fire a U.S. Attorney would somehow render the district court's statutory appointment authority "illusory" (Answering Br. 25) or a "nullity" (Answering Br. 30). But that contention does not withstand scrutiny. The President's removal of Rogoff does not negate the district court's appointment power, any more than a pardon by the President negates a district court's power to enter final judgment in a criminal case. District court appointees are rarely removed, and the district court's appointee—usually selected in consultation with the Executive Branch—will often serve indefinitely until the Senate confirms a replacement. The President's removal of Rogoff only means that the President has exercised one of the "conclusive and preclusive" authorities of his Office, *Trump*, 603 U.S. at 620, in a single instance. Just as a district court has no basis to object when President pardons an offender convicted in proceedings before that court, the court likewise has no basis to object when the President removes a person whom the court chose to serve as "the President's delegat[e]" in the judicial district. *Armstrong*, 517 U.S. at 464.

Rogoff's constitutional arguments fare no better. He contends (at 41) that the Supreme Court's decisions recognizing that the President possesses virtually unfettered authority under Article II to remove his subordinate do not apply to inferior executive officers whose appointment Congress has elected to vest in the Courts. But that misunderstands the nature of the removal authority, which "stems from Article II's vesting of the 'executive Power' in the President." *Seila Law LLC v. CFPB*, 591 U.S. 197, 227 (2020). Because court-appointed U.S. Attorneys unquestionably "exercise the President's power," Article II requires that they "be *responsible* to him" and thus "subject to removal by him." *Slaughter*, 146 S. Ct. at 2310.

Rogoff nonetheless (at 22) contends that Congress is free to "prevent[] the President from removing" a court-appointed U.S. Attorney "by any means other than obtaining Senate confirmation of a successor." That is precisely what the unconstitutional Tenure of Office Act did—it gave the Senate a veto over the President's removal of executive officers, including U.S. Attorneys. *See Parsons v. United States*, 167 U.S. 324, 338-42 (1897) (explaining the Act's history and its application to the district attorney statute). The Tenure of Office Act was unconstitutional when it was enacted, held unconstitutional a century ago in *Myers v. United States*, 272 U.S. 52 (1926), and remains unconstitutional today, *Slaughter*, 146 S.

Ct. at 2299. If Congress had actually written Rogoff's interpretation into 28 U.S.C. § 546(d), it would be unconstitutional for the same reason.

Rogoff alternatively posits (at 40) a theory of removal that the district court did not adopt: that the district court itself retains the power to remove Rogoff, because the power to remove is incident to the power to appoint. But that default rule is inapplicable here because Congress has expressly vested the removal power in the President. 28 U.S.C. § 541(c). And more fundamentally, it is inapplicable because a federal court cannot constitutionally supervise or control the execution of the laws. As the Supreme Court has stressed, the "power to remove" is the power to "supervise" and "control." *Seila Law*, 591 U.S. at 204. It creates a "here-and-now subservience" to the removing authority because, "[o]nce an officer is appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear and, in the performance of his functions, obey." *Bowsher v. Synar*, 478 U.S. 714, 720, 726 (1986).

An Article III court cannot, consistent with the separation of powers, hold the power of removal over a United States Attorney. This Court has long recognized that "[t]he court * * * cannot both supervise the exercise of prosecutorial discretion and act as an impartial arbiter of the cases presented to it." *United States v. Redondo-Lemos*, 955 F.2d 1296, 1300

(9th Cir. 1992). In case after case, this Court has rebuffed efforts by district courts to supervise or intrude upon the Executive's prosecutorial decisions. Thus, even if Rogoff "were to abuse the powers of the office" by "refus[ing] to prosecute child-pornography or immigration-related crimes," Answering Br. 33, the district court could neither direct Rogoff to bring such charges nor remove him for failing to do so. After all, the court cannot preside over criminal prosecutions that it ordered.

The merits underscore the equities. "[T]he Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415, 1416-17 (2025). Rogoff has no answer to the Supreme Court's emphatic views on that score. And because Rogoff apparently now concedes that the Attorney General could direct and control Rogoff's conduct, his proffered version of the preliminary injunction gets him nothing more than a federal paycheck—the very opposite of irreparable harm.

# ARGUMENT

## I. Rogoff Is Unlikely To Prevail

### A. Congress provided that all U.S. Attorneys are removable by the President

**1.** Rogoff struggles to reconcile the district court's decision with the plain terms of the statute. Although Congress provided multiple methods for appointing U.S. Attorneys, it specified just a single method for removing them: "Each United States attorney is subject to removal by the President." 28 U.S.C. § 541(c). Nothing in the text of 28 U.S.C. § 546, which concerns *appointments* to fill vacancies, displaces the President's general *removal* power in section 541(c). And the President's removal power, once established, "should not be held to be taken away by mere inference or implication." *Shurtleff v. United States*, 189 U.S. 311, 315 (1903).

Rogoff does not identify any ambiguity in the statutory text. Instead, he argues (at 22) that giving that statute its plain meaning would "read the phrase 'to serve until the vacancy is filled' out" of § 546(d). But that phrase has an independent meaning: it confirms that court-appointed U.S. Attorneys serve indefinitely, unlike Attorney General appointees. *See* 28 U.S.C. § 546(c)(2). It has nothing to do with completely insulating U.S. Attorneys from removal—even Rogoff asserts that the district court could

remove him (at 33), confirming that "until the vacancy is filled" is not a statutory guarantee against removal.

Indeed, the Supreme Court has repeatedly rejected that erroneous inference, explaining that statutory terms of office do not guarantee or imply any restriction on removal. Such a phrase is "a ceiling on [the officer's] time in office, not a floor." *Trump v. Cook*, 146 S. Ct. 2234, 2253 n.5 (2026) (collecting cases). Thus, addressing the predecessors to U.S. Attorneys, the Supreme Court specifically held in *Parsons v. United States*, 167 U.S. 324 (1897), that a district attorney's statutory term of office served as a "limitation" on his service, *id.* at 342, and did not deprive the President of the power to remove him before that term expired, *id.* at 342-43.

Rogoff mistakenly suggests (at 25) that this Court's decision in *United States v. Gantt*, 194 F.3d 987, 1000 (9th Cir. 1999) endorses his view that 28 U.S.C. § 546(d) limits the President's removal power. But *Gantt* did not address removal at all; it rejected an Appointments Clause challenge raised by a criminal defendant to the U.S. Attorney, who had been properly appointed by the district court. 194 F.3d at 1000. *Gantt* explained that court appointment would not encroach on the Executive because "the President retains the power to replace the court-appointed" U.S. Attorney with a Senate-confirmed one, *id.*, but there was no occasion to address the

President's removal authority under § 541(c), and no basis to "distinguish" between U.S. Attorneys appointed under § 541 and § 546, *id.* at 999 n.5.

**2.** The history of 28 U.S.C. § 546 confirms that Congress has always understood the President's plenary removal authority over U.S. Attorneys to encompass court-appointed U.S. Attorneys.

Congress enacted the statute creating the office of district attorney against the background of the "Decision of 1789" and the common understanding that all executive officers were removable at will by the President. *Parsons*, 167 U.S. at 337-38. Congress confirmed that understanding in 1820 when it specified that district attorneys, naval officers, army paymasters, and other executive officers were all "removable from office at pleasure." Act of May 15, 1820, ch. 102, § 1, 3 Stat. 582, 582. The 1820 Act served as "a recognition of the construction thus almost universally adhered to and acquiesced in as to the power of the president to remove." *Parsons*, 167 U.S. at 339. When Congress allowed courts to appoint interim district attorneys as a matter of administrative convenience, *see* Act of Mar. 3, 1863, ch. 93, 12 Stat. 768, 768, Congress made no attempt to displace the President's plenary power of removal.

Congress thereafter passed the Tenure of Office Act, requiring "the concurrence of the senate" before the President could remove a Senate-

confirmed executive officer. *Parsons*, 167 U.S. at 340. When the various acts of Congress were codified in 1878, the Revised Statutes omitted any explicit recognition of the President's removal power in order to avoid any "conflict[] with the * * * terms of the tenure of office act, which prohibited removals." *Id.* at 342. Once the Tenure of Office Act was repealed, however, the effect "was again to concede to the President the power of removal," and its application to district attorneys. *Id.* at 343.

The year after *Parsons*, Congress confirmed that understanding by specifying that all district attorneys and U.S. marshals "shall continue to discharge the duties of their respective offices, unless sooner removed by the President." Act of June 24, 1898, ch. 495, 30 Stat. 487, 487. And the very next section of the 1898 Act continued to allow district courts to appoint interim district attorneys or U.S. marshals when a vacancy arose. *Id.* The plain implication and common understanding, therefore, was that court-appointed district attorneys, like all district attorneys, were removable at will by the President.

These two provisions were placed farther apart in the original U.S. Code as a matter of organizational convenience. *See* 28 U.S.C. §§ 482, 511 (1926). But nothing in the text or the history of these statutes suggests that Congress ever intended to displace the President's at-will removal authority

over U.S. Attorneys, including court-appointed U.S. Attorneys. *Accord* H.R. Rep. No. 110-58, at 3 (2007) ("A United States Attorney is subject to removal by the President without cause.").

**3.** Echoing the district court, Rogoff repeatedly argues that, if the President can remove a court-appointed U.S. Attorney, then the President will have no incentive to nominate a nominee for Senate confirmation. But free-floating purposive arguments are not a basis for disregarding the plain language of the statutes Congress enacted. *See* Opening Br. 25. And Rogoff's "incentives" argument is unpersuasive on its own terms. Section 546(d) is not a penalty mechanism meant to foist undesirable appointees on Presidents so that they will have no choice but to seek relief from the Senate. It is a sensible, longstanding mechanism for ensuring that, when a vacancy persists, there will always be a back-up mechanism for appointing a U.S. Attorney who can enforce the federal criminal laws in the district. Ensuring that this quintessentially executive officer must be accountable to the President is a constitutional feature of the scheme, not a bug.

Although the President has removed Rogoff, President Trump and previous Presidents have accepted court-appointed U.S. Attorneys as perfectly satisfactory. Many court-appointed U.S. Attorneys currently serve

across the country,[1] and many court-appointed U.S. Attorneys served during the Biden administration.[2] And as Rogoff himself stresses, such U.S. Attorneys can serve *indefinitely*, even if the President never submits a nomination to the Senate. That is irreconcilable with Rogoff's insistence that § 546(d) is intended to protect the Senate's advice-and-consent function. Furthermore, if the President and a district court are aligned on an appointee, he may serve as U.S. Attorney even if the Senate had previously rejected him. *Cf.* 28 U.S.C. § 546(b) (prohibiting the Attorney General, but not the district court, from appointing a person whose appointment "the Senate refused to give advice and consent").

Of course, none of that means that the President has "no reason to bother with Senate confirmation of a U.S. Attorney." Answering Br. 29. The President proactively chooses who he wants through the nomination process, rather than having to accept or reject the court's choice. The President has accordingly nominated and obtained Senate confirmation of dozens of U.S. Attorneys. *See* U.S. Department of Justice, *U.S. Attorneys*

---

[1] *See* Opening Br. 26 n.3 (collecting examples within this Court's jurisdiction); *see also* U.S. Department of Justice, *U.S. Attorneys Listing*, https://perma.cc/44EY-S3FP.

[2] *See, e.g.*, USAO District of Alaska, *S. Lane Tucker Appointed U.S. Attorney*, https://perma.cc/D4ZW-CBT4 (April 25, 2022); USAO Southern District of California, *U.S. Attorney Randy S. Grossman Announces Departure*, https://perma.cc/VW78-8B9S.

*Listing*, https://perma.cc/44EY-S3FP. After all, while the President can remove the court's appointee, he cannot force the court to appoint his preference, and Senate confirmation remains the only route to a durable replacement if the President and the court cannot agree.

**4.** Relatedly, Rogoff argues (at 30) that it would render the district court's appointment power a "nullity" if the President could immediately fire the appointed official. But it does not negate the court's statutory appointment authority for the President to exercise his Article II removal power, just as it does not negate a district court's power to enter final judgment in a criminal case for the President to pardon the offender. *See United States v. Donziger*, 38 F.4th 290, 302 (2d Cir. 2022) (explaining that the power to "remove" a U.S. attorney "does not negate the court's power to appoint them").

As the Supreme Court explained in *Morrison v. Olson*, 487 U.S. 654 (1988), there is no "inherent incongruity" when Congress vests the power to appoint an executive official in the Judiciary and the power to remove that official in the Executive Branch, *id.* at 676. It simply means that the President and the courts must work together—that is, with awareness and understanding of each other's respective statutory and constitutional authorities—in effectuating an appointment under § 546(d) that is more

than transitory. That is not materially different from how the President must work together with the Senate to effectuate the confirmation of a permanent U.S. Attorney. The Senate can always vote down a nomination it disapproves of, and the President can always remove a court-appointed U.S. Attorney. Both actions preserve the purposes of the Appointments Clause and the removal power, "ensur[ing] public accountability for the making of a bad appointment," or the removal of a good officer. *See Edmond v. United States*, 520 U.S. 651, 660 (1997). All understand that the district court has sole responsibility for its appointment of Rogoff, and all understand that the President was solely responsible for removing him.

**5.** If there were any ambiguity in the governing statutes, the canon of constitutional avoidance would require construing the statute in favor of Presidential removal. *See* Opening Brief 28-29.

Rogoff does not even acknowledge the avoidance canon, let alone overcome it. He does not dispute that court-appointed U.S. Attorneys are executive officers who exercise core executive power, and he acknowledges the many cases—including *Trump v. Slaughter*, 146 S. Ct. 2283 (2026)—holding that the President must have the authority to supervise and remove those who wield executive power on his behalf. Rogoff disputes the constitutional merits, insisting that Congress can strip the President of his

removal authority. But the text does not compel Rogoff's reading, such that the statute cannot "be read any other way." *DHS v. Thuraissigiam*, 591 U.S. 103, 133 (2020). Instead, the plain language of § 541(c) states that "[e]ach United States Attorney is subject to removal by the President," and it is "'a cardinal principle' of statutory interpretation," that the Court must adopt "a construction of the statute" that "is fairly possible" "by which the [constitutional] question may be avoided," *United States v. $11,500.00 in United States Currency*, 869 F.3d 1062, 1071 (9th Cir. 2017). Because this Court's task "is to seek harmony" between the statute and the Constitution, "not to manufacture conflict," *United States v. Hansen*, 599 U.S. 762, 781 (2023), the Court should resolve this case on the straightforward basis of the statutory text.

### B. The President has constitutional authority to remove U.S. Attorneys

If more were needed, Article II empowers the President to remove Rogoff. Rogoff's arguments to the contrary profoundly misunderstand the Constitution's separation of powers and flatly violate Supreme Court precedents on the President's removal power.

**1.** As our opening brief explained (at 30-43), Article II empowers the President to remove court-appointed U.S. Attorneys at will, and it is "not a close case." *Slaughter*, 146 S. Ct. at 2304. All U.S. Attorneys are purely

executive officers. They are empowered to oversee and execute the "special province of the Executive," "to enforce the Nation's criminal laws" and to serve "as the President's delegates to help him discharge his constitutional responsibility to take Care that the Laws be faithfully executed." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks omitted). Because court-appointed U.S. Attorneys unquestionably "exercise the President's power," Article II requires that they "be *responsible* to him" and thus "subject to removal by him." *Slaughter*, 146 S. Ct. at 2310. "Then, and only then, can they remain accountable to the President, and the President to the people." *Id.*

**2.** Rogoff nonetheless contends (at 22, 40) that a court-appointed U.S. Attorney may not be removed by anyone in the Executive Branch for any reason, and that such an officer may serve indefinitely absent "Senate confirmation for a replacement" or removal by the appointing court. Indeed, Rogoff does not dispute that under the injunction, no one in the Executive Branch could remove him, even if he engaged in gross misconduct or ignored the Attorney General's policies or orders. In Rogoff's assessment (at 47), this arrangement "imposes, at most, a minimal burden on the President's ability to dictate who wields executive power."

In fact, what Rogoff describes would constitute a more drastic—and flagrantly unconstitutional—limitation on the President's removal authority than anything the Supreme Court has previously addressed. Even in *Morrison*, the Independent Counsel was at least "subject to removal by a higher Executive Branch official," 487 U.S. at 671, and the cadet in *United States v. Perkins*, 116 U.S. 483, 484 (1886), could at least be removed if he was court-martialed by Navy officers.

The district court's injunction is something else altogether. It envisions an entirely "'new situation,'" in which "an independent" U.S. Attorney's Office "led by a single" U.S. Attorney and "vested with significant executive power," would be removable by no one in the Executive Branch. *Seila Law LLC v. CFPB*, 591 U.S. 197, 220 (2020). Such an unaccountable federal prosecutor "has no basis in history and no place in our constitutional structure." *Id.*[3] As the Supreme Court recently stressed in *Slaughter*, Article II demands that all executive officers—"the lowest officers, the middle grade, and the highest"—are subject to the President's

[3] *Perkins* and *Morrison* apply, at most, to "inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. Rogoff does not argue that U.S. Attorneys fall within this exception, and while he would prefer a multi-factor balancing test (at 46), the Supreme Court has made clear that *Perkins* and *Morrison* represent the "outermost constitutional limit[]" on the President's removal power, *Seila Law*, 591 U.S. at 218.

"power of removal from office." 146 S. Ct. at 2296. Otherwise, officers would exercise executive authority outside the supervision and control of "the Chief Executive, in whom such power is vested." *Id.* at 2305. That is not merely the effect, but the intended purpose of the district court's injunction.

**3.** Rogoff (at 41) characterizes *Slaughter* and other removal decisions as "not controlling" where Congress vests appointment authority in the courts. But that misunderstands the nature and source of the removal power, which "stems from Article II's vesting of the 'executive Power' in the President," *Seila Law*, 591 U.S. at 227, not from the appointment power. Because the "Constitution vests '[t]he executive Power'" in a single President who must "'take Care that the Laws be faithfully executed,'" all "[s]ubordinates who exercise the President's power"—and not merely his appointees—are subject to the President's removal authority. *Slaughter*, 146 S. Ct. at 2293-94, 2310; *see also Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 514 (2010) (removal restrictions on officers appointed Department Heads are "limits on the *President's* removal power" (emphasis added)). That includes inferior executive officers like U.S. Attorneys, who "exercise the *President's* power,"

and so "must be *responsible* to him" and thus "subject to removal by him." *Slaughter*, 146 S. Ct. at 2310.

Rogoff contends (at 50) that the court's authority to remove "inherently" follows from its authority to appoint. But as Rogoff recognizes (at 40), the idea that the power to remove is incident to the power to appoint is just a "default" rule. *Kennedy v. Braidwood Management, Inc.*, 606 U.S. 748, 763 (2025). Here, as already discussed, Congress has unambiguously vested the removal power in the President. 28 U.S.C. § 541(c). And in all events, in the context of an interbranch appointment of an executive officer, the separation of powers forbids an Article III court from retaining the removal power. While *Morrison* upheld certain defined limits on the Executive Branch's ability to remove the Independent Counsel, it did not "transfer[]" the removal authority to a court, *see* Opening Br. 33 n.9, and the Supreme Court made clear that Congress could not "completely strip[]" the President of his removal power, 487 U.S. at 692. Yet that is what Rogoff advocates here.

For the same reasons, Rogoff errs (at 49-50) in relying on *Myers v. United States*, 272 U.S. 52 (1926), which held that the "power to remove inferior executive officers * * * is in its nature an executive power," *id.* at

161, and made clear that the removal of executive officers is "an exercise neither of legislative nor of judicial power," *id*. at 122.

**4.** Rogoff offers three responses to the obvious constitutional problem of an unaccountable U.S. Attorney executing core executive power. Rogoff contends that: (A) he can be constitutionally removed by the district court; (B) he can be removed once the Senate concurs in a replacement; and (C) in all events, removal power is unnecessary because the Attorney General can comprehensively supervise him. None can justify the wholesale erasure of the President's removal power, and each is flawed on its own terms.

**A.** Rogoff argues (at 32-33, 40) that the district court itself could remove a court-appointed U.S. Attorney. Not even the district court endorsed that view, which would open a Pandora's box of separation-of-powers problems, including profound Article III issues. The U.S. Attorney's "presumed desire to avoid removal by pleasing" the district court would create "the here-and-now subservience to another branch that raises separation-of-powers problems." *Bowsher*, 478 U.S. at 727 n.5.

Rogoff fails to identify any other circumstance in which an Article III court supervises a federal prosecutor in the conduct of his duties. That is not surprising. It would transgress nearly every boundary this Court has

recognized between the Executive Branch and the Judicial Branch for a district court to supervise a U.S. Attorney's prosecution of criminal cases, even in cases of gross abuse of duty. Such an arrangement would be flatly contrary to this Court's repeated recognition that the "separation of powers requires that the judiciary remain independent of executive affairs." *United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983) (citing *United States v. Cox,* 342 F.2d 167, 171 (5th Cir. 1965) (en banc)). An Article III court that could both appoint and remove U.S. Attorneys would no longer "be the least dangerous to the political rights of the constitution"—instead, it would "hold[] the sword of the community" by wielding complete control over the enforcement of the criminal laws for its jurisdiction. The Federalist No. 78, at 522 (Alexander Hamilton) (Jacob E. Cooke ed., 1961). Rather than "secur[ing] a steady, upright and impartial administration of the laws," the court would control the criminal prosecutor, thereby exercising not "merely judgment," but also "Force" and "Will." *Id.* at 522-23.

It is not difficult to foresee the many ways in which a district court, empowered to remove—and thus to supervise—a U.S. Attorney, might become entangled in questions wholly inappropriate for judicial supervision. The district court might rebuke Rogoff for prosecuting too many (or any) immigration-related crimes, with an implicit or explicit

threat to replace him if he did not change course. But as this Court held in *Miller*, "[c]harging decisions are generally within the prosecutor's exclusive domain," and U.S. Attorneys serve as "representatives of the executive branch of the government * * * not mere servants of the judiciary." 722 F.2d at 565.

Likewise, the district court might chastise Rogoff for seemingly failing to comply with the Department of Justice Manual's instruction to charge the highest available offense,[4] and order him to withdraw a plea agreement for second-degree murder because the court was convinced that the U.S. Attorney could prove a first-degree murder charge. But this Court, sitting en banc, issued a writ of mandamus to prevent a district court from doing almost exactly that. *See In re Ellis*, 356 F.3d 1198 (9th Cir. 2004) (en banc). The Court explained that the district court had "forced the government to prepare to try [the defendant] on a charge it did not want to bring," which was clearly improper because "the prosecutor represents the executive branch, [and] the district court's reinstatement of the first degree murder charge over the government's objection disregarded the traditional

[4] U.S. Department of Justice, Justice Manual *§ 9-27.300 - Selecting Charges*, https://perma.cc/PFX7-THR9.

requirement of separation of powers—that the 'judiciary remain independent of executive affairs.'" *Id.* at 1209.

Or the district court might insist, on pain of removal, that Rogoff ensure uniformity with the charging decisions of the U.S. Attorney for the Eastern District of Washington. But this Court, sitting en banc, held in *United States v. Banuelos-Rodriguez*, 215 F.3d 969 (9th Cir. 2000) (en banc), that courts may not require U.S. Attorney's Offices to adopt "uniform charging practices," because "[c]ourts generally have no place interfering with a prosecutor's discretion." *Id.* at 976-77.

These examples illustrate the wisdom of this Court's observation that a "United States Attorney cannot function as prosecutor before the court while also serving under its general supervision. The court, in turn, cannot both supervise the exercise of prosecutorial discretion and act as an impartial arbiter of the cases presented to it." *United States v. Redondo-Lemos*, 955 F.2d 1296, 1300 (9th Cir. 1992).[5] Empowering a court to wield the power of removal over a U.S. Attorney's conduct while simultaneously adjudicating the merits of cases brought by the U.S. Attorney "would

[5] This Court overruled *Redondo-Lemos*'s separate discussion on the pleading standards for obtaining certain discovery in *United States v. Armstrong*, 48 F.3d 1508 (9th Cir. 1995) (en banc), *rev'd* 517 U.S. 456 (1996).

destroy the very system of justice" that Rogoff claims "to protect." *Id.*; *accord Cox*, 342 F.2d at 191 (Wisdom, J., concurring specially) (oversight of prosecutorial decisions "lies, not with the courts, but, with the executive branch of our government and ultimately with the people").

**B.** Rogoff next argues (at 47) that the President already possesses the removal power because he "retains the power to replace" Rogoff "with a Senate-confirmed U.S. Attorney." That is not the removal power. Congress could not justify stripping the President's authority to remove the Solicitor General merely by vesting his appointment in the Supreme Court and then observing that the President could still remove the Court's appointee if—but only if—the Senate acquiesces to a replacement.

The district court's insistence that Rogoff is entitled to retain his office unless and until the Senate approves a successor is what makes the preliminary injunction function like the Tenure of Office Act. In the district court's view, Rogoff is "entitled to hold such office until a successor shall have been in like manner appointed and duly qualified * * * subject to removal by and with the advice and consent of the Senate." Act of Mar. 2, 1867, ch. 154, 14 Stat. 430, 430. Rogoff identifies no material distinction between the district court's injunction and the roundly repudiated attempt by the Senate to inject itself into the removal of executive officers.

The Tenure of Office Act "was invalid" when it was passed "and subsequent legislation of the same effect was equally so." *Myers*, 272 U.S. at 176. As the Supreme Court has stressed, "congressional participation in the removal of executive officers is unconstitutional." *Bowsher*, 478 U.S. at 725. Indeed, the D.C. Circuit construed a statute to permit at-will removal because it would "raise constitutional problems" if the Senate "could keep [an executive officer] in office" for a "potentially unlimited tenure" by simply "not acting on the President's nominations for successors." *Swan v. Clinton*, 100 F.3d 973, 986-88 (D.C. Cir. 1996).

Rogoff strives to minimize these concerns by insisting (at 47) that court-appointed U.S. Attorneys may serve only for a "[l]imited tenure." But as Rogoff elsewhere concedes (at 22, 30), under the district court's injunction, "a U.S. Attorney appointed under § 546(d) can serve indefinitely" in the absence of "Senate confirmation for a replacement." Rogoff expresses confidence (at 33) that the "Senate would move quickly to replace" a court-appointed U.S. Attorney, at least where abuse of the office was at issue. But what actually "beggars belief" (at 33) is betting on alacrity by the world's most deliberative body—especially if a President's political opponents in the Senate are content with the court-appointed U.S. Attorney or would seek to use a nomination fight as a bargaining chip for other

legislation. That possibility "exhibit[s] in a clear degree the paralysis to which a partisan Senate and Congress could subject the executive." *Myers*, 272 U.S. at 167. The very point of the removal power is that the President need not wait for the Senate. "Although it is up to the Senate to decide whether to confirm those with whom the President would *prefer* to work, neither Congress nor the courts may saddle him with those with whom he *cannot* work." *Slaughter*, 146 S. Ct. at 2310.

**C.** Last, Rogoff contends (at 41) that it is unnecessary for the President to have removal authority because the statutory scheme provides the President with "sufficient control" over U.S. Attorneys. Rogoff points to the federal statutes that generally authorize the Attorney General to direct and oversee the conduct of litigation on behalf of the United States, including litigation conducted by U.S. Attorneys. *See* 28 U.S.C. §§ 515-16, 518-19. Rogoff characterizes these powers as "virtually absolute" and disavows (at 42 & n.8) a reading of the district court's injunction that "in any way limit[s] the Attorney General from exercising these statutory powers."

While this late-breaking confession of supervisory control is welcome, it is difficult to reconcile either with the terms of the district court's injunction—lifted almost verbatim from Rogoff's proposed order, *see* Dkt.

8-1, at 1-3—or with the remainder of Rogoff's legal theory. Even as Rogoff agrees that the Attorney General may direct his conduct, he insists that the Executive Branch cannot remove him from office. What power, then, can the Executive use to enforce compliance if Rogoff ignores the Attorney General's supervision?[6]

This concern illustrates why the Supreme Court has held that even "[b]road" supervisory authority "is not equivalent to the power to remove," *Free Enterprise*, 561 U.S. at 504, and that "the various bureaucratic minutiae a President might use to corral agency personnel is no substitute for at will removal," *Seila Law*, 591 U.S. at 231 (quotation marks omitted). Rogoff (at 44) reads those decisions much too narrowly in suggesting that they are "distinguishable" because the statutory schemes did not involve the same "level of supervision at issue here." The Supreme Court's decisions recognizing the President's virtually unfettered authority to remove his subordinate executive officers do not turn on the relative level

[6] Rogoff cites the Attorney General's statutory authority to supervise and delegate authority, but this Court held in *United States v. Jackson*, 187 F.4th 1198, 1215 (9th Cir. 2026), that the Attorney General cannot reassign all a U.S. Attorney's duties to another official, at least where the office is vacant. While the United States has sought further review, Cert. Pet., *United States v. Jackson*, No. 26-304 (U.S. Sep. 8, 2026), *Jackson* casts further doubt on Rogoff's suggestion (at 41) that the President could exercise "full control" over a court-appointed U.S. Attorney even absent the threat of removal.

of supervisory power in a given statutory scheme. To the contrary, even if an agency head could exercise "plenary" control over inferior officers' actions, the agency head still "cannot wield a free hand to supervise individual [officers] if it must destroy the [office] in order to fix it." *Free Enterprise*, 561 U.S. at 504. Rogoff concedes (at 42) that the Attorney General cannot review "every action" taken by a court-appointed U.S. Attorney and that such an officer "could go rogue and take some irreversible action, such as terminating a trial after jeopardy has attached." That is the precise problem—the power to remove is a deterrent to insubordination and ensures the President "ha[s] the assistance of officers he can trust." *Slaughter*, 146 S. Ct. at 2310.

Rogoff does not advance his argument by likening (at 45) a court-appointed U.S. Attorney to inferior officers appointed by the Heads of Executive Departments. Where Congress vests the appointment of an inferior officer in the Head of an Executive Department, the President "ordinarily" exercises the power to remove that inferior officer through the Department Head consistent with Article II, *Free Enterprise*, 561 U.S. at 493, because the Department Head "is and must be the President's *alter ego* in the matters of that department," *Myers*, 272 U.S. at 133. Accordingly, the Supreme Court has described restrictions on the removal

of inferior officers appointed by the Head of an Executive Department as "limits on the *President's* removal power." *Free Enterprise*, 561 U.S. at 514 (emphasis added). But under Rogoff's theory, no one in the Executive Branch can remove him.

**4.** Finally, Rogoff (at 35-39) and amici raise concerns that this case somehow implicates the proper appointment of U.S. Attorneys under the Appointments Clause and the Federal Vacancies Reform Act (FVRA). Those concerns are misplaced.

The parties agree that district courts have authority to appoint U.S. Attorneys under the circumstances specified in 28 U.S.C. § 546(d) and that the district court validly exercised that authority here. And just as in *Morrison*, an executive officer can be properly appointed by the court and still be subject to removal by the Executive. 487 U.S. at 676-82. Thus, court-appointed U.S. Attorneys lawfully occupy their office; they possess full authority to execute their duties; and there is no basis to fear their actions are "void *ab initio*." *Collins v. Yellen,* 594 U.S. 220, 257-58 (2021) (distinguishing between Appointments Clause and removal concerns).

Rogoff and amici speculate that, if the President can remove Rogoff at will, the President might improperly appoint or designate a different official to run the U.S. Attorney's Office. That conflates two unrelated issues:

whether the President validly removed Rogoff, and how the continuing vacancy will be addressed. Only the first issue is presented here.

Rogoff focus on the second issue strives to cast doubt on the validity of the President's designation of Charles Neil Floyd to serve as Acting U.S. Attorney under the FVRA while the President's nominee awaits Senate confirmation. *See* Opening Br. 9; 5 U.S.C. § 3346(a)(2). But the President's FVRA authority raises no Appointments Clause or other constitutional problems. *See United States v. Eaton,* 169 U.S. 331, 343 (1898) (explaining that Congress may authorize the President to designate acting executive officers). Rogoff recognizes (at 1) that the FVRA is a valid means for the President to address "U.S. Attorney vacancies temporarily, without the Senate's involvement." *Accord Jackson*, 187 F.4th at 1205. Contrary to Rogoff's view (at 39), therefore, the President's valid exercise of authority conferred by Congress under the FVRA in no way "would abrogate Congress's Appointments Clause power." And Rogoff's passing shots (*e.g.*, at 34-35 & n.6) at Floyd's qualifications for the FVRA designation are unfounded, *see* 5 U.S.C. § 3345(a)(3), and have no bearing on the removal question.

## II. The Equitable Factors Decisively Favor The Government

Rogoff also entirely fails to justify the district court's preliminary injunction on the equities. The Supreme Court has been explicit that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415, 1416-17 (2025). That principle is dispositive here, and Rogoff fails to show otherwise.

To the contrary, Rogoff's merits arguments undermine his equitable arguments. In one breath, Rogoff gestures (at 53) to concerns of a "statutory right to function" and the "harm and disruption to [t]he agency" following his removal. But in the next—to salvage his merits argument—Rogoff contends (at 42) that the Attorney General can completely "assert control over * * * all of [his] responsibilities," leaving him with no meaningful duties to perform and no conceivable disruption to the office. He cannot have it both ways. If the Attorney General has a "virtually absolute" power to sideline Rogoff (at 42), then the only material harm he could experience from his removal is the lost salary, which is not irreparable injury, *see Sampson v. Murray*, 415 U.S. 61, 91 (1974).

Rogoff further misunderstands *Wilcox* and *Trump v. Boyle*, 145 S. Ct. 2653 (2025), emphasizing (at 57-59) factual differences that are not material to the Supreme Court's stay determinations in those cases. *Wilcox* and *Boyle* explained that—for purposes of establishing irreparable harm that required an immediate stay of a district court's reinstatement order—what mattered was that the "removed officer" was "continu[ing to] exercis[e] the executive power." *Wilcox*, 145 S. Ct. at 1416; *Boyle*, 145 S. Ct. at 2654. The method of appointment was neither mentioned nor relevant.

Unlike the Federal Reserve, *see Trump v. Cook*, 146 S. Ct. 2234 (2026), the office of U.S. Attorney is not a singular institution with a Founding-era history of insulation from the President. And because Rogoff "is [not] otherwise entitled to a preliminary injunction," he is not entitled to "remain in office during the pendency of litigation." *Id.* at 2250.

## CONCLUSION

The Court should reverse. If the Court affirms, we request an administrative stay for 14 days to provide the Solicitor General an orderly opportunity to seek relief from the Supreme Court.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
*/s/ Daniel Aguilar*
DANIEL AGUILAR
DAVID L. PETERS
ANDREW SKARAS
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-5432*
*daniel.j.aguilar@usdoj.gov*

OCTOBER 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rules 32-1(b) because it contains 6,924 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*/s/ Daniel Aguilar*
Daniel Aguilar